**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **CREATIVE INTERNET** | § | |
| **ADVERTISING CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 6:07cv354** |
| **v.** | § | |
| | § | |
| **YAHOO! INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

This claim construction opinion construes the disputed terms in U.S. Patent No. 6,205,432 ("the '432 patent"). On July 26, 2007, Plaintiff Creative Internet Advertising Corp. filed the instant action against Defendant Yahoo! Inc., alleging infringement of claim 45 of the '432 patent. The parties have submitted a number of claim terms for construction. Plaintiff has filed an Opening Claim Construction Brief ("Opening") (Doc. No. 101) and a Reply Claim Construction Brief ("Reply"). (Doc. No.104). Defendant filed a Responsive Claim Construction Brief ("Response"). (Doc. No. 102). A *Markman* hearing was held on October 22, 2008. (Doc. No. 107). After the *Markman* hearing, Defendant provided the Court with a Notice of Case Authorities with additional citations to relevant cases. (Doc. No. 109). For the reasons stated herein, the Court adopts the constructions set forth below.

**BACKGROUND**

The '432 patent was issued on March 20, 2001 and is directed at an advertisement system and method for inserting a background reference to an advertisement into an end user communication message, such as an email. '432 patent at 4:5–12. The focus is on inserting a

reference to an advertisement that is to be displayed in the message, rather than inserting the advertisement in whole into the message.  '432 patent at 4:21–25.  Prior to issuance of the '432 patent, online advertising was primarily accomplished though banner or direct email advertising.  *Id.* at 3:7–47.  The object of the claimed invention was to create a new method of advertising on networks such as the internet that would overcome the inherent disadvantages associated with banner, direct email, and other forms of online advertising.  *Id.* at 4:3–4.  Plaintiff asserts that Defendant infringes claim 45 of the '432 patent.  Claim 45 is copied below with the disputed terms in bold:

> A computer program embodied on a computer readable medium for inserting a background reference to a stored advertisement into an end user communication message, said computer program comprising:
> > logic configured to receive an **end user communication message** from **a first site**;
> > logic configured to **insert a background reference to a stored advertisement into said end user communication message**, wherein said logic configured to insert the background reference is further configured to insert said background reference responsive to an **overwrite authorization**; and
> > logic configured to **transmit** said end user communication message with the background reference to **a second site**.

*Id.*, claim 45 at 21:38–39, 22:1–14.  The parties have submitted seven claim terms from claim 45 for construction.  OPENING at 6–19; RESPONSE at 4–25.  Additionally, Defendant proposes four qualifications regarding this claim.  RESPONSE at 25–30; OPENING at 19–24.  Each of these disputed terms and qualifications will be addressed in turn.

## LEGAL STANDARD

The claims of a patent define the patented invention.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389-90 (1996).  Under *Markman v. Westview Instruments, Inc.*, the court

construes the scope and meaning of disputed patent claims as a matter of law.  517 U.S. 370, 373 (1996).  Claims are construed from the standpoint of a person having ordinary skill in the art, *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003), and according to the Federal Circuit, the court must "indulge a heavy presumption that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (internal quotations omitted); *see also Phillips*, 415 F.3d at 1313 ("the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention").

The first step of the claim construction analysis requires the court to look to the intrinsic evidence, beginning with the words of the claims themselves, followed by the specification and—if in evidence—the prosecution history.  *Teleflex, Inc. v. Ficosa N. Am.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-84 (Fed. Cir. 1996); *see also Phillips*, 415 F.3d at 1315 ("the claims themselves provide substantial guidance as to the meaning of particular claim terms").  A term's context in the asserted claim can be very instructive, while other claims can also aid in determining the term's meaning because claim terms are typically used consistently throughout the patent.  *Phillips*, 415 F.3d at 1314.

The claims of a patent "must [also] be read in view of the specification, of which they are a part" because the specification may help resolve ambiguity where the words in the claims lack clarity.  *Id.* at 1315; *Teleflex*, 299 F.3d at 1325.  Yet, the written description "should never trump the clear meaning of the claim terms."  *Comark Commc'n, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (citations omitted); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958,

966 (Fed. Cir. 2000) ("[a]lthough claims must be read in light of the specification of which they are part, ... it is improper to read limitations from the written description into a claim").

Finally, an inventor may "choose [ ] to be his or her own lexicographer" by expressly defining terms in the specification. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999). A court may examine the prosecution history to determine whether the patentee intended to deviate from a term's ordinary and customary meaning. *Teleflex*, 299 F.3d at 1326. The prosecution history may "limit[ ] the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Id.* (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)). If analysis of the intrinsic evidence resolves any ambiguity in disputed claim terms, then "it is improper to rely on extrinsic evidence." *Vitronics*, 90 F.3d at 1583 (citations omitted). Extrinsic evidence—such as expert testimony, dictionaries, and treatises—may be used only if ambiguities remain after analyzing all the intrinsic evidence. *Id.* at 1584.

## DISCUSSION

The parties present the following claim terms for construction: 1) "end user communication message;" 2) "a first site;" 3) "insert . . . into said end user communication message;" 4) "a stored advertisement;" 5) "a background reference to a stored advertisement;" 6) "an overwrite authorization;" and 7) "a second site." Defendant proposes four additional qualifications, which are not linked to a particular disputed term.

## I.      "end user communication message"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction required. | A written message intended for a human recipient |

Plaintiff contends that this term does not require construction because the term is used consistent with its ordinary meaning, and the ordinary meaning of this term is readily comprehensible to one of ordinary skill in the art. OPENING at 6.  Moreover, Plaintiff asserts that even if the term requires construction, Defendant's proposed construction will serve to merely confuse the finder of fact, and Defendant seeks to improperly limit the term. *Id.*  Plaintiff argues that an "end user communication message" contains a number of components, in addition to written text, including 1) the sender's identity; 2) the recipient's identity; 3) the date and time stamp and 4) subject information, among others. REPLY at 1.   Plaintiff adds that portions of the message are intended for use by a computer, not by a human, and thus the term is not properly limited to written text. *Id.*

Defendant responds that the term requires construction because it is subject to dispute and doing so will assist the jury, who "are not likely going to be skilled artisans in the relevant art." RESPONSE at 5 (citing *Computer Acceleration Corp. v. Microsoft Corp.*, 516 F. Supp. 2d 752, 762 (E.D. Tex. 2007) (Clark, J.)).   Defendant further argues that the intrinsic evidence supports its construction that the message is "written" and "intended for a human recipient." RESPONSE at 6.

These arguments make clear that the parties dispute the scope of the disputed term.  Though district courts are not required to construe every asserted claim limitation, fundamental disputes as to claim scope are to be resolved by the district courts. *O2 Micro Int'l, Ltd. v. Beyond Innovation*

*Tech. Co.*, 521 F.3d 1351, 1361–62 (Fed. Cir. 2008).  Here, the parties do not dispute the meaning of the words contained in this term.  However, the parties dispute whether an "end user communication message" must be "written" and "intended for a human recipient."  These arguments go directly to the scope of the claim term.  Plaintiff contends that the scope of this term is not as narrow as Defendant contends, as it encompasses non-written components intended for use by computers.  Plaintiff further contends that the subjective intent of the message originator is irrelevant and not required by the intrinsic record.  Since these arguments are directly related to the scope of the disputed claim term, the Court finds that this term requires construction.

This disputed term is a core concept in claim 45 and in the '432 patent.  The term "end user communication message" is used four times in claim 45 and is included in every dependent claim in the patent.  *See* '432 patent at claims 1, 18, 22, 35, 37, 45, and 46.  Further, the specification alternates among the terms "end user communication message," (*id.* at 4:6–8); "end user message," (*id.* at 8:67, 9:1–2); "message," (*id.* at 4:12–15); and "end user communications," (*id.* at 6:35–38) when referring to the "message" where the background reference is inserted.  The specification also refers to e-mail messages or public postings as embodiments of the "end user communication message," *id.* at 4:8–12, but does not limit itself to these embodiments:

> Of course, the scope of the present invention is intended to include, but not be limited to, any client capable of displaying end user information with a definable background *from any type of electronic feed, including but not limited to, web pages, e-mail messages, public postings, etc.*

*Id.* at 7:28–33 (emphasis added).  These portions of the specification show that the "end user communication" is a broad concept central to the claimed invention embodying the message either sent by or intended for an end user.

6

Defendant argues that the "end user communication message" is "intended for a human recipient." RESPONSE at 4.  Defendant cites to portions of the specification indicating that the end user recipient "checks the mailbox" or "read[s] the foreground message text." *Id.* at 6–7.  Plaintiff contends that this limitation is improper because many components of an "end user communication message" will be intended for use by a computer—for example, routing information contained in the header.  REPLY at 1.

While Defendant is correct that the specification consistently refers to the message being intended for an end user recipient, the specification also consistently refers to the message being sent by an end user originator.  *See e.g.* '432 patent at 4:12–15 ("after receiving a message originally sent from an end user originator"); *id.* at 6:39 ("if an end user at workstation 20 sends an e-mail message"); *id.* at 8:52–54 ("accessing an end user communication message sent toward at least one end user recipient from an end user originator"); *id.* at 11:18–19 ("end user e-mail communication message as sent by an end user originator").  At the *Markman* hearing, the parties indicated that they do not dispute that an "end user" here may be either a message originator or a message recipient.  Furthermore, neither claim 45, the other claims, the specification, nor the prosecution history indicate that an "end user communication message" must be intended for a human recipient.  Given that "end user" is used to refer to both the originator and the recipient of the message and the patent provides no justification for focusing on the intended recipient to the exclusion of the originator, to adopt Defendant's proposed construction would be to inject the subjective intent of the end user originator into the disputed claim term.

Defendant also contends that an "end user communication message" must be "a written message." RESPONSE at 6.  Defendant points to the identification of email messages and public

postings on the internet as particular embodiments and concludes that an "end user communication message" must be a "written message." *Id.* Plaintiff responds that this construction implies that an "end user communication message" is limited to, for example, the text portion of an email message. OPENING at 6. Plaintiff points to Figure 6 of the '432 patent to support it's contention that an "end user communication" includes numerous components other than the written text, including 1) sender identity, 2) date and time stamp, and 3) subject information. REPLY at 1.

Plaintiff is correct that an "end user communication message" is broader than Defendant's proposed construction would allow. An end user *email* communication message—one preferred embodiment—does include components which are intended for use by the end user recipient, as well as components which are intended for use by intermediate servers and the end user recipient computer. *See* '432 patent at 1:10–18, 1:45–49 (explaining that email is "the exchange of text messages and computer files over a communications network, such as a local area network or the Internet, usually between computers or terminals"); *id.* at 12:33–36 (explaining that clients may display alternative versions of the text of the message depending on whether the client-computers support HTML-code). The intrinsic evidence therefore does not restrict an "end user communication message" to just the "written message" intended for an end user recipient.

Defendant's proposed construction would imply that the text field is the only component of an email message. Yet, an email message contains many other components. The specification does not discuss "end user communication messages" in the terms Defendant proposes, and a person having ordinary skill in the art would not read the term to be restricted to a "written message intended for a human recipient." The Court therefore rejects Defendant's proposed construction.

8

Given that Defendant's proposed construction seeks to improperly limit the disputed claim term and that Plaintiff has offered no proposed construction, the Court must devise a proper construction.  As discussed previously, an "end user communication message" encompasses a broad range of messages "from any type of electronic feed, including but not limited to, web pages, e-mail messages, [and] public postings." '432 patent at 7:28–33.  All of these messages are made up of a set or multiple sets of data.  *See* '432 patent at 1:52–56 (referring to data "such as video, sound, and binary files" being transmitted); *id.* at 2:47–51 (referring to the Internet as an "international public packet-switched computer network" and implying that packet-switching is a means of transmitting data).  Moreover, the '432 patent limits itself to application on communications networks.  *See id.* at 1:10–18, 1:45–49 (noting that the invention relates to the field of Internet advertising based on a TCP/IP communications standard and explaining that email is "the exchange of text messages and computer files over a communications network, such as a local area network or the Internet, usually between computers or terminals").  Therefore, the term "end user communication message" is properly construed as "a set of data transmitted over a communications network."

## II.     "a first site"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Site means a location associated with a communications network. | A first computer. |

Plaintiff contends that this term is not limited to a "computer" as Defendant proposes.  OPENING at 9.  Plaintiff argues that the patent specification discloses an embodiment where a network server receives an end user message from another network server, not from a computer or workstation, and Plaintiff contends that this shows that the term is not limited to a "computer." *Id.*

Defendant argues that in all the embodiments disclosed in the specification of the '432 patent, the first and second "sites" are workstations. RESPONSE at 9.  Defendant asserted at the *Markman* hearing that its construction is proper because these "workstations" are "computers" and because "computers" is a broader term than "workstation."  Finally, Defendant points out that servers are computers, as the term is understood in the relevant art, and disclosures in the '432 patent are consistent with this understanding. RESPONSE at 10.

As previously noted, the '432 patent limits itself to application on communications networks. *See* '432 patent at 1:10–18, 1:45–49 (noting that invention relates to the field of Internet advertising based on a TCP/IP communications standard and explaining that email is "the exchange of text messages and computer files over a communications network, such as a local area network or the Internet, usually between computers or terminals").  Plaintiff's proposed construction explicitly recognizes this, while Defendant's proposed construction is consistent with it, as a computer would be able to function within a communications network.  However, Defendant's proposed construction is again too narrow.

Plaintiff contends that adopting Defendant's proposed construction would effectively eliminate a preferred embodiment.  Plaintiff points to an example disclosed in the specification where a network server which includes a background reference insertion system receives a message from a different network server, as opposed to a workstation. OPENING at 9 (citing '432 patent at 6:38–42).  Plaintiff contends that a network server is distinct from a computer, making Defendant's construction improper. OPENING at 9.  At the *Markman* hearing, Defendant responded that a network server is a computer, as the term is understood by a person having ordinary skill in

the relevant art, and the patent discloses no embodiments other than workstations and computers for sending messages.

The specification discloses that the "first site" may be a workstation or computer, but is not so limited. Within claim 45, the "first site" is where the end user communication is received from. '432 patent at 22:3–4. The specification discloses that the "first site" may be a workstation. Focusing on figure 1 disclosed in the '432 patent, the specification notes that "network server 28 can be configured to insert background references into end user communications originated and received by any of the workstations 11, 12, 13, 14, 20, 22." '432 patent at 6:35–38. The example Plaintiff points to discloses that the end user communication message is originated at workstation 20, routed through network server 26, and received at network server 28 for background reference insertion. *Id.* at 6:38–42. Thus, network server 28—whether background reference insertion occurs—receives the end user communication message from network server 26—the first site—and network server 26 is not merely a workstation.

Just prior to the preferred embodiment Plaintiff points to, the specification notes: "[o]f course, the elements of FIG. 1 are understood to be representative of multitudes of similarly connected components, and various types of conventional workstations are understood to be connected to the Internet 32 through conventional schemes." *Id.* at 6:26–30. While it is not clear that the "first site" includes "multitudes of similarly connected components," as opposed to mere workstations, network servers, and other computers, the specification fails to limit this term to mere computers.

Moreover, to adopt Defendant's proposed construction could lead to unnecessary confusion for the jury. "Computer" is a term that is not only used in everyday language by lay jurors, but is

11

also a term that is commonly used by persons having ordinary skill in the art.  Yet this term's meaning as understood by a lay juror may not be consistent with that attributed by a person having ordinary skill in the art.  As manifested at the *Markman* hearing, Plaintiff contended that a network server was not a computer, while Defendant asserted it was.  Similarly, a lay juror and a person having ordinary skill in the art are likely to connote different meanings to this term.  Because the specification does not limit "a first site" to "a first computer" and because such a construction could lead to unnecessary confusion, the Court rejects Defendant's proposed construction.

Plaintiff's proposed construction is also improper.  Plaintiff proposes "a location associated with a communications network."  OPENING at 9.  This construction would include "locations" not actually connected to the network if the "locations" were still"associated" with the network.  This construction is too broad, and the Court therefore rejects Plaintiff's proposed construction as well. Because the '432 patent limits itself to application on communications networks (*see* '432 patent at 1:10–18, 1:45–49) and because "a first site" must be connected to the network as disclosed in the '432 patent (*id.* at 22:3–4,1:10–18, 1:45–49), the term "a first site" is properly construed as "a first communications network connection point."

III.   **"insert . . . into said end user communication message"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| No construction required. | Automatically, and without human intervention, put into the written message intended for the human recipient. |

Plaintiff argues that the term "insert . . . into said end user communication message" does not require construction because it is used in the specification consistent with its ordinary meaning, and thus it is "readily comprehensible to one of ordinary skill in the art."  OPENING at 10.  Moreover,

Plaintiff argues that Defendant's proposed construction should be rejected because it is confusing and not supported by the intrinsic evidence.  *Id.* at 11.

Defendant argues that the specification describes just one method of inserting a background reference into a message, where a server automatically inserts the background reference without human intervention.  RESPONSE at 12.  Defendant further argues that the end user preferences are set before the background reference insertion process begins, and once the process begins, there is no human intervention.  RESPONSE at 13–14.

Here, again, the parties dispute whether the insertion process must be "automatic" and "without human intervention" as proposed by Defendant.  Plaintiff contends that the scope of this term is not so narrow because the patent does not disclose these limitations.  As previously noted, district courts are not required to construe every asserted claim limitation, but fundamental disputes as to claim scope are to be resolved by the district courts.  *O2 Micro.*, 521 F.3d at 1361–62.  Here, the parties do not dispute the meaning of the words contained in this term, but the aforementioned disputes are directly related to the scope of the disputed claim term.  Defendant's proposed limitations, which Plaintiff argues are improper, go directly to the scope of the claim term.  The disagreement does not focus on the meaning of the words, but instead focuses on the operative limitations within the claimed invention.  Therefore, because the scope of the claim term is disputed, the Court finds that this term requires construction.

First, the Court has already determined that "end user communication message" is properly construed as "a set of data transmitted over a communications network."  As it is used within the term "insert . . . into said end user communication message" the Court adopts this same construction here.  With regard to Defendant's proposed construction, neither the claims, nor the specification

limit this term in this way.   Claim 45 indicates that the claimed computer program "inserts" a background reference into the message and that the computer program has logic configured to complete this task.  '432 patent at 21:38–39, 22:1–14.  The claim does not use the term "automatic," nor does it otherwise indicate that this process must be automatic.  The same is true for Defendant's arguments regarding human intervention.  The claim is silent as to any required or excluded level of human intervention.

Furthermore, the specification similarly fails to limit the claim as Defendant proposes.  The specification repeatedly refers to "inserting" a background reference into a message, but does not delineate the "automatic" or "without human intervention" limitations proposed by Defendant.  Defendant points to the following passage in support of its arguments:

> A message server inserts the background reference after receiving a message originally sent from an end user originator and before sending the message to be delivered to an end user recipient. When necessary, the message server will convert at least a portion of the message into a proper format, such as HTML, before inserting the background reference to an advertisement, which is preferably selected in accordance with end user recipient demographic information and/or ad exposure statistics.  The advertisement itself, often a graphical file, is preferably not transmitted with the message in some preferred embodiments of the invention, but is typically stored at the message server or other location remote from the end user recipient.

'432 patent at 4:12–25.  Based on this section and other similar portions of the specification, Defendant concludes that "the '432 Patent consistently describes the insertion process as being an automated process that functions entirely without any human intervention."  RESPONSE at 13.

However, this section along with the remainder of the specification fails to support Defendant's conclusion.   The specification does not refer to the insertion process as being

"automated" or "without human intervention."  Moreover, each time the specification refers to this

process, the discussion is merely cursory.  For example:

> Subsequently, as discussed above with respect to background
> reference insertion process 312, a background reference is inserted
> into the message, an example of which is shown in FIG. 8. The
> example background reference shown in FIG. 8 is <body
> background="http://www.exampledomain.com/tkhr_adjpg">.

'432 patent at 11:34–39.  The specification goes on to describe the file and directory structure for

such a reference.  Neither this section, nor the section that explains background reference insertion

process 512 ('432 patent at 12:45–50) delineates any level of detail sufficient to conclude that the

specification limits this claim term to be "automatic" and "without human intervention."  The

specification does refer to network servers running the background reference insertion process.

While practically this may implicate an automated process in certain embodiments, it is neither

required nor explicitly limited as such.  Furthermore, the specification goes on to note:

> [I]ncluded in the scope of the present invention are practically all
> technologies through which a background, tiled or not tiled on an end
> user recipient's screen, is designated for an end user communication
> message, including client-based solutions and future technologies for
> accomplishing the described functions.

'432 patent at 9:11–17.  When taken in conjunction with the patent's silence as to automation and

human intervention, this section indicates that Defendant's proposed limitations are not disclosed

by the patent and are therefore inappropriate.  While the foregoing resolves the dispute as to the

proper scope of this disputed claim, the Court agrees with Plaintiff that, applying the construction

set forth above for "end user communication message," no further construction for this term is

necessary.  Since Defendant's proposed limitations have been rejected, the term "insert . . . into said

end user communication message" has the ordinary and customary meaning attributed by one of

15

ordinary skill, as well as a lay juror.  However, for clarity, the following construction will appear in the Court's claim chart: the term "insert . . . into said end user communication message" is properly construed as "insert . . . into said end user communication message, as defined herein."[1]

## IV.    "a stored advertisement"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction required. | A stored announcement of goods or services offered for sale. |

Plaintiff again argues that this term does not require construction as it is not ambiguous and the term is used within the specification consistent with its ordinary meaning.  OPENING at 11. Plaintiff further argues that Defendant's construction improperly limits the term to "goods or services" offered for sale.  *Id.*  Plaintiff adds that the specification explicitly notes top of mind awareness ("TOMA") advertising—which focuses on the advertisement of organizations or individuals—as being well-suited to the claimed invention.  *Id.* at 12.

Defendant responds that this term does require construction and the specification outlines that an advertisement refers to goods or services offered for sale.  RESPONSE at 15.  Defendant points to the specification as explicitly disclosing these limitations.  *Id.* at 15–16.

As previously noted, Plaintiff disputes Defendant's proposed construction because Plaintiff asserts the construction improperly limits the scope of the term by failing to note that stored advertisements can advertise organizations or individuals themselves.  Fundamental disputes as to claim scope are questions of law within the duty of the court to resolve.  *O2 Micro*, 521 F.3d

---

[1]  If it becomes apparent that the dispute as to the scope of this claim term has not been definitively resolved, the Court will take appropriate measures to further construe the disputed term and ensure that no such arguments are submitted to a jury.

at 1361–62.  As with previously discussed claim terms, the parties do no dispute what "stored advertisement" means.  They merely dispute whether advertisements must focus on goods and/or services, or whether they can also advertise organizations and/or individuals themselves.  This is a fundamental dispute as to claim scope, and therefore, the Court finds that this term requires construction.

The specification does disclose that advertisements generally include communications promoting goods and/or services.  '432 patent at 2:63–66.  Defendant cites this section in its Response, but excluded the remainder, which discloses:

> In general, advertisements include most types of communications promoting goods and/or services of organizations or individuals, *as well as promoting the organizations or individuals themselves*.

*Id.* at 2:63–66 (emphasis added).  The specification clearly sets forth a proper definition for "a stored advertisement"—a stored advertisement promoting goods and/or services of organizations or individuals or promoting the organizations or individuals themselves.  The subsequent sentence from the specification—which Defendant highlights in its Response—also supports this conclusion.

> Entities with access to potential viewers of advertisements often charge a fee to *other entities interested in advertising themselves* and/or their goods and/or services.

*Id.* at 2:66–67, 3:1–2 (emphasis added).  Defendant does not include this component in its proposed construction, and therefore the Court rejects Defendant's proposal.  Therefore, the term "a stored advertisement" is properly construed as "a stored advertisement promoting goods and/or services of organizations or individuals or promoting the organizations or individuals themselves."

## V.      "a background reference to a stored advertisement"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| No construction required. | A link or tag for causing a stored announcement of goods or services offered for sale to be displayed in the background of the message. |

Plaintiff argues that this term also requires no construction and that Defendant's proposed construction will only serve to confuse the finder of fact. OPENING at 12–13. Plaintiff argues that Defendant's proposed construction seeks to improperly import a "display" limitation. OPENING at 13. Moreover, Plaintiff argues that if the stored advertisement is displayed, the background reference does not cause the display—the logic of the software program causes the display. *Id.* at 14.

Defendant responds that this term requires construction, and the specification discloses that a background reference is a background tag inserted into the message. RESPONSE at 18. Further, Defendant argues that its construction does not require the display of the stored advertisement, but merely describes functionality. *Id.* at 20.

At the *Markman* hearing, the parties indicated that they agreed that "a background reference to a stored advertisement" is a type of "link or tag." The Court agrees that the '432 patent supports this contention. However, the parties disagree regarding whether the "background references" causes the stored advertisement to be displayed. This dispute goes directly to the scope of the disputed claim term. The parties agree what the background reference is, but disagree as to what it does. Because this is a fundamental dispute as to the scope of the claim term, *O2 Micro*, 521 F.3d at 1361–62, the Court finds that this term requires construction.

18

Defendant points to claims 2 and 38 as proof that the background reference causes the advertisement to be displayed.  These claims are both dependent and disclose:

> The [method or apparatus] as claimed in claim [1 or 37], wherein said background reference is operative for enabling background tiling of said advertisement at said second site.

'432 patent, claim 2 at 17:62–64, claim 38 at 21:11–13.  Defendant then concludes that if the background reference did not cause the display, claims 2 and 38 would make no sense.  However, claim 45 is an apparatus claim directed at a software program.  While the claimed software program functions within a larger system defined by the patent and the other unasserted claims, it is significant that the frame of reference for the disputed claim terms is limited to a software program.  Any "display" that occurs is thus going to occur outside of the frame of reference of claim 45's claimed invention—a software program.  Claims 2 and 38 do not affect this conclusion as they are patentable inventions separate from claim 45.  *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984) (citing 35 U.S.C. § 282).  This means that each claimed invention must be examined on its own merits, *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1267 (Fed. Cir. 1985) (citing 35 U.S.C. § 282), informed by both similarities and differences from the other claims.  This is because each claim in a patent is independently related not only to the specification and drawings, but also to the prior art, prosecution history, co-pending and continuing applications, and to therefore the other claims.  *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988).  Further, claims 2 and 38 are directed at background references which are operative for enabling background tiling of the advertisement, which—as will be discussed—is a display parameter.  These claims do not show, as Defendant contends, that the background reference causes the display of the advertisement.

19

While the background reference is an important instrumentality in the display of the stored advertisement, standing alone the background reference does not cause the display of an advertisement.  It is the workstation, computer, or other means for displaying the message which, combined with the background reference, causes the display of the advertisement.  While portions of the specification and claims refer to a background reference being "operative for enabling background tiling" or even causing an advertisement to be tiled, '432 patent 4:9–14, this means that the background reference defines the terms of the display that occurs and identifies the subject of the display.  In other words, the background reference identifies an advertisement and defines whether that advertisement will be tiled or watermarked, among other parameters.  However, the display of the advertisement–defined by the parameters set forth in the background reference—occurs because of the interaction between the background reference and the workstation, computer, or other means for displaying the message.

The specification supports this understanding.  The specification discloses:

> [t]he example background reference shown in FIG. 8 is <body background="http://www.exampledomain.com/tkhr_adjpg">.

'432 patent at 11:37–39.  This background reference is merely a string of text which identifies a stored advertisement for display.  A second portion of the specification notes that a background reference "need only include the name of the background file" when the background file is co-located with the message.  *Id.* at 10:41–44.  Similarly, the name of the background file is merely a string of text which identifies a stored advertisement background file for display by the second site.  As previously noted, standing alone this reference does not cause the display of the referenced advertisement.  It is only in conjunction with the workstation, computer, or other means for

20

displaying the message that the background reference defines the parameters of the display of the advertisement.  Thus, the Court rejects Defendant's proposed construction.  Therefore, the term "a background reference to a stored advertisement" is properly construed as "a link or tag identifying a stored advertisement, as defined herein."

## VI.   "an overwrite authorization"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Overwrite authorization means selective enablement of background reference insertion and overwriting based upon end user preferences. | An express permission, provided in advance by the message's recipient, for an existing link or tag for causing a stored background advertisement of goods or services offered for sale to be displayed in the background of the message to be replaced with a different link or tag for causing a different stored announcement of goods or services offered for sale to be displayed in the background of the message. |

Plaintiff argues that its construction comes directly from the specification, and therefore is appropriate.  OPENING at 14–15.  Plaintiff takes issue with two limitations included in Defendant's proposed construction: 1) "provided in advance" and 2) "to be replaced with."  *Id.* at 15–16.

Defendant responds that the specification discloses that overwriting occurs when an existing background reference is replaced with a different background reference.  RESPONSE at 21.  Defendant also argues that the overwriting permissions must be provided in advance for the system to be able to overwrite existing background references automatically.  *Id.* at 22.

As previously noted, claim 45 is an apparatus claim directed to a software program.  Claim 45 discloses a second limitation requiring "logic configured to insert a background reference to a stored advertisement into said end user communication message, wherein said logic configured

21

to insert the background reference is further configured to insert said background reference responsive to an overwrite authorization." '432 patent at 22:5–10.  This limitation requires logic with two configurations: 1) the "insertion configuration" allowing for insertion of a background reference to a stored advertisement and 2) the "replacement configuration" allowing for insertion of a background reference to a stored advertisement responsive to an overwrite authorization.

Claim 45 is silent regarding what is overwritten when a background reference to a stored advertisement is inserted responsive to an overwrite authorization.  However, the specification repeatedly refers to a "background reference" being replaced.  '432 patent at 9:24–26 ("it is first determined . . . whether the message already includes a background reference."); *id.* at 9:26–30("some embodiments of the present invention include determining if any type of background reference is specified, including a mere designation of a color"); *id.* at 9:31–35 ("such messages are more likely to already include a background reference"); *id.* at 35–38 ("If the message already includes a background reference, step 406 determines if an approval configuration specifies whether the background reference can be overwritten with a new background reference.");  *id.* at 38–43 ("If the approval configuration indicates that background references are not to be overwritten for a particular message, step 412 indicates that the background reference insertion process 312 terminates without overwriting the existing background reference.");  *id.* at 43–48 (" whether or not to overwrite existing background references in messages");  *id.* at 48–50 ("there is automatic overwriting of all or no existing background references.").

Plaintiff argues that the specification distinguishes between the replaced "background reference" and the inserted "background reference to a stored advertisement."  REPLY at 11.  On this point, Plaintiff is correct.  The specification describes the invention as "[a]n advertisement system

22

and method . . . for inserting into an end user communication message a background reference to an advertisement." '432 patent at 4:6–8.  Thereafter, the specification notes that "[w]hile some embodiments of the present invention include determining if any type of background reference is specified, including a mere designation of a color, other embodiments include checking only for a designation of a separate image file as a background." '432 patent at 9:26–30.  The specification makes clear that—at least in some embodiments—what is being replaced is a background reference of any type, "including a mere designation of color." *Id.*  In contrast, claim 45 is explicit that a "background reference to a stored advertisement" is being inserted.

Therefore, principles of claim construction dictate that as to claim 45 the overwrite authorization limitation allows for replacement of any background reference in an end user communication message with a background reference to a stored advertisement, dependent only upon the existence and settings within the approval configuration file.  Because the claims of a patent define the invention to which a patentee is entitled the right to exclude, *Phillips*, 415 F.3d at 1312, claim 45 itself does not limit what is being replaced responsive to an overwrite authorization.  Yet, a person having ordinary skill in the pertinent art—the objective baseline from which to begin claim construction—views the claims of a patent in light of the specification and prosecution history.  *Id.* at 1313.  Here, it is clear that a person having ordinary skill in the art would view claim 45, in light of the specification, as requiring logic configured to replace an existing background reference with a background reference to a stored advertisement.

Defendant contends that the overwrite determination is based on authorization from the end user recipient, which is provided in advance of the overwrite process, and that this advance approval is a requisite limitation of the asserted claim.  Defendant points to the following portion of the

specification in support of this conclusion:

> An approval configuration file is maintained in one embodiment of the present invention in order to enable end user recipients to configure the background reference system 155 (FIG. 3) on whether or not to overwrite existing background references in messages received by them.

'432 patent at 9:43–48.   However, it is important to note that the approval configuration file Defendant notes is maintained in only one embodiment of the claimed invention.   Moreover, the next sentence in this paragraph notes other variations on the overwriting process in other embodiments of the claimed invention:

> In other embodiments, steps 404 and/or 406 are omitted, whereby there is automatic overwriting of all or no existing background references.

*Id.* at 9:48–50.   In such a case, the permission to overwrite existing background references is still provided in advance, but it is not provided in advance by the message's recipient, as Defendant's proposed construction requires.   Finally, the specification adds:

> In still other embodiments, a general approval determination is included before format determination in order to determine if a particular end user recipient has approved any background reference insertions, regardless of whether any background references already exist.

*Id.* at 9:57–62.   These portions of the specification make clear that the overwrite authorization process has a number of embodiments, and while permission to overwrite may be provided in advance in some embodiments, it is not required to properly construe this claim term.   The specification does not clearly disavow embodiments where approval or permission to overwrite is given simultaneous to receipt.   As such, to limit the claim term as Defendant proposes would be improper.   Therefore, the term "an overwrite authorization" is properly construed as "approval to

replace an existing background reference in an end user communication message, as defined herein, with a background reference to a stored advertisement, as defined herein."

## VII.   "a second site"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Site means a location associated with a communications network. | A second computer. |

The parties agree that this term should be construed consistently with "a first site." OPENING at 19; RESPONSE at 25.  Therefore, incorporating the analysis regarding the term "a first site," *supra*, the term "a second site" is properly construed as "a second communications network connection point."

## VIII.   Proposed Qualifications

Defendant proposes spatial and sequential limitations, each of which will be addressed in the following sections.

### A.       Spatial Limitations

Defendant contends that the claim language logically requires three spatial limitations: 1) "logic configured to receive an end user communication message from a first site" cannot be located at the first site or the second site; 2) "logic configured to insert a background reference to a stored advertisement into said end user communication message . . ." cannot be located at the first site or the second site; and 3) "logic configured to transmit said end user communication message with the background reference to a second site" cannot be located at the first or second site. RESPONSE at 25–27.

25

Plaintiff responds that although the preferred embodiment does include three computers, claim 45 is not so limited. REPLY at 12. Moreover, Plaintiff argues that an alternative embodiment in the specification discloses a system where the background reference system is integrated into the end user message software on the first and second site making Defendant's spatial limitations "nonsensical." REPLY at 13.

Neither the claims, specification, nor the prosecution history require Defendant's proposed limitations. To accept these limitations would improperly limit the scope of the asserted claim because claim 45 does not disclose any spatial limitations. Each limitation merely recites "logic configured to" take a particular action or operate in a particular way. Moreover, the specification clearly rebuts Defendant's arguments. One embodiment of the claimed invention discloses a system which integrates the end user message software with the background reference insertion process:

> [W]hile one implementation of the present invention includes separate background reference system 155 which communicates with one or more end user message server software programs, *other implementations include integrated end user message software solutions which directly incorporate the functionality of the background reference system 155.*

'432 patent at 7:66–67, 8:1–4 (emphasis added). This example explicitly shows that the logic configured to receive an end user communication message, insert a background reference, and transmit the resulting message (background reference system 155) may be co-located with the message origination process at the first site (where the end user message software solution is located). The Court therefore rejects Defendant's proposed spatial limitations.

In support of these limitations, Defendant cites *General American Transportation Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766 (Fed. Cir. 1996) for the proposition that it is proper to construe terms

26

be defining not only what the term means, but also what it excludes.  While standing alone this proposition is correct, it does not directly apply to the limitation at issue.  Because the specification explicitly discloses that certain embodiments may have logic configured to receive, insert, and transmit the end user communication message co-located at the first and second sites, Defendant's proposed spatial limitations are clearly incorrect.  These proposed limitations do not merely define a disputed term by delineating what it excludes.

### B.    Sequential Limitations

Finally, Defendant contends that the "functions" recited in the logic elements must occur in the order in which they appear in the claim.  RESPONSE at 28–30.  Plaintiff responds that claim 45 is an apparatus claim for a computer program and does not have steps to which a specific order would apply.  REPLY at 14.  Additionally, Plaintiff asserts that the specification discloses that the steps in the flowcharts in the patent are not so limited and "other embodiments include varying the order of the steps."  *Id.* at 15.

First, claim 45 is an apparatus claim for a computer program comprised of three logic configurations.  Defendant cites four cases in support of its argument for sequential limitations: 1) *Altiris, Inc. v. Symantec Corp.*, 318 F.3d at 1371 (Fed. Cir. 2004); 2) *Mantech Environmental Corp. v. Hudson Environmental Services, Inc.*, 152 F.3d 1368 (Fed. Cir. 1998); *Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313 (Fed. Cir. 1999); and 4) *Combined Sys., Inc. v. Def. Tech. Corp. of America*, 350 F.3d 1207 (Fed. Cir. 2003).  While Defendant is correct that each of these cases look to the recitation of a specific order in an asserted claim, Defendant fails to acknowledge that each of these cases does so in the context of a method or process claim.  Similarly, *Spreadsheet Automation Corp. v. Microsoft Corp.*—which Defendant points to in its Notice of Case

Authorities—involved a method claim.  2:05-cv-00127-DF, 26–30 (E.D. Tex. 2006).  While the sequence of steps in a method or process claim is properly a part of claim construction, apparatus claims recite structure—not steps or processes.  Here, claim 45 is directed to a computer program and recites the structure—logic—comprising the computer program.  Thus, claim 45 is an apparatus claim and does not recite steps or processes that must take place in a particular order.[2]  To import a sequential limitation into an apparatus claim such as this would be improper.  Therefore, the Court also rejects Defendant's proposed sequential limitation.

Defendant cites to *Applera Corp. v. Micromass UK Ltd.*, 186 F. Supp. 2d 487 (D.Del. 2002) in support of the proposed sequential limitations.  Defendant contends that it is proper to specify the relationship of claim limitations through claim construction.  However, the district court in *Applera* construed the terms "first" and "second" as they modified particular claim limitations.  The terms "first" and "second" were used in an apparatus claim and were construed to establish the relationship between particular limitations therein.  Here, Defendant's proposed sequential limitations are improper because asserted claim 45 is an apparatus claim and because the terms of the claim fail to establish the relationship between the elements that Defendant proposes.  Moreover, the specification and prosecution history further fail to establish these limitations.

## CONCLUSION

For all the foregoing reasons, the Court construes the disputed claim language in this case in the manner set forth above.  The Court also rejects Defendant's proposed limitations.  For the ease

---

[2]The portions of the specification which refer to "varying order of steps" are directed to method or process claims which are not at issue in the instant action.  *See* '432 patent at 9:50–54.

of reference, the Court's claim interpretations are set forth in a table attached to this opinion as

Appendix A.


**So ORDERED and SIGNED this 24th day of November, 2008.**


JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **CREATIVE INTERNET** | § | |
| **ADVERTISING CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 6:07cv354** |
| **v.** | § | |
| | § | |
| **YAHOO! INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>APPENDIX A</u>

## U.S. PATENT NO. 6,205,432 - CLAIM 45

| Claim Language | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| A computer program embodied on a computer readable medium for inserting a background reference to a stored advertisement into an end user communication message, said computer program comprising: | | | |
| logic configured to receive an **end user communication message** | No construction required. | A written message intended for a human recipient. | A set of data transmitted over a communications network. |
| from **a first site**; | Site means a location associated with a communications network. | a first computer | A first communications network connection point. |
| logic configured to **insert a background reference to a stored advertisement into said end user communication message** | No construction required. | automatically, and without human intervention, put into the written message intended for the human recipient a link or tag for causing a stored announcement of goods or services offered for sale to be displayed in the background of the message | Insert a link or tag identifying a stored advertisement promoting goods and/or services of organizations or individuals or promoting the organizations or individuals themselves into said end user communication message, as defined herein |

| | | | |
|---|---|---|---|
| wherein said logic configured to insert the background reference is further configured to insert the background reference in response to an **overwrite authorization**; and | Overwrite authorization means selective enablement of background reference insertion and overwriting based upon end user preferences. | an express permission, provided in advance by the message's recipient, for an existing link or tag for causing a stored advertisement of goods or services offered for sale to be displayed in the background of the message to be replaced with a different link or tag for causing a different stored announcement of goods or services offered for sale to be displayed in the background of the message<br>or<br>an express permission, provided in advance by the message's recipient, for an existing background reference to an advertisement to be replaced with a different background reference to a different advertisement | Approval to replace an existing background reference with a background reference to a stored advertisement, as defined herein. |
| logic configured to **transmit** | **AGREED**: communicate | **AGREED**: communicate | Communicate |
| said end user communication message with the background reference to **a second site**. | Site means a location associated with a communications network. | a second computer | A second communications network connection point. |

32