**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **CREATIVE INTERNET ADVERTISING CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 6:07cv354** |
| v. | § | |
| | § | |
| **YAHOO! INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**CHARGE OF THE COURT**

MEMBERS OF THE JURY,

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case. After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

## 1. GENERAL INSTRUCTIONS

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous. In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

### 1.1 CONSIDERING WITNESS TESTIMONY

By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence. As stated before, you the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court sustained an objection to a question addressed to a witness, the jury must disregard the question entirely and may draw no inference from the wording of it or speculate as to what the witness would have testified to if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers either here at the bench out of your hearing or by calling a recess. We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

### 1.2 HOW TO EXAMINE THE EVIDENCE

Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness' testimony may be presented, under

oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weight and otherwise considered by you, insofar as possible, the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

Both parties have used what are called demonstrative exhibits in trial to aid and illustrate the testimony of the witness. While the demonstrative exhibits may have been helpful to you in determining the issues, the demonstrative exhibits of both parties are not evidence.

**1.3 EXPERT WITNESSES**

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an expert witness—is permitted to state his or her opinion

on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying. In this case, you have heard testimony from four expert witnesses: 1) Mr. David Klausner, who was retained by Plaintiff Creative to offer opinions on infringement and validity; 2) Ms. Michelle Riley, who was retained by Creative to offer opinions on damages; 3) Dr. Benjamin Goldberg, who was retained by Defendant Yahoo to offer expert opinions on infringement and invalidity; and 4) Mr. Brian Napper, who was retained by Yahoo to offer expert opinions on damages.

## 2. SUMMARY OF CONTENTIONS

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on these issues.

### 2.1 SUMMARY PATENT ISSUES

You must decide the following three main issues. First you must decide if Yahoo has literally infringed or infringed under the doctrine of equivalents claim 45 of U.S. Patent No. 6,205,432, which I will refer to as the '432 patent. If you answer yes to that question, then you must decide if Creative has proven by clear and convincing evidence that Yahoo engaged in willful infringement. You must also decide whether Yahoo has proven by clear and convincing evidence that claim 45 is invalid. Finally, if you decide that Yahoo has infringed claim 45, you must decide whether Creative is entitled to damages in the form of a reasonable royalty for this infringement, and if so, the proper amount of that reasonable royalty.

#### 2.1.1 CREATIVE INTERNET ADVERTISING'S CONTENTIONS

Creative contends that Yahoo infringes the '432 patent by making, using, selling, or offering for sale its Yahoo Messenger program with IMVironments. Creative seeks damages in the form of a reasonable

royalty to compensate for this alleged infringement. Finally, Creative contends that Yahoo's infringement is willful.

### 2.1.2 YAHOO! INC'S CONTENTIONS

Yahoo contends that it does not infringe claim 45 of the '432 patent and that this claim is invalid. To the extent you find Yahoo did infringe the patent, Yahoo also contends that any infringement was not willful.

### 2.2 BURDENS OF PROOF

There are two different burdens of proof involved in this case. The first is "preponderance of the evidence," and the second is "clear and convincing evidence." "Preponderance of the evidence" means evidence that persuades you that a claim is more likely true than not true. "Clear and convincing evidence" means evidence that produces in your mind a firm belief or conviction as to the matter at issue. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. The proof must establish in your mind a firm belief or conviction that the claim is true.

In determining whether any fact has been proved by either burden of proof, you may, unless otherwise instructed, consider the stipulations, testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them. Creative has the burden of proving infringement by a preponderance of the evidence. Creative also has the burden of proving its additional contention that the infringement was willful by clear and convincing evidence. Yahoo has the burden of proving that the '432 patent is invalid by clear and convincing evidence.

## 3. CLAIMS OF THE PATENT IN SUIT

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner

owns and what the patent owner may prevent others from doing. Claims may describe products, such as machines or chemical compounds, or processes for making or using a product.

Claims are usually divided into parts, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs on the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

### 3.1 CONSTRUCTION OF THE CLAIMS

In deciding whether or not a claim is infringed or invalid, the first step is to understand the meaning of the words used in the patent claims. It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use those meanings when you decide the issues of infringement and invalidity.

### 3.2 GLOSSARY OF PATENT TERMS

The following are definitions for patent terms that you should use in this case.

| | |
|---|---|
| A or an | The use of the article "a" or "an" in a patent claim means "one or more" in claims containing the transitional phrase "comprising." |
| Application | The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "Patent Office" or "PTO"). |
| Claims | Claims are the numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent. |

| | |
|---|---|
| Comprising | The beginning, or preamble, portion of each of the asserted independent claims uses the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" is not limited to products or methods having only elements corresponding to the limitations that are recited in the claim, but also covers products or methods that have elements corresponding to all of the limitations in the claim and add additional elements without changing the required elements.<br><br>Take as an example a claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs. However, if a table contains a tabletop, legs, but no glue, then the claim does not cover the table. |
| File Wrapper | See "prosecution history" below. |
| License | Permission to use the patented invention, which may be granted by a patent owner in exchange for a fee called a "royalty" or other consideration. |
| Office Action | Communication from the patent examiner regarding the specification of the patent Application and/or the claims pending in the patent application. |
| Patent Examiners | Personnel employed by the United States Patent and Trademark Office ("PTO") who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention. |
| Patent Owner | The patent owner may be the original applicant inventor or any assignee who has acquired the patent by an assignment, which is similar to how a piece of real property would be conveyed by a deed. |
| Prior Art | Knowledge that is available to the public either prior to the invention by the applicant or more than a year prior to the effective filing date of his/her patent application. |
| Prosecution History | The written record of proceedings in the United States Patent and Trademark Office ("PTO") between the applicant and the PTO. It includes the original patent application and later communications between the PTO and the applicant. The prosecution history may also be referred to as the "file wrapper" of the patent during the course of this trial. |
| References | Any item of prior art used to determine patentability. |
| The | Use of the word "the" in the beginning of a phrase indicates that it is referring to a previous use of the same or a similar phrase. |
| Said | Use of the word "said" in the beginning of a phrase indicates that it is referring to a previous use of the same or similar phrase. |

| | |
|---|---|
| Specification | The specification is the information, which appears in the patent and concludes with one or more claims. The specification includes the written text, the claims and the drawings. In the specification, the inventor sets forth a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so. |
| Ordinary Skill in the Art | From time to time in these instructions I will refer to a hypothetical person of "ordinary skill in the art." This hypothetical person is presumed to be aware of all of the pertinent prior art and knowledge that existed in the field during the relevant time period. The skill of the actual inventor and experts is irrelevant, because they may possess something that distinguishes them from workers of ordinary skill in the art.<br><br>Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the art, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field. |

### 3.3 INTERPRETATION OF CLAIMS

As I stated earlier, it is my job as Judge to determine what the patent claim means and to instruct you about that meaning. In accordance with that duty, I have interpreted the meaning of some of the language in claim 45 in this case. My interpretation of these claim terms was handed out to you at the beginning of the case in a claim construction chart. You must accept as correct the interpretations contained in that chart as defined by the Court. Any claim language that I have not interpreted for you in the claim chart is to be given its ordinary and customary meaning as understood by one of ordinary skill in the art.

## 4. INFRINGEMENT

In this case, Creative asserts that Yahoo has infringed the patent-in-suit. Any person or business entity that, without the patent owner's permission, makes, uses, offers for sale, sells, or imports within the United States any product or method that is covered by at least one claim of a patent, before the patent expires, infringes the patent. This type of infringement is called "direct infringement." A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. Creative has the burden of proving infringement by a preponderance of the evidence.

Only the claims of a patent can be infringed. You must compare claim 45 as I have defined it to Yahoo's Messenger program with IMVironments to determine whether or not there is infringement. You should not compare Yahoo's Messenger program with IMVironments with any specific example or preferred embodiment set out in the '432 patent. The only correct comparison is with the language of the claim itself, using the meaning I have given you. You must reach your decision as to infringement based on my instructions about the meaning and scope of the claim, the legal requirements for infringement, and the evidence presented to you by the parties.

Whether or not Yahoo knew that what it was doing constituted infringement does not matter. A person may be found to infringe a patent even if he or she believed in good faith that what he or she was doing was not an infringement of any patent and even if he or she was not even aware of the patent's existence. Creative does not have to prove copying to prove infringement.

In this case, Creative asserts that Yahoo's Messenger program with IMVironments directly infringes claim 45 of the '432 patent. It is your job to determine whether or not Creative has proved by the "preponderance of the evidence" that Yahoo has directly infringed claim 45.

**4.1 LITERAL INFRINGEMENT**

To determine literal infringement, you must compare the accused product with claim 45, using my instructions as to the meaning of the patent claim. A patent claim is literally infringed if Yahoo's activities—including making, using, selling, and offering for sale—related to the accused product includes each and every limitation in the patent claim. If you find that Yahoo's Messenger program with IMVironments includes elements corresponding to each limitation of the claim, then Yahoo infringes the claim even if Yahoo's Messenger program with IMVironments has additional elements that are not recited

in the claim. If Yahoo's Messenger program with IMVironments does not contain elements corresponding to one or more of the limitations recited in a claim, Yahoo does not literally infringe that claim.

You must consider claim 45 of the '432 patent and decide whether Yahoo's Messenger program with IMVironments infringe that claim. Not all of the claims of a patent must be infringed before a patent is infringed. Yahoo's Messenger program with IMVironments should be compared to the limitations recited in the patent claim, not to any preferred or commercial embodiment of the claimed invention. Creative has the burden of proving infringement by a preponderance of the evidence.

**4.2 INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

Even if you find that Yahoo's Messenger program with IMVironments does not literally infringe claim 45, you should also determine whether Yahoo's Messenger program with IMVironments infringes Creative's patents under the doctrine of equivalents. Sometimes the language in the patent claim may not capture every nuance of the invention or describe with complete precision the range of its novelty. However, an accused product may still infringe a patent claim if the differences between the claimed invention and the accused product are insubstantial. This is called infringement under the "doctrine of equivalents." The doctrine of equivalents is designed to prevent an accused infringer from avoiding infringement by changing only minor or insubstantial details from the literal limitations of a claimed invention while retaining their essential functionality. To determine if an asserted claim is infringed under the doctrine of equivalents, you must assess equivalence on a limitation-by-limitation basis, rather than from the perspective of the invention as a whole. In other words, you must determine whether there is an equivalent element in the Yahoo Messenger program with IMVironments for each limitation of claim 45 that is not literally present in the program. You must determine whether the difference between a limitation of the asserted claim and an element of the accused product is significant, or whether it is insubstantial, such as the change of a minor

detail. One way to determine whether a change is insubstantial is to look at whether an element of the accused product performs substantially the same function in substantially the same way to achieve substantially the same result as the corresponding limitations of the asserted claim. You may also consider evidence of whether, at the time of the alleged infringement, persons skilled in the art considered the accused element and the claimed element interchangeable.

In making your determination, you should review the evidence from the perspective of a person of ordinary skill in the art. The test is objective—that is, whether, at the time of the claimed infringement, a person of ordinary skill in the art would have considered the differences insubstantial. Creative need not prove that Yahoo had the intent to infringe Creative's patents under the doctrine of equivalents or that Yahoo knew that its program infringed the patents. You may not find that an element in Yahoo's Messenger program with IMVironments is equivalent to a limitation of the patent claim if by doing so the patent claim would cover products or methods that were already in the prior art.

Equivalency is determined by what was known at the time of the activities accused of infringement and not by what was known at the time the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claim. Slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes. If you find that Creative has established, by a preponderance of the evidence, that any differences between the limitations of an asserted claim and Yahoo's Messenger program with IMVironments are insubstantial differences, then Yahoo infringes that claim under the doctrine of equivalents. If Yahoo's Messenger program with IMVironments is missing an identical or equivalent part to even one limitation of claim 45, the program

cannot infringe the claim under the doctrine of equivalents. Creative has the burden of proving infringement by a preponderance of the evidence.

### 4.3 WILLFUL INFRINGEMENT

Additionally, Creative contends that Yahoo's infringement of the '432 patent claim was "willful." If you find on the basis of the evidence and the law, as I have explained it, that Yahoo infringes claim 45 of the '432 patent, then you must decide whether or not Yahoo's infringement was willful. This inquiry is relevant, not to your decision of whether or not there is infringement, but to the amount of damages to which Creative is entitled. Although, as I explained before, Creative must prove infringement by the preponderance of the evidence standard, the burden of proving that the infringement was willful is the clear and convincing evidence standard.

Creative proves willful infringement if it shows that Yahoo was objectively reckless in infringing the '432 patent. A person is reckless who acts in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known. This is an objective recklessness standard. The objective recklessness standard is satisfied if you find the elements of the following test are met.

To establish willful infringement for the patent-in-suit for which Creative contends Yahoo's infringement was willful, Creative must first prove by clear and convincing evidence that 1) Yahoo was aware of the issued '432 patent; 2) Yahoo acted despite an objectively high likelihood that its Yahoo Messenger with IMVironments was infringing a valid patent; and 3) this objectively defined risk that Yahoo's Messenger program with IMVironments infringed was either known or so obvious that it should have been known to Yahoo. The state of mind of Yahoo is not relevant to the second inquiry—whether Yahoo acted despite an objectively high likelihood that its Yahoo Messenger program using IMVironments infringed a valid patent.

In determining whether or not Yahoo willfully infringed, you should consider all of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to:

1) whether there was a bona fide disagreement regarding patent validity or infringement;

2) whether there was continued infringement after notice of probable infringement was received;

3) whether there was a degree of similarity between the claimed invention and Yahoo's Messenger program with IMVironments;

4) whether Yahoo took efforts to avoid infringement;

5) whether Yahoo had a substantial defense to infringement and reasonably believed that the defense would be successful if litigated;

6) whether Yahoo made a good faith effort to avoid infringing the patent, such as through remedial action upon learning of the patent by ceasing infringing activity or attempting to design around the patent;

7) whether Yahoo tried to cover up its infringement;

8) whether or not Yahoo sought or followed advice of counsel; and

9) whether Yahoo intentionally copied the claimed invention disclosed in the '432 patent.

None of these factors are determinative, and this list of factors is not an exhaustive list of things you should consider. Your determination of willful infringement should incorporate the totality of the circumstances. One of the factors listed above that you may consider—whether Yahoo sought or followed the advice of counsel—can be part of your consideration in determining whether Yahoo knew or should have known that its Yahoo Messenger program with IMVironments ran an objectively high risk of infringing a valid patent. You may consider the investigation conducted by Yahoo's in-house counsel in considering Creative's allegations of willful infringement. However, in this case Yahoo is not relying on an opinion of

counsel, including an opinion of in-house counsel, as a mitigating circumstance among the totality of circumstances in your willful infringement analysis. Further, you are instructed that Yahoo had no duty to seek an opinion of counsel, and you cannot make any inference that if it had sought opinion of counsel that the opinion would have been unfavorable. The fact that you may have determined that Yahoo infringed claim 45 of the '432 patent does not mean that Yahoo's infringement was willful.

## 5. INVALIDITY

Only a valid patent may be infringed. An issued patent is presumed to be valid based on the presumption that the United States Patent and Trademark Officer acted correctly in issuing a patent. For a patent to be valid, the invention claimed in the patent must be new, useful, and constitute an advance that was not obvious to one of ordinary skill in the art at the time the invention was made. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new," "useful," and "non-obvious" have special meanings under the patent laws. I will explain these terms to you as we discuss Yahoo's grounds for asserting invalidity.

Yahoo has challenged the validity of the '432 patent claim on a number of grounds. Yahoo must prove that a patent claim is invalid by clear and convincing evidence. Prior art that was not considered by the patent examiner does not reduce Yahoo's burden to prove invalidity by clear and convincing evidence. I will now explain to you each of Yahoo's grounds for invalidity in detail.

### 5.1 PRIOR ART

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new, useful, and not obvious in light of what came before. Otherwise, the claim is invalid. That which came before is referred to as the "prior art." Prior art can include anything that was already invented, publicly known, already made by someone else, already described in a printed publication or issued patent, or described in a

patent application. I will describe these categories of prior art more fully in a moment. A prior art reference must be analyzed as a person of ordinary skill in the field would understand its disclosure.

Yahoo must prove by clear and convincing evidence that the references it relies on are prior art. To do so, Yahoo must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include:

1) Anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention.

2) Anything that was in public use or on sale in the United States more than one year before the application for the patent was filed.

3) Anything that was patented or described in a printed publication anywhere in the world before the inventor made the invention or more than one year before the application for the patent was filed.

4) Anything that was described in a patent that issued from a patent application filed in the United States before the inventor made the invention.

### 5.1.1 DATE OF INVENTION/FILING DATE

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called the "date of invention." I will now explain to you how to determine this date.

There are two parts to the making of an invention. The inventor first comes up with the idea of the invention. This is referred to as "conception" of the invention. The conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The second part to the

making of an invention is called "reduction to practice." An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

"Reduction to practice" can be either actual or constructive. The filing date of a patent is a "constructive reduction to practice." In this case, that date is June 5, 1998, for the '432 patent. The first actual making of the invention, which may occur earlier or later than the filing date of the application, is an "actual reduction to practice." In this case, Creative's constructive reduction to practice is earlier than its actual reduction to practice. Thus, you are to use the filing date of the Creative patent as the date of the reduction to practice.

I will now describe the specific requirements for the prior art categories relied on by Yahoo.

**5.1.2 PRIOR ART: PRINTED PUBLICATION**

Printed publications from anywhere in the world are prior art if the printed publications were published more than one year before the application for the patent was filed. A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it. It is not necessary that the publication be available to every member of the public. Thus, publications may include not only such things as books, periodicals, or newspapers, but also publications that are not as widely available to the public, such as trade catalogues, journal articles, or scholarly papers that are distributed or available to those skilled in the field of the invention. The date that a printed publication becomes prior art is the date that it becomes available to the public. Published patent applications are printed publications as of their publication dates.

In order to rely on a reference as a prior art printed publication, Yahoo must prove that the reference was in fact published or was reasonably accessible to that portion of the public most likely to use it. If Yahoo can prove that a printed publication was published or accessible more than one year before the application for

the patent was filed, then that publication will be prior art, regardless of the date of invention for the patent claims.

### 5.1.3 PRIOR ART: PATENTS

An issued patent may be prior art to a patent claim under a number of different circumstances. First, a patent issued anywhere in the world, like a printed publication, may be prior art to a patent claim if the patent issued either before the inventor made the claimed invention or more than one year before the application for the patent in suit was filed.

A U.S. patent may be prior art to a patent claim even if the patent issued after the date of invention of a claimed invention. This occurs when the patent application for the U.S. patent was filed by another person before the inventor made the claimed invention. To show anticipation of the patented invention, Yahoo must how by clear and convincing evidence that before June 5, 1998, a third party patented an invention that included all of the limitations of claim 45 of the '432 patent.

## 5.2 ANTICIPATION FOR LACK OF NOVELTY

The patent laws of the United States require that an invention must be new for a person to be entitled to a patent. A patent claim is invalid if the claimed invention is not new. If an invention is not new, we say that it was "anticipated" by prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A patent claim is anticipated 1) if more than one year before the date the patent application was filed, the complete invention described in the claim was in a printed publication anywhere in the world; 2) if the complete invention described in the claim was in a U.S. patent which issued on a U.S. patent application filed before the inventors made the invention; or 3) if the complete invention was publicly known or used in the United States by someone other than the inventor before the inventor made the invention. A party challenging the validity of a patent must prove anticipation by clear and convincing evidence.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipated a patent claim by combining two or more items of prior art.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art and if a person of ordinary skill in the art would understand that to be the case.

A patented claim has been anticipated if the earlier invention completely embodied each and every element of the claimed invention. You must find anticipation if you find that all of the limitations recited in the patented claim were found in a single piece of prior art, united in the same way to perform the identical function. In making your determination on anticipation, you may not combine two or more items of prior art to find anticipation.

A printed publication will not anticipate the invention unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

The prior public use of a claimed invention may anticipate the patent claim if the invention was publicly used by the inventor, the patent owner, or anyone else more than one year before the application for the patent was filed. A prior public use by another may anticipate a patent claim, even if the use was

accidental or was not appreciated by the other person. Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done so.

As I stated above, a prior use does not anticipate the invention unless the use was public. Private or secret knowledge or use by someone other than the inventor is not prior art. Furthermore, if the public use was an experimental use performed in order to bring the invention to perfection or to determine if the invention was capable of performing its intended purpose, then such a use does not invalidate the claim.

Yahoo contends that claim 45 was anticipated by certain prior art printed publications and patents. To prevail on the defense that a patent claim was anticipated by prior art, Yahoo must prove anticipation by clear and convincing evidence. For claim 45, Yahoo must prove that each and every limitation of the claim was present within a single item of prior art and the single piece of prior art contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation.

**5.3 OBVIOUSNESS**

Yahoo contends that claim 45 of the '432 patent is invalid because the claimed invention would have been obvious to one of ordinary skill in the art at the time the invention was made. To be patentable, an invention must be such that it would not have been obvious to a person of ordinary skill in the pertinent art at the time the invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claim is invalid. Yahoo has the burden of proving by clear and convincing evidence that claim 45 of the '432 patent is invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention on the date of the invention. The issue is not whether the claimed invention would have been obvious to you as a layman, to me as a Judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art. Yahoo bears the burden of proving this defense by clear and convincing evidence. You must not use hindsight when comparing the prior art to the invention for obviousness. In making a determination of obviousness or non-obviousness, you must consider only what was known before the invention was made. You should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

In determining whether or not Yahoo has established obviousness of the claim of the patent-in-suit by clear and convincing evidence, you must consider the following factors:

1) the scope and content of the prior art put into evidence in this case;

2) the differences, if any, between each claim of the patent and that prior art;

3) the level of ordinary skill in the art at the time the invention was made;

4) any objective indications of nonobviousness, including the following secondary considerations which may give light to the circumstances surrounding the origination of the subject matter of the '432 patent:

   A) commercial success of the products or methods covered by the patent claims;

   B) a long-felt need for the invention;

   C) failed attempts by others to make the invention;

   D) copying of the invention by others in the field;

   E) unexpected results achieved by the invention;

F) praise of the invention by the alleged infringer or others in the field;

G) the taking of licenses under the patent by others;

H) expressions of surprise by experts and those skilled in the art at the making of this invention; and

I) the patentee proceeded contrary to accepted wisdom of the prior art.

These objective indicators serve to guard against slipping into use of hindsight and to resist the temptation to read the teachings of the invention into the prior art. The presence of any of these objective indications may suggest that the invention was not obvious. No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the invention as a whole.

These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claim. For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claim. If the commercial success is a result of something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of non-obviousness.

If you conclude that the prior art discloses all the limitations of the claimed invention, but those limitations are in separate items, you must then consider whether or not it would have been obvious to combine those items. A claim is not obvious merely because all of the limitations of that claim already existed. It can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the limitations in the way the claimed new invention does, but this consideration must not be converted to a rigid and mandatory formula. The prior art also must be complete enough to enable one of ordinary skill in the art to practice the claimed invention without undue experimentation.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

### 5.3.1 SCOPE AND CONTENT OF THE PRIOR ART

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Yahoo. You must decide whether this prior art was reasonably relevant to the particular problem the inventor was attempting to solve in making the invention covered by the patent claims. Such relevant prior art includes prior art in the field of the invention, as well as prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

### 5.3.2 DIFFERENCES BETWEEN THE ASSERTED CLAIM AND THE PRIOR ART

In determining the differences between the invention covered by the patent claim and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art. Obviousness requires a flexible and common-sense inquiry. Circumstances in which a finding of obviousness may be appropriate include, but are not limited to, the following:

1) the claimed invention is merely a predictable variation of the prior art that can be implemented by a person having ordinary skill in the art;
2) the claimed improvement over prior art is no more than the predictable use of prior art limitations according to their established functions; or
3) the combination of prior art references employed in the patent would have been obvious to try by a person having ordinary skill in the art, in light of a known design need or market demand to solve a particular problem.

You must not use hindsight when comparing the prior art to the claim of Creative's patent for obviousness. A patent composed of several limitations is not proved obvious merely by demonstrating that each of its limitations was, independently, known in the prior art. It is common for patented invention to rely on building blocks discovered by others long ago. New discoveries almost necessarily will be combinations of what, in some sense, is already known. You should avoid aggregating pieces of prior art through hindsight which would not have been combined absent the inventors' insight.

It can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the limitations in the way the claimed new invention does, but this consideration must not be converted to a rigid and mandatory formula. Further, such a reason or motivation need not be explicit in the teachings of the prior art, but may be implicit in the nature of the problem to be solved; the background knowledge of one having ordinary skill in the art; and the existence of a design need or market pressure to solve the problem.

You should also consider whether or not the prior art "teaches away" from the invention covered by the patent claim. A reference teaches away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference or would be led in a direction divergent from the path that was taken by the inventor. The question to be answered is: would someone reading the prior art be discouraged from following the path taken by the inventor?

### 5.3.3 LEVEL OF ORDINARY SKILL

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinarily skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include 1) the educational level and experience of people working in the field; 2) the types of problems faced by workers in the art and the solutions found to those problems; and 3) the sophistication of the technology in the field.

**5.3.4 DETERMINATION OF OBVIOUSNESS**

Yahoo contends that the invention claimed in claim 45 of the '432 patent would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made. If you find that Yahoo proved obviousness by clear and convincing evidence as to claim 45, then you should find that the claim is invalid for obviousness.

**6. DAMAGES**

If you find that the accused program infringes claim 45 of the '432 patent and that claim 45 is not invalid, you must determine the amount of damages to be awarded Creative for the infringement. On the other hand, if you find that the claim 45 is either invalid or is not infringed, then you need not address damages in your deliberations. Creative must prove each element of its damages by a preponderance of the evidence. If you find that there has been an infringement, Creative is entitled to an award of damages in the form of a reasonable royalty adequate to compensate it for the infringement. I will explain how you should determine an appropriate damage award, if damages are to be awarded in this case. If you find infringement, you should calculate damages only from October 22, 2001. Creative may recover damages for a product based upon Yahoo's direct infringement.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Creative.

**6.1 REASONABLE ROYALTY**

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention. A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a company in the position of Yahoo taking place just before the infringement began. You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license. Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations.

### 6.2 REASONABLE ROYALTY: RELEVANT FACTORS

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1) Any royalties received by the licensor for the licensing of the ‘432 patent, proving or tending to prove an established royalty;

2) The rates paid by Yahoo to license other patents comparable to the ‘432 patent;

3) The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold;

4) The licensor’s established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity;

5) The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business;

6) The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales;

7) The duration of the '432 patent and the term of the license;

8) The established profitability of the product made under the '432 patent, its commercial success, and its current popularity;

9) The utility and advantages of the patented invention over the old modes or devices, if any that had been used for achieving similar results;

10) The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

11) The extent to which Yahoo has made use of the invention; and any evidence that shows the value of that use;

12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13) The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer;

14) The opinion testimony of qualified experts;

15) The amount that a licensor and a licensee (such as Yahoo) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the

patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16) Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**6.3 REASONABLE ROYALTY: TIMING**

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by Yahoo after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time. You may only consider this information, however, if it was foreseeable at the time that the infringement began.

**7. INSTRUCTIONS FOR DELIBERATIONS**

These instructions are given to you as a whole, and you are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. You have heard all of the evidence in the case and you have heard the argument of counsel.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own

opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case. You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations and other organizations, stand equal before the law and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you regarding your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in the form with your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing

or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to deliberate.

**So ORDERED and SIGNED this 15th day of May, 2009.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE