## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| CREATIVE INTERNET § | |
| ADVERTISING CORPORATION, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. 6:07cv354 |
| § | |
| YAHOO! INC., et al., § | |
| § | |
| Defendants. § | |

### MEMORANDUM OPINION AND ORDER

This opinion contains the Court's findings of fact and conclusions of law concerning the Defendant's request for relief based on laches.[1] For the reasons stated below, Defendant's request for relief based on laches is **DENIED**.

### BACKGROUND

United States Patent 6,205,432 ("the '432 Patent") was filed on November 16, 1998, and issued on March 20, 2001. It is owned by Creative Internet Concepts, LLC ("CIC"), which granted an exclusive license to the plaintiff in this case, Creative Internet Advertising Corporation ("Creative"), to enforce the '432 Patent. In the present suit, Creative alleges infringement of the '432 Patent by Defendant Yahoo! Inc. ("Yahoo").

On March 17, 2000, Mr. Chuck Gabbard, co-inventor of the '432 Patent and co-owner of CIC, met with Mr. Sharat Israni, an employee of Yahoo, to discuss possible implementations of what would ultimately issue as the '432 Patent. DAY 2 TRANSCRIPT at 125:18-21. The meeting did not result in an agreement between the parties. Approximately one to two years later, Mr. Gabbard

---

[1] To the extent that any conclusion of law is deemed to be a finding of fact, it is adopted as such; and likewise, any finding of fact that is deemed to be a conclusion of law is so adopted.

became aware of the accused product in this case, Yahoo's IMVironments for Yahoo Instant Messenger. DAY 2 TRANSCRIPT at 125:18-21. Mr. Gabbard testified that he believed immediately that IMVironments infringed the '432 Patent. DAY 2 TRANSCRIPT at 117:13-17.

Approximately two to three years later, on December 3, 2004, CIC sent a letter to Yahoo informing Yahoo of its belief that IMVironments infringed the '432 Patent. Letter from Eric O. Haugen to Yahoo! Inc., Dec. 3, 2004, PLAINTIFF'S TRIAL EXHIBIT 22 ("CIAC 22"). This letter sparked negotiations which terminated without any agreement between the parties on either November 2, 2005 or January 20, 2006. *See* DEFENDANT'S BRIEF at 6, Doc. No. 290. Plaintiff filed the present suit on July 26, 2007.

## APPLICABLE LAW

Laches is "neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028-29 (Fed. Cir. 1992). Laches is an equitable defense that bars recovery of damages for infringement which occurs prior to filing suit. *Id.* A court must look at the particular facts and circumstances of each case and weigh the equities of the parties. *Id.* at 1032. A determination of laches is committed to the sound discretion of the trial court. *Id.*

To invoke laches, a defendant must prove:[2] (1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against defendant, and (2) the delay caused prejudice or injury to the defendant. *Id.* The length of time has no fixed boundaries, but it may not begin prior to the issuance

---

[2] If a patentee delays for more than six years, a presumption of laches exists, although the burden remains on the defendant to show the elements of laches. *Id.* at 1035-36. Neither party asserts that the period of delay in this case exceeds six years.

of the patent. *Id.* The prejudice to the defendant may be "evidentiary," *i.e.* the delay hindered the defendant's ability to prepare a defense because certain evidence was lost, or it may be "economic," *i.e.* the defendant undertook some damaging change that it would have avoided if suit had been filed earlier. *Id.* at 1033. A patentee may not "intentionally lie silently in wait watching damages escalate." *Id.*

A patentee may defeat a laches defense by offering a reasonable justification for its delay. *Id.* (listing examples). A justification for a period of time deducts that time from the total period of delay. *Id.* at 1032. A patentee may also defeat a laches defense if the infringer "has engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor." *Id.* (quoting *Bott v. Four Star Corp.*, 807 F.2d 1567, 1576 (Fed. Cir. 1986)).

## DISCUSSION

### I. Period of Delay

Defendant argues that the period of delay began when Mr. Gabbard actually became aware of IMVironments. Defendant does not offer evidence of when Mr. Gabbard reasonably should have been aware of IMVironments. *See id.* at 1032. Defendant argues that Mr. Gabbard's testimony shows that he became aware of IMVironments on the date that IMVironments was released to the public, October 22, 2001.

Contrary to Defendant's arguments, Mr. Gabbard testified: "It was after we met with the chief technology officer. We—I was using Yahoo Instant Messenger back then and it seems like one day a year or two years, I don't know how long after—I can't recall exactly—all of a sudden there's a new feature in Yahoo Messenger called IMVironments." DAY 2 TRANSCRIPT at 125:18-21. Mr. Gabbard met with Defendant's chief technology officer on March 17, 2000. DAY 2 TRANSCRIPT at

125:18-21. Thus, the evidence shows that the period of delay began sometime between October 2001 and March 2002.

CIC did not take any action regarding its potential infringement claim until December 3, 2004 when it sent a letter to Defendant informing it of the '432 patent and U.S. Patent No. 6,633,850 ("the '850 Patent"). The '850 Patent, which stems from the same provisional application as the '432 Patent, was filed on May 9, 2000, and it issued on October 14, 2003. From December 3, 2004 to November 2, 2005 or January 20, 2006, the parties were involved in active negotiations related to these two patents. *See* CIAC 22-34; DEFENDANT'S BRIEF at 6, Doc. No. 290. Defendant does not dispute that this negotiation period must be discounted from the overall period of delay. *A.C. Aukerman Co.*, 960 F.2d at 1032.

Defendant does dispute whether the periods of time before and after this negotiation period should be discounted. During the 2-3 year period before negotiations began, Plaintiff argues that it delayed filing suit or attempting to negotiate with Defendant because it was awaiting issuance of the '850 Patent. *See Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1462 (Fed. Cir. 1990)[3] (finding that when a patent owner learns of a defendant's infringement and has a second patent application pending, a one and a half year delay is excusable while the patentee waits for the second patent to issue before acting to enforce its rights). Defendant attempts to distinguish *Meyers* by arguing that, in this case, Plaintiff waited longer than one and a half years, and it has not alleged infringement of the '850 Patent. However, while Plaintiff has not asserted the '850 Patent in this case, there is no requirement for Plaintiff to do so. Both the '432 and '850 Patents descend from the same provisional

---

[3] *Myers* was later overruled only to the extent that it suggested that burden could fall on a plaintiff to show that laches would be inappropriate. *A.C. Aukerman Co.*, 960 F.2d at 1039.

application and contain numerous similarities. In fact, the initial letter sent to Defendant on December 3 contains as much information about the '850 Patent as the '432 Patent. CIAC 22. The Court does not find it unreasonable that Plaintiff would rely on the '850 Patent during licensing negotiations, but ultimately not assert that patent in the present suit. However, Plaintiff delayed 13 months from the time the '850 Patent issued to the time that it sent the December 3, 2004 letter to Defendant. Plaintiff offers no excuse for this one year period of delay. Overall, the Court finds that Plaintiff has presented a reasonable justification for its delay during a portion of this period. The Court will discount the time that Plaintiff was awaiting the issuance of the '850 Patent.[4] The Court will not discount the additional year that Plaintiff waited to send the December 3, 2004 letter to Defendant.

After the '850 Patent issued and the negotiation period ended, Plaintiff waited an additional 19-22 months before filing the present suit. Plaintiff argues that Mr. Gabbard was "in the process of trying to find someone to mediate with Yahoo." Day 2 Transcript at 130:12-13. This is not a valid excuse. Courts have widely rejected lack of willing counsel as a valid excuse. *See Hall v. AquaQueen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996). The Court discerns little difference between a party's search for a mediator and its search for representation. Accordingly, the Court will not deduct this time from the overall delay period.

Based on the foregoing, the Court finds that the patentee delayed bringing suit for approximately 33-34 months. This period of time is significantly less than the six year period necessary for the presumption of laches to arise. Overall, the Court finds that this delay is not

---

[4] Even if the Court did not discount this period of time, the Court does not find a delay of 2-3 years to be unreasonable under the circumstances.

unreasonable under the circumstances.

## II.     Prejudice to Defendant

Defendant claims that Plaintiff's delay caused both economic and evidentiary prejudice.

### A.     Economic Prejudice

Defendant claims that it suffered economic prejudice because it has received over $33 million from IMVironments between 2001 and 2008 and it has incurred substantial costs growing this new business. DEFENDANT'S TRIAL EXHIBIT 1 ("Yahoo") 1. Defendant claims that it increased its employee expenses from $400,000 to $15.5 million and it increased its facility and equipment expenses relating to the accused product from approximately $700 to $250,000 between 2002 and 2008. Yahoo 3. Defendant also argues that it has been prejudiced because it could have mitigated damages or modified its product if Plaintiff had informed it of infringement earlier.

Defendant primarily relies on *Wafer Shave, Inc. v. Gillete Co.* for support. 857 F. Supp. 112 (D. Mass. 1993). In *Wafer Shave*, the patentee sent letters to the defendant threatening an infringement suit. Eventually communications between Plaintiff and Defendant ceased, and the parties did not communicate for two years and nine months. The defendant presented substantial evidence that during this time its legal department concluded that this matter "had been closed" and that no lawsuit would be forthcoming. *Id.* at 122. The defendant also presented significant evidence that, if it had been aware of the patentee's intentions, it would have at least reviewed the patent infringement claim more carefully and reviewed its business plans. *Id.* at 123-24. Furthermore, during the nearly three year delay period, the defendant went to great expense to undertake a "massive marketing campaign" without hearing any objection from the patentee. *Id.* at 128. Accordingly, the Court found the Plaintiff's claim barred by equitable estoppel and laches. *Id.* at 127.

Defendant's arguments fail to establish economic prejudice. At the March 17, 2000 meeting between CIC and Yahoo, CIC disclosed to Yahoo that 1) it had a patent application pending; 2) the invention disclosed in the patent application, and 3) the benefits that Yahoo could experience by utilizing the invention. DAY 1 TRANSCRIPT at 191:17–197:19; DAY 2 TRANSCRIPT at 107–19–112:7; DAY 3 TRANSCRIPT at 240:25–246:23. Because this meeting occurred before IMVironments was released, Defendant had a full opportunity to investigate the patents at issue, mitigate damages, or modify its product. In addition, after December 3, 2004, Defendant had specific knowledge of the '432 Patent and the '850 Patent, and further opportunity to modify its business plans. Defendant chose not to do so. This is not a case where the patentee "intentionally lie silently in wait watching damages escalate." *A.C. Aukerman*, 960 F.2d at 1033. Rather, in this case the infringer had notice of the patentee's claims and chose to proceed with development and sales of the accused product regardless. *See Mass Eng. Design, Inc. v. Ergotron, Inc.*, No. 2:06-cv-272, 2009 WL 1035205 at *15 (E.D. Tex. Apr. 17, 2009).

Finally, this case is distinguishable from *Wafer Shave*. In that case, the patentee's abrupt end to threats of litigation and years of silence in the face of a massive marketing campaign misled the defendant into believing that the patentee had abandoned its infringement claim. The patentee had no excuse for this misleading behavior. In addition, the defendant presented significant evidence that it would have re-evaluated its business plans if it had some notice of the patentee's intentions. 857 F. Supp. at 122-24. In contrast, in this case, Defendant has not presented any evidence, such as internal documents or legal memoranda, that it was misled into believing Plaintiff had abandoned its infringement claim. Nor has Defendant presented any concrete evidence efforts it would have made to reevaluate its business plans if it had been aware of Plaintiff's intentions. Furthermore, in

7

contrast to the Plaintiff in *Wafer Shave*, Plaintiff has offered valid excuses for at least some of the time that it delayed bringing suit. *See* 857 F. Supp. at 128-29. In short, Defendant has failed to prove that it has suffered the loss of monetary investments which would have been prevented by earlier suit. *See A.C. Aukerman*, 960 F.2d at 1033.

### B.  Evidentiary Prejudice

Defendant argues that it has suffered evidentiary prejudice because it has lost potentially exculpatory evidence of the infringing product's development. Specifically, Defendant points out that Chris Szeto, the programmer who developed the infringing product, testified that he kept records of his development efforts on an internal website. DAY 4 TRANSCRIPT at 24:23-26:3, 28:17-24. Mr. Szeto also testified that if he had been asked to save his records, he could have done so. *Id.* at 28:6-10. Instead, these records were lost or destroyed sometime between late 2004 and May 2005 when Mr. Szeto left Yahoo for a six month period. *Id.* at 24:14-16, 26:4-21. Defendant argues that these records could have shown that Defendant independently developed the infringing product thus precluding a finding of willful infringement.[5]

Defendant has not offered sufficient evidence to support its argument. Mr. Szeto testified that he left Yahoo "in 2004." *Id.* at 26:4-6. He further testified that he discovered that his documents were missing when he returned to Yahoo in May 2005. *Id.* at 24:14-16. Therefore, it is entirely possible that Defendant destroyed the documents during negotiations with Plaintiff. If the documents were destroyed during this time, it would tend to show evidentiary prejudice to Plaintiff, not

---

[5] In Defendant's Opening Brief on Laches, it also argued that it suffered evidentiary prejudice because Mr. Gabbard may have lost several pieces of probative evidence. DEF.'S BR., Doc. No. 290 at 12 n. 4. Plaintiff points out that this argument is not supported with any concrete evidence, and accuses Defendant of making a frivolous argument. PL.'S BR., Doc. No. 287 at 8-9. Defendant does not respond to Plaintiff's statements. *See* DEF.'S REPLY BR., Doc. No. 291. Thus, Defendant has not shown that it suffered prejudice due to Mr. Gabbard's actions.

Defendant. Furthermore, Defendant has not submitted any evidence that it had any sort of formal document retention policy in place at the time, or that it destroyed these documents pursuant to such a policy. While there is no requirement that a company destroy documents pursuant to a formal document retention policy to prove laches, this sort of evidence would help establish that it was Plaintiff's delay that caused the loss of evidence rather than Defendant's document management policies. *See, e.g., Troxler Elec. Labs., Inc. v. Pine Instrument Co.* 597 F. Supp.2d 574, 599 (E.D. N.C. 2009).

Overall, while Plaintiff did delay in bringing this suit, Defendant has failed to show that this delay was unreasonable or that any material prejudice resulted from the delay. In addition, because Defendant was found to willfully infringe the '432 Patent, the Court finds Defendant's request for relief based on laches to be inappropriate.

## CONCLUSION

Defendant's request for relief based on laches is **DENIED**.

**So ORDERED and SIGNED this 29th day of July, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE