**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **CREATIVE INTERNET** § | |
| **ADVERTISING CORPORATION,** § | |
| § | |
| Plaintiff, § | |
| § | **CIVIL ACTION NO. 6:07cv354** |
| v. § | |
| § | |
| **YAHOO! INC., et al.,** § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Yahoo! Inc.'s ("Yahoo") Motion for Judgment as a Matter of Law of Non-Infringement Under Rule 50 ("Motion") (Doc. No. 278).[1]  Plaintiff Creative Internet Advertising Corporation ("Creative") has filed a Response to Yahoo! Inc.'s Motion for Judgment as a Matter of Law of Non-Infringement Under Rule 50 ("Response") (Doc. No. 289).  Defendant has also filed a Reply to CIAC's Response to Yahoo's Motion for Judgment as a Matter of Law of Non-Infringement Under Rule 50 ("Reply") (Doc. No. 283).  Having considered the parties' arguments, the Court hereby **DENIES** Defendant's Motion.

**BACKGROUND**

On July 26, 2007, Plaintiff filed the instant action against Defendant Yahoo! Inc., alleging infringement of claim 45 of U.S. Patent No. 6,205,432 ("the '432 patent").  COMPLAINT (Doc. No. 1) at 1–3.  Claim 45 discloses:

---

[1] On May 29, 2009, Defendant originally filed its Motion for Judgment as a Matter of Law of Non-Infringement Under Rule 50 (Doc. No. 242).  However, the Court ordered both parties to re-submit a number of post-trial filings (Doc. No. 271).

> 45. A computer program embodied on a computer readable medium for inserting a background reference to a stored advertisement into an end user communication message, said computer program comprising:
> > logic configured to receive an end user communication message from a first site;
> > logic configured to insert a background reference to a stored advertisement into said end user communication message, wherein said logic configured to insert the background reference is further configured to insert said background reference responsive to an overwrite authorization; and
> > logic configured to transmit said end user communication message with the background reference to a second site.

'432 patent at 21:38–39, 22:1–14 (claim 45).

On May 15, 2009, a jury found that claim 45 of the '432 patent was valid and willfully infringed by Defendant Yahoo, both literally and under the doctrine of equivalents. VERDICT FORM (Doc. No. 227). After the jury returned the verdict, Defendant filed the instant Motion arguing that it is entitled to judgment as a matter of law of non-infringement because Plaintiff failed to present substantial evidence to support its burden of proving patent infringement of claim 45 of the '432 patent. MOTION at 1.

## **LEGAL STANDARD**

A renewed motion for judgment as a matter of law ("JMOL") is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. *Power-One, Inc. v. Artesyn Tech., Inc.*, 556 F. Supp. 2d 591, 593 (E.D. Tex. 2008) (citing *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 235 (5th Cir. 2001)). Rule 50 provides that judgment as a matter of law is appropriate if the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. FED. R. CIV. P. 50(a)(1). In ruling on a renewed motion for JMOL,

2

the court may allow judgment on the verdict, if the jury returned a verdict; order a new trial; or direct the entry of judgment as a matter of law.  FED. R. CIV. P. 50(b).

A jury's verdict may be overturned if, viewing the evidence and inferences therefrom in the light most favorable to the party opposing the motion, there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did.[2] *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005).  The court may not make credibility determinations, nor weigh the evidence. *Power-One*, 556 F. Supp. 2d at 594 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## DISCUSSION

Defendant argues that the testimony of both parties' experts shows that the accused system does not have the capability to change or replace any portion of a set of data transmitted over a communications network, even if the writing of the data into a buffer is considered.  MOTION at 2. Defendant contends that the writing of data into a buffer allows for an entire collection of data to be replaced, but does not allow internal changes to be made to a collection of data.  *Id.*  Thus, Defendant contends that Plaintiff failed to present evidence to prove that the IMVironments program meets the "overwrite authorization" limitation of claim 45, and Defendant requests that the Court grant its Motion for judgment as a matter of law on this issue.  *Id.*

The "overwrite authorization" limitation of claim 45 is where the parties focus a majority of their arguments.  Defendant argues that it was undisputed at trial that in the Messenger program, each end user communication message that leaves a first communications network point is

---

[2]Because a motion for judgment as a matter of law is a procedural matter not unique to patent law, the law of the regional circuit controls.  *Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004).

unaltered when it arrives at the second communications network point. MOTION at 3. As a result, Defendant argues that Plaintiff failed to prove that an existing background reference was ever replaced. *Id.* Defendant further argues that Plaintiff's "buffer theory" of infringement cannot meet the claim limitations of claim 45. *Id.* at 3–4.

Plaintiff asserts that, in its Motion, Defendant fails to focus on the language of claim 45. RESPONSE at 2. Plaintiff contends that claim 45 requires "an approval to replace an existing link or tag in a set of data transmitted over a communications network with a link or tag to a stored advertisement," as construed by the Court, and that Defendant's argument is inconsistent with the Court's claim construction. *Id.* at 2–3. Plaintiff argues that it proved literal infringement through its expert witness' testimony during its case-in-chief and that it further proved infringement during Defendant's case-in-chief. *Id.* at 3–12.

Plaintiff had the burden of proving infringement at trial by the preponderance of the evidence. *Lemelson v. United States*, 752 F.2d 1538, 1547 (Fed. Cir. 1985) (citing *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1361 (Fed. Cir. 1983)). The jury found the '432 patent to be valid and infringed. VERDICT FORM. To prevail on its Motion for JMOL, Defendant must now show that the evidence so conclusively favored Defendant that reasonable jurors could not have reached that verdict. *Power-One*, 556 F. Supp. 2d at 593–94. Both sides presented substantial evidence of infringement and non-infringement through their expert witnesses—Mr. David Klausner and Dr. Benjamin Goldberg. MOTION at 4–8; RESPONSE at 3–5, 9–13. Plaintiff also points to the testimony of Mr. Bing Yuan and Mr. Szeto in support of the jury's verdict. RESPONSE at 5–9.

**I.      Testimony of Mr. Klausner Regarding Infringement**

With respect to the first limitation of claim 45, Mr. Klausner testified that the Yahoo Messenger program with IMVironments had logic configured to receive an end user communication message from a first site. *See* '432 patent at 22:3–4; RESPONSE, EXH. 1, TRANSCRIPT OF TRIAL, MAY 12, 2009 ("DAY 2 TRANSCRIPT") at 205:24–25, 206:1–18. Mr. Klausner explained that the logic on a computer using the Yahoo Messenger program will be configured to insert an IMV I.D. into a message that is sent to another user—a link or a tag identifying the stored advertisement into this set of data that is transmitted over the communications network. *See* '432 patent at 22:5–7; DAY 2 TRANSCRIPT at 206:19–25, 207:1–2. Mr. Klausner further testified that the second user approves insertion of background references by enabling IMVironments, so the insertion is responsive to an overwrite authorization by the second user. *See* '432 patent at 22:7–10; 207:3–22. Finally, Mr. Klausner testified that the logic configured to transmit is located on the first user's computer, and it transmits the set of data with the background reference to the second user's computer—a second communications network point. *See* '432 patent at 11–13; DAY 2 TRANSCRIPT at 207:23–25, 208:1–15.

Mr. Klausner pointed to column 9, lines 25 through 48 of the patent specification when he testified regarding the overwrite authorization function. DAY 2 TRANSCRIPT at 224:9–25, 225:1–7. Mr. Klausner testified that the enable IMVironments button in the Messenger program operated to approve the replacement of the background references, as column 9 of the specification explained. *Id.* at 225:8–25, 229:1–4. Mr. Klausner also testified that the Messenger program infringed under the doctrine of equivalents. DAY 2 TRANSCRIPT at 226:5–15.

## II.     Testimony of Dr. Goldberg Regarding Infringement

Dr. Goldberg confirmed that when a first user of the Yahoo Messenger program transmits a message to a second user, the second computer receives the set of data with the IMV I.D. RESPONSE, EXH. 3, TRANSCRIPT OF TRIAL, MAY 14, 2009 ("DAY 4 TRANSCRIPT") at 201:17–25, 202:1–7, 16–21. He confirmed that the Messenger program is capable of inserting an IMV I.D. into a set of data and transmitting that set of data to another computer. *Id.* at 202:2–7. Dr. Goldberg also testified that the computers used by the first and second users both have these capabilities. DAY 4 TRANSCRIPT at 204:22–25, 205:1–6.

Finally, Dr. Goldberg confirmed that when a computer program puts something in a message, the computer creates in its memory certain memory locations to which the program writes data. DAY 4 TRANSCRIPT at 194:2–7. He explained that computers have incoming message buffers—memory where incoming messages are received—and when a second message comes in, the second message may be received by that same message buffer, overwriting the first message. *Id.* at 195:16–25, 196:1–9. He also explained that the computer used by the first user will have some memory location that indicates the IMV I.D. currently in use, and when a new message containing a different IMV I.D. is received, the data in that memory location gets overwritten with the new IMV I.D. *Id.* at 208:1–14. Dr. Goldberg also explained that if the IMVironments program is enabled by the second user and the first user's computer is aware that it is enabled, then the first user can create a new message that will have the IMV I.D. in it. *Id.* at 213:8–25, 214:1–12. Yet, if either of those conditions are not met, the IMV I.D. will not be inserted. *Id.*

### III. Testimony of Mr. Szeto Regarding Infringement

Mr. Szeto was a programmer with Yahoo that helped create the code for the IMVironments program. DAY 2 TRANSCRIPT at 218:6–9. In portions of his deposition played at trial, Mr. Szeto testified that the Yahoo Messenger program utilized by both users has an IMV I.D. variable that gets set to the IMV I.D. of the IMVironment chosen by the sender. *Id.* at 218:12–25, 219:1–13. He further testified that when the second user disables IMVironments, the first user is notified of this and the first user can no longer select an IMVironment to replace the second user's. DAY 2 TRANSCRIPT at 220:16–25, 221:1. During his live testimony at trial, Mr. Szeto also explained that this variable or identifier is used to load the chosen IMVironment, and when an identifier is chosen, it is stored in the user's computer and used to populate new messages that are sent. DAY 4 TRANSCRIPT at 62:20–25, 63:1–5, 20–25, 64:1–2. Additionally, when a message containing an identifier to a different IMVironment is received, the identifier on the user's computer is changed to the new IMVironment. *Id.* at 67:5–11.

### IV. Testimony of Mr. Bing Yuan Regarding Infringement

Mr. Yuan was designated by Yahoo as a 30(b)(6) witness. Portions of his video-taped deposition were played at trial. Mr. Yuan testified that the Yahoo Messenger program has the capability to send and receive packets of information over the internet. DAY 2 TRANSCRIPT at 215:18–25, 216:1–10. Mr. Yuan also confirmed that the internet is a communications network between the two users of the Yahoo Messenger program, and that the sender ID, recipient ID, message, IMV I.D. version number, and the IMV flag are all parts of the packet that gets sent. *Id.* at 216:11–20. Mr. Yuan further testified that when a user selects an IMV, the IMV is not sent—just

the information identifying the IMV selected by the sender is transmitted. DAY 2 TRANSCRIPT at 217:6–21. This information includes the IMV I.D. and the version number. *Id.* at 217:13–16.

## V.     The "Buffer Theory"[3]

Defendant argues that a collection of data residing in a buffer does not constitute an end user communication message, as interpreted by the Court. MOTION at 4; REPLY at 2. The Court held that the proper construction for the term "end user communication message" is "a set of data transmitted over a communications network." MARKMAN ORDER (Doc. No. 112) at 9. In so concluding, the Court explained:

> As discussed previously, an "end user communication message" encompasses a broad range of messages from any type of electronic feed, including but not limited to, web pages, e-mail messages, [and] public postings. All of these messages are made up of a set or multiple sets of data. Moreover, the '432 patent limits itself to application on communications networks.

*Id.* (internal quotations and citations omitted). Given that it was undisputed at trial that the Messenger program operated on the internet—a communications network—and that there was testimony confirming this, DAY 2 TRANSCRIPT at 215:18–25, 216:1–20, a reasonable jury could conclude that a collection of data residing in a buffer after being transmitted by the Messenger program is both "a set of data" and "data which has been transmitted over a communications network"—the internet. Defendant's conclusory arguments otherwise fail to establish a basis for determining otherwise as a matter of law.

---

[3]In its Motion, Defendant characterizes the "buffer theory" as Plaintiff's "sole infringement theory." MOTION at 1. Plaintiff contends this was not its sole infringement theory. RESPONSE at 3. Even if the verdict were not supported under the purported "buffer theory" discussed herein, the jury could have found infringement based on the remaining testimony and evidence regarding infringement presented at trial.

## VI. Internal Replacement

Defendant also argues that even if a collection of data residing in a buffer could be an end user communication message, nothing contained *within* that message is ever replaced. MOTION at 4; REPLY at 2. Defendant asserts that nothing internal to the set of data is ever replaced, and thus there is no infringement. MOTION at 4. The relevant limitation of claim 45 requires that the logic be "configured to insert said background reference responsive to an overwrite authorization." '432 patent at 22:8–10. The Court held that the proper construction for the term "end user communication message" is "a set of data transmitted over a communications network." MARKMAN ORDER at 9. The Court also held that the proper construction for "overwrite authorization" is "approval to replace an existing background reference in an end user communication message, as defined herein, with a background reference to a stored advertisement, as defined herein." In other words, "overwrite authorization" is "approval to replace an existing background reference in a set of data transmitted over a communications network with a link or tag identifying a stored advertisement promoting goods and/or services of organizations or individuals or promoting the organizations or individuals themselves." MARKMAN ORDER at 17, 20–21, 24–25.

Yet, nothing in either the claim language, nor the Court's construction require only an "internal" replacement. First, this is an apparatus claim and the computer program must be configured to insert a background reference responsive to an approval—replacement need not actually occur. *See* MARKMAN ORDER at 27–28. Second, the claim language does not limit "overwrite authorization" to internal replacement. *See* '432 patent at 21:38–39, 22:1–13 (claim 45). Third, the Court's construction indicates that what is replaced is an "existing background reference in a set of data." MARKMAN ORDER at 24–25. Logically, if a first end user communication

9

message—a set of data with an existing background reference—is located in a buffer, and that first message is wholly replaced by a second end user communication message which includes a link or tag identifying a stored advertisement, the existing background reference—which was a part of the first message—is replaced by the link or tag in the second, *along with the rest of the second message*. *See* DAY 4 TRANSCRIPT at 194:2–7, 195:16–25, 196:1–9, 208:1–14, 213:8–25, 214:1–12; *see also* DAY 2 TRANSCRIPT at 265:13–12 (pointing out that the Court's claim construction set forth a "a set of data," not a "set of data values").

Because this is an open-ended claim that uses the transitional phrase "comprising," the additional elements of the second message that "replace" the first message do not preclude infringement. *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1361 (Fed. Cir. 2007) (noting that the transitional phrase "'comprising'[] is generally understood to signify that the claims do not exclude the presence in the accused device . . .of factors in addition to those explicitly recited"). As previously noted, "internal" replacement is not a limitation of the claim, and nothing in the patent or the Court's claim construction indicates that such a limitation is appropriate. Moreover, the replacement of the existing background reference by a link or tag, in addition to other elements of the second message, does not preclude infringement because claim 45 uses the open-ended transition "comprising." For these reasons, Defendant's argument fails to establish that a reasonable jury could not find that the "overwrite authorization" limitation of claim 45 was met.

## VII. The "Enable" Checkbox

Defendant also argues that the "enable" check box does not modify or allow replacement of anything; it merely permits the use of IMV data by the Messenger program. REPLY at 4. As previously discussed, the relevant limitation of claim 45 as construed by the Court requires that

the logic be "configured to insert said background reference responsive to an approval to replace an existing background reference []." MARKMAN ORDER at 17, 20–21, 24–25. The portion of Mr. Klausner's testimony that Defendant points to regarding this argument, indicates that when a first user unchecks the "enable IMVironments" box, the second user receives a message that indicates that the first user disabled IMVironments and IMVironments can no longer be shared with the first user, until they are re-enabled. DAY 2 TRANSCRIPT at 201:12–25, 202:1–7. Mr. Klausner's testimony indicates that the second user, by checking or unchecking the "enable IMVironments" box, is explicitly approving or disapproving of the replacement of their existing message background. Thus, a reasonable jury could conclude that the "enable IMVironments" box in Defendant's Yahoo Messenger program represents the "approval" required by the "overwrite authorization" limitation of claim 45.

Finally, Defendant argues that Plaintiff failed to offer any particularized testimony on infringement under the doctrine of equivalents. REPLY at 8. Equivalency under the doctrine of equivalents is required to be proven on a limitation-by-limitation basis by particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device. *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566–67 (Fed. Cir. 1996); *see also Hewlett-Packard Co. v. Mustek Sys, Inc.*, 340 F.3d 1314, 1322–23 (Fed. Cir. 2003). In *Hewlett-Packard*, the Federal Circuit held that the plaintiff had failed to introduce evidence to support a verdict in its favor under the doctrine of equivalents. *Hewlett-Packard*, 340 F.3d at 1323. There the testimony at trial indicated that "as to each claim element . . . [the accused devices] perform the same function as the claim element," achieving the

same result in the same way. *Id.* The testimony was not broken down, in any fashion, by each particular limitation of the claim.

Here, Mr. Klausner specifically testified that as to the overwrite authorization limitation he reviewed the specification of the patent and the Messenger program, and he believed that the enable IMVironments checkbox operated to approve the replacement of the background reference. DAY 2 TRANSCRIPT at 224:9–25, 225:1–25, 226:1–15. He went on to explain that this limitation of claim 45 operates in the same way—by having program code written that will look at the condition and determine whether it is enabled or not. *Id.* Finally, he pointed to the ability to replace as the result in both the specified claim limitation, as well as the IMVironments program, before concluding that the program infringes under the doctrine of equivalents. *Id.* Thus, as to this limitation, Mr. Klausner's testimony was particularized. Accordingly, Defendant has failed to show that a reasonable jury could not have returned a verdict in favor of Plaintiff under the doctrine of equivalents.

## **CONCLUSION**

Thus, after reviewing the testimony of Mr. Klausner, Dr. Goldberg, Mr. Szeto, and Mr. Yuan, and viewing the evidence and inferences therefrom in the light most favorable to Plaintiff, the Court cannot say that there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did here. Therefore, Defendant is not entitled to judgment as a matter of law. For all these reasons, Defendant Yahoo! Inc.'s Motion for Judgment as a Matter of Law of Non-Infringement Under Rule 50 (Doc. No. 278) is **DENIED**.

**So ORDERED and SIGNED this 30th day of July, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

Case 6:07-cv-00354-JDL   Document 302   Filed 07/30/09   Page 13 of 13 PageID #:  7465

**So ORDERED and SIGNED this 30th day of July, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE