**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **CREATIVE INTERNET ADVERTISING CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 6:07cv354** |
| **v.** | § | |
| | § | |
| **YAHOO! INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Yahoo! Inc.'s ("Yahoo") Motion for a New Trial Under Rule 59 ("New Trial Motion") (Doc. No. 277) and Motion to Strike the Testimony of Plaintiff's Expert Dr. David Klausner and Judgment as a Matter of Law ("Motion to Strike") (Doc. No. 274) (collectively, "Motions").[1] Plaintiff Creative Internet Advertising Corporation ("Creative") has filed a Response in Opposition to Defendant Yahoo! Inc.'s Motion for a New Trial Under Rule 59 ("Resp. to New Trial Motion") (Doc. No. 288) and a Response to Defendant Yahoo! Inc.'s Motion to Strike Testimony from Plaintiff's Technical Expert and Grant Judgment as a Matter of Law of Non-Infringement ("Resp. to Motion to Strike) (Doc. No. 293). Defendant has also filed a Reply to CIAC's Response to Yahoo's Motion for a New Trial Under Rule 59 ("Reply to New Trial Motion") (Doc. No. 282) and a Reply to CIAC's Response to Yahoo's Motion to Strike Testimony from Plaintiff's Technical Expert and Grant Judgment as a Matter of Law of Non-Infringement

[1]On May 29, 2009, Defendant originally filed its Motions (Doc. Nos. 239, 241). However, the Court ordered both parties to re-submit a number of post-trial filings (Doc. No. 271).

("Reply to Motion to Strike") (Doc. No. 280). Having considered the parties' arguments, the Court hereby **DENIES** both Motions.

**BACKGROUND**

On July 26, 2007, Plaintiff filed the instant action against Defendant Yahoo! Inc., alleging infringement of claim 45 of U.S. Patent No. 6,205,432 ("the '432 patent"). COMPLAINT (Doc. No. 1) at 1–3. Claim 45 discloses:

> 45. A computer program embodied on a computer readable medium for inserting a background reference to a stored advertisement into an end user communication message, said computer program comprising:
>
> logic configured to receive an end user communication message from a first site;
>
> logic configured to insert a background reference to a stored advertisement into said end user communication message, wherein said logic configured to insert the background reference is further configured to insert said background reference responsive to an overwrite authorization; and
>
> logic configured to transmit said end user communication message with the background reference to a second site.

'432 patent at 21:38–39, 22:1–14 (claim 45).

On May 15, 2009, a jury found that claim 45 of the '432 patent was valid and willfully infringed by Defendant Yahoo, both literally and under the doctrine of equivalents. VERDICT FORM (Doc. No. 227). After the jury returned the verdict, Defendant filed the instant Motions. Defendant argues that it is entitled to a new trial as a result of prejudice it suffered during trial. NEW TRIAL MOTION at 1. Defendant also argues that it is entitled to judgment as a matter of law of non-infringement because the testimony of Plaintiff's technical expert, Mr. David Klausner, should be stricken from the record. MOTION TO STRIKE at 1.

## LEGAL STANDARD

### I. New Trial

A new trial may be granted to a party in a jury trial "for any reason for which new trials have heretofore been granted in action at law in federal court." FED. R. CIV. P. 59. The granting of a new trial is a procedural issue that this governed by the laws of the regional circuit. *See LNP Engineering Plastics, Inc. v. Miller Waste Mills, Inc*., 275 F. 3d 1347, 1353 (Fed. Cir. 2001). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *z4 Technologies, Inc. v. Microsoft, Corp.*, 2006 WL 2401099 at *12 (E.D. Tex. August 18, 2006) (quoting *Smith v. Transworld Drilling Co*., 773 F. 2d 610, 612-13 (5th Cir. 1985)).

### II. Motion to Strike Evidence

Prior to trial, an expert witness must disclose a written report that "contain[s] a complete statement of all opinions the witness will express and the basis and the reasons for them." FED. R. CIV. P. 26 (a)(2)(B)(I). If a party's witness fails to do so, the party is not allowed to use the information unless the failure to do so was without substantial justification or was harmless. FED. R. CIV. P. 37 (c)(1); *see also Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996) (finding that district court acted within discretion to strike expert witnesses under Rule 37).

### III. Judgement as a Matter of Law

A renewed motion for judgment as a matter of law ("JMOL") is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. *Power-One, Inc. v. Artesyn Tech., Inc.*, 556 F. Supp. 2d 591, 593 (E.D. Tex. 2008) (citing *Flowers v. S. Reg'l Physician Servs*., 247 F.3d

229, 235 (5th Cir. 2001)). Rule 50 provides that judgment as a matter of law is appropriate if the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. FED. R. CIV. P. 50(a)(1). In ruling on a renewed motion for JMOL, the court may allow judgment on the verdict, if the jury returned a verdict; order a new trial; or direct the entry of judgment as a matter of law. FED. R. CIV. P. 50(b).

A jury's verdict may be overturned if, viewing the evidence and inferences therefrom in the light most favorable to the party opposing the motion, there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did.[2] *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005). The court may not make credibility determinations, nor weigh the evidence. *Power-One*, 556 F. Supp. 2d at 594 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

**DISCUSSION**

**I. Motion for New Trial**

Defendant contends that it is entitled to a new trial on the grounds of unfair prejudice for two reasons. NEW TRIAL MOTION at 1. First, Defendant argues it suffered prejudice as a result of the Court's supplemental claim construction during trial. *Id.* As a result of this claim construction, Defendant argues it was unable to present evidence on a significant number of prior art references that invalidate the '432 patent. *Id.* Second , Defendant argues that it also suffered prejudice because Plaintiff failed to disclose the "buffer" theory of infringement prior to trial. *Id.* Plaintiff responds that Defendant not only invited the alleged error itself, but Defendant also failed to preserve the alleged error at trial. RESP. TO NEW TRIAL MOTION at 1.

---

[2]Because a motion for judgment as a matter of law is a procedural matter not unique to patent law, the law of the regional circuit controls. *Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004).

**A. Claim Construction**

In patent cases, district courts have a duty to properly construe the scope of asserted claims. *Markman v. Westview Instruments, Inc*. 52 F.3d 967, 978 (Fed. Cir. 1995) ("in a case tried to a jury, the court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim"); *see also O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd*., 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it"). While district courts are not required to construe every limitation of the patentee's claim, *O2*, 521 F. 3d at 1362, allowing a claim construction issue to go undefined to the jury is error, *id.* at 1361.

District court's have "considerable latitude in determining when to resolve issues of claim construction." *Cytologix Corp. v. Ventana Medical Systems, Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *see also NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1305 n.8 (Fed. Cir. 2005) (noting that district courts are not required to adhere to specific timeline in making claim construction rulings). The Federal Circuit has recognized that *Markman* does not require claim construction to occur at an early stage in the case. *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996). The Federal Circuit has even declined to adopt rules setting forth the appropriate time for claim construction proceedings, in favor of a flexible, case-by-case approach. *See Vivid Tech., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("We see no need for [a rule setting forth when claim construction should occur], for the stage at which the claims are construed may vary with the issues, their complexity, the potentially dispositive nature of the construction, and other considerations of the particular case."). Yet, because the jury must be instructed on the proper meaning of disputed claim terms, claim

construction must occur prior to instructing the jury. *See Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1556 (Fed. Cir. 1995) (district court heard claim construction arguments after the close of evidence); *see also Mobile Hi-Tech Wheels v. CIA Wheel Group*, 514 F. Supp. 2d 1172, 1189 (C.D. Cal. 2007) (noting that only limitation on district courts regarding the timing of claim construction proceedings is that the claims must be construed before the jury is instructed).

Here, the Court issued an extensive claim construction order construing nine disputed issues prior to trial. MARKMAN ORDER (Doc. No. 112). However, at trial, the parties still emphatically disputed whether claim 45 sets forth a limitation on the number of "end user communication messages" required for infringement. Over the course of the first three days of trial, this dispute manifested itself as a repetition of a sequential limitation argument that the Court rejected at claim construction. *See* MARKMAN ORDER at 25–28. From the beginning of trial, Defendant repeatedly emphasized the importance of the term "said" in claim 45. *See, e.g.*, DAY 1 TRANSCRIPT at 161:1–23 ("I want to show you something that's important and I think it will demonstrate why you have to pay attention to little words, words like the difference between an, A-N, and said, S-A-I-D. . . . So the point is that we told them that what we were not willing to do and we don't do today was to allow anybody to change the message that is actually chosen and sent."). Plaintiff repeatedly objected to any such discussion of the term "said," arguing that Defendant was re-arguing claim construction as it related to the sequential limitation argument or that Defendant was arguing a preferred embodiment.[3] *See, e.g.,* DAY 1 TRANSCRIPT at 161:1–23; RESP. TO NEW TRIAL MOTION, EXH. 7

[3]During claim construction, Defendant argued that the "functions" recited in the logic elements must occur in the order in which they appear in the claim. DEFENDANT YAHOO! INC.'S RESPONSE TO PLAINTIFF CREATIVE INTERNET ADVERTISING CORPORATION'S OPENING CLAIM CONSTRUCTION BRIEF (Doc. No. 102) at 28–30. Defendant arguedthat the structure of the claim supported this conclusion as a result of the use of the word "said." *Id.* at 30. The Court rejected this argument based on the premise that claim 45 is an apparatus claim that discloses a computer program. MARKMAN ORDER at 27–28. This reasoning was the basis for Plaintiff's objections throughout trial, as noted above.

("Day 2 Transcript") at 75:17–79:13, 230:7–232:14; RESP. TO NEW TRIAL MOTION, EXH. 6 ("Day 3 Transcript") at 346:1–18.

Finally, on the third day of trial and outside the presence of the jury, the dispute was properly framed as an issue before the Court.

> MR. SIMON: Your Honor, I think that's very clear what he's saying is it has to operate in this order. And that's exactly what -- they're rearguing the Markman.
> MR. BUNSOW: No.
> THE COURT: Hold on. Dr. Goldberg, can you testify that the logic configured to insert, it goes into a message that is received, you know? What they're concerned about is that there's some sort of sequence to this. Are you telling me you're going to put a sequence on this, that this received -- message that is inserted, it's got to be received and then it's got to be inserted?
> THE WITNESS: I'm going to say that the software has to be able to receive a message. The software has to be able to insert a background reference into that message.
> MR. SIMON: That's it, Your Honor. He just said it.
> THE COURT: Okay. Okay. That's good. All right. Mr. Simon, I don't think there's a dispute that the message is the same, it's the same message, correct?
> MR. SIMON: It can be, Your Honor.
> MR. BUNSOW: Oh, wait a minute. Wait a minute.
> MR. SIMON: Excuse me. That was my point why I wanted to show you this up there, my demonstrative. Yes, it can be the same message, yes.
> MR. BUNSOW: Your Honor, it is the same. Let me --
> THE COURT: Wait a minute, Mr. Bunsow, move over to the side of the courtroom, please.
> MR. SIMON: Your Honor, here's my point. As soon as we say does it have to be the same message, everybody starts thinking about the way the code operates while it's in use. And that's why it's a false argument. So saying it has to be the same message, the point is, if the program can receive a message, can insert something into a message and can send that message that inserts something into, then it's covered. Does it have to actually receive a message and then after it receives it insert it into? No.
> THE COURT: Well, that's a second issue. But when you say the logic has got to be configured to receive a message, logic configured

> to insert and logic configured to transmit, how can it not be the same message?
> MR. SIMON: Well, it is. And that's what I want to show you.
> THE COURT: I understand your argument that it's not that it receives it first and then inserts it, correct?
> MR. SIMON: Right. And that was what I was saying here, Your Honor. Our argument is this program, the IM messenger program over here, received a message from a first site over here and that the messenger program over here inserted something into the message and sent it. Now, the program over here can insert and send as well. But what this does is it inserts, sends and receives it. Now, that's the same message, it's just received after it's inserted and sent. Yes, it can be the same message, but it doesn't have to be received and then inserted, and that's what he's saying.
> THE COURT: Mr. Bunsow, I'll let you make your argument.
> MR. BUNSOW: Your Honor, I'm a member of the Patent Bar. I know Mr. Simon is a member of the Patent Bar. There is absolutely no question that use of the word "said" calls on the antecedent for that term.
> THE COURT: Okay. Let me cut down to it. Here's the deal, that the claim is logic configured to receive, logic configured to insert and logic configured to transmit. They're saying they don't want Dr. Goldberg to testify that you've got to receive – you're working on the message that's received necessarily, because it's not a receipt, insert, transmit.

DAY 3 TRANSCRIPT at 304:22–308:2. This interaction made clear that Defendant was arguing that the claim requires that the logic operate on a single message.[4] *See also* DAY 1

[4]For context, claim 45 is provided below with the relevant text highlighted:

> 45. A computer program embodied on a computer readable medium for inserting a background reference to a stored advertisement into an end user communication message, said computer program comprising:
>
> logic configured to receive **an end user communication message** from a first site;
>
> logic configured to insert a background reference to a stored advertisement into **said end user communication message**, wherein said logic configured to insert the background reference is further configured to insert said background reference responsive to an overwrite authorization; and
>
> logic configured to transmit said end user communication message with the background reference to a second site.

'432 patent at 21:38–39, 22:1–14 (claim 45).

TRANSCRIPT at 166:14–22 ("Now, this is the way our system works. . . . Message 1. User B gets message 1. User B may send back a message. That's message 2."); DAY 3 TRANSCRIPT at 308:22–24 ("we should have a stipulation that this end user communication message is the same in all three elements"); *id.* at 346:19–25, 347:1–12 ("It's the same set of data. It's the same – again, the original claim said message -- 'end user communication message.' It's the same set of data. It's the same message. That's what the word 'said' means."); *id.* at 348:25, 349:1–9 ("the claim requires that the program have code, logic, that is configured to -- is able to transmit or send the -- the said set of data transmitted over a communications network. In other words, said message, the same message that we're talking about above -- except this time it has the background reference to a second -- a second communications point."). Plaintiff, however, maintained that an infringing system could operate on one message or on multiple messages. *See, e.g.*, DAY 3 TRANSCRIPT at 305:17–25, 306:1–25, 307:1–13 (arguing that an infringing system can operate on one or more messages).

As a result of this ongoing dispute, Defendant proposed an instruction defining the term "said:"

> The use of the word ''said'' in a claim refers to an earlier use of the term in the claim, and more specifically, refers to the first or initial use of the term found in the claim. In grammatical terms, "[g]enerally, a term refers to an antecedent by repeating the antecedent identically except for preceding it with the word 'said' instead of 'a' or 'the.'"

DEFENDANT'S SUPPLEMENTAL PROPOSED PRELIMINARY INSTRUCTION (Doc. No. 221). The relevant language in claim 45 refers to "said end user communication message." '432 patent at 21:38–39,

22:1–14 (claim 45). The antecedent basis for "said" is in the first limitation of claim 45 and refers to "an end user communication message." *Id.*

When the Court broached the issue of construing "a" or "an," as the antecedent basis for "said," Defendant argued that the patentee had clearly disavowed more than one message. RESP. TO NEW TRIAL MOTION, EXH. 5 ("Day 4 Transcript") at 90:25–92:18.[5] Regardless the accuracy of the substance of this argument, it confirmed that the Court faced an issue of claim scope. A clear disavowal of claim scope is an issue of claim construction, solely within the purview of the district court. *O2 Micro*, 521 F.3d at 1362. Due to the parties' ongoing dispute and the resulting confusion potentially faced by the jury, the Court determined that an instruction on the proper scope and meaning of the term "said" was appropriate. However, to do so without further instructing the jury as to the proper scope and meaning of the antecedent basis, "a" or "an," would be misleading and incomplete. Thereafter, the Court determined this issue of claim scope regarding the singularity or plurality of the term "said," as well as its antecedent basis, "an," required resolution. DAY 4 TRANSCRIPT at 85:16–103:10. Noting the Court's duty to construe the claims, the Court issued a supplemental claim construction of these terms, as well as the Court's decision on the sequential limitation dispute, which tracked the Court's *Markman* Order. *Id.* at 100:9–103:10.

In support of its proposed instruction, Defendant cited to *Baldwin Graphics Systems, Inc. v. Siebert*. 512 F.3d 1338, 1343 (Fed. Cir. 2008). While *Baldwin Graphics* supports Defendant's proposed instruction, it also sets forth that the antecedent basis "a" or "an" in a patent claim means "one or more" in open-ended claims containing the transitional phrase "comprising." *Id.* at 1342–43 (citing *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000)); *see also Free*

[5]Portions of this exhibit are also attached to Defendant's Motion as Exhibit 2.

*Motion Fitness, Inc. v. Cybex Intern., Inc.*, 423 F.3d 1343, 1350–51 (Fed. Cir. 2005) ("Like the words 'a' and 'an,' the word 'the' is afforded the same presumptive meaning of 'one or more' when used with the transitional phrase 'comprising.'"); *Scanner Tech. Corp. v. ICOS Vision Sys. Corp., N.V.*, 365 F.3d 1299, 1305–1306 (Fed. Cir. 2004) (same); *Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*, 246 F.3d 1336, 1347 (Fed. Cir. 2001) (same).

Defendant argues that this supplemental claim construction was prejudicial as a result of the timing. NEW TRIAL MOTION at 4. In support, Defendant cites to a number of district court cases, as well as a patent law treatise, that note the *preference* that claim construction occur before trial. RESP. TO NEW TRIAL MOTION at 3–4. Yet, as previously noted, the timing was not improper under Federal Circuit precedent, *see Cytologix*, 424 F.3d at 1172, and Defendant cites to no controlling precedent that directs otherwise.

Most importantly, however, this Court conducted comprehensive *Markman* proceedings months before trial and issued a resulting opinion setting forth the Court's claim constructions. MARKMAN ORDER (Doc. No. 112). The issue of which Defendant now complains is a issue of claim scope that had not been brought to the attention of the Court, despite the comprehensive *Markman* proceedings, until trial began, and even then, it was not fully framed until the fourth day of trial. This issue, which became a significant dispute between the parties at trial, was never presented to the Court in any manner—as a matter of claim scope or otherwise.[6]

Both parties are fully aware that this Court has Local Patent Rules, as well as established practices, that emphasize the importance of conducting early and comprehensive *Markman* proceedings. PATENT RULES 4-1–4-6. Yet, this dispute was never brought to the attention of the

[6]The Court notes that neither party presented a motion for summary judgment on the issue of infringement or non-infringement.

Court. As Defendant's counsel pointed out during trial, there should have been no ambiguity in the record on this issue as a result of the use of the terms "an" or "said" because it is a matter of law.[7] *See* DAY 3 TRANSCRIPT at 308:21–309:1. If Defendant's non-infringement and invalidity theories were based on the alleged disavowal by the patentee of the common patent law definition of "a" or "an," Defendant could have argued this point during claim construction.[8] However, Defendant chose not to. Moreover, even if this issue arose after the Court issued the *Markman* Order, it should have been presented to the Court, even if that meant it would have been raised as late as the pretrial conference.

While this dispute should have been presented to the Court prior to trial, doing so would not have changed the Court's construction of the terms at issue. At trial, the Court set forth the common patent law definitions of "a" or "an" and "said." *See* MOTION, EXH. 1 at 2. The common patent meaning for the terms "a" or "an" is overcome only when "the claim is specific as to the number of elements" or "when the patentee evinces a clear intent to . . . limit the article." *Free Motion Fitness*, 423 F.3d at 1350 (quoting *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000)). Here, any references in the specification to an end user communication message that imply singularity are within the preferred embodiments, and this is not enough to establish clear disavowal. *See* '432 patent at 8:44–67, 9:1–5; *see also Free Motion Fitness* ("[t]he references to a single cable in the specification are found in the description of the preferred embodiments, and do

---

[7]Moreover, other statements made by Defendant's counsel, in conjunction to those previously cited, made clear the necessity of clarifying the proper construction of these terms. *See also* DAY 4 TRANSCRIPT at 307:16–19.

[8]In a separate post-trial Motion, Defendant asserts that it "based its entire non-infringement case on the construction that 'an' means one, and only one, message, because Yahoo's Messenger operates upon multiple messages, not single messages." DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO WILLFUL INFRINGEMENT UNDER RULE 50 AND NO ENHANCEMENT OF DAMAGES OR EXCEPTIONAL CASE (Doc. No. 279) at 6. However, as the Court points out above, this non-infringement argument is based on a clear disavowal of claim scope that requires a proper construction of the term at issue. Such a construction was neither issued, nor presented as a dispute or issue to the Court prior to trial.

not evince a clear intent by the patentee to limit the article to the singular"). In *Free Motion Fitness*, the Federal Circuit rejected this argument of singularity in a similar context. 423 F.3d at 1350–51 (rejecting the defendant's argument that the use of the term "the" in connection with the word "cable" elsewhere in the claim shows that the earlier reference to "a" denotes singularity).

Finally, the Court's supplemental claim construction did not broaden the scope of the prior art, as the Court merely set forth for the benefit of the jury the proper and common patent law meaning of the terms at issue. These terms have well-known and well-established meanings in this area of the law. *See Baldwin Graphics*, 512 F.3d at 1343 (noting common patent law meaning that terms "a" or "an" mean "one or more"); *Free Motion Fitness*, 423 F.3d at 1350–51 (same); *Scanner Tech.*, 365 F.3d at 1305–1306 (same); *Crystal Semiconductor*, 246 F.3d at 1347 (same); *KCJ Corp.*, 223 F.3d at 1356 (same). Neither the parties, nor counsel, should have harbored any notions outside of these meanings, without argument regarding the patentee's clear disavowal.

Defendant also notes that "[nothing] could be more prejudicial to a party then to have to rework its entire case, including the key issues of non-infringement and invalidity, in a split second at the close of trial." REPLY TO NEW TRIAL MOTION at 3. Yet, as Plaintiff points out, if this supplemental claim construction constituted an unfair surprise, subjecting Defendant to prejudice, Defendant could have requested the opportunity to recall certain witnesses, to present new prior art references, or even a continuance. Defendant did none of these things. While Defendant did lodge an objection to the Court's decision, Defendant took no further action in an effort to mitigate the alleged prejudice it now argues it suffered. Moreover, Defendant cannot argue that such efforts would have proven fruitless, as the Court allowed Defendant to reopen its case on the last day of trial to show the video testimony of Clayton Haynes. RESP. TO NEW TRIAL MOTION, EXH. 4 ("Day 5

Transcript") at 4:9–5–6. As a result, the Court can find no reason to justify a new trial. Defendant was neither unfairly surprised, nor prejudiced by the Court's supplemental claim construction.

**B. The "Buffer" Theory**

Defendant also argues that it was prejudiced at trial when Plaintiff's technical expert, Mr. David Klausner, presented allegedly new infringement theories on the last day of trial.[9] NEW TRIAL MOTION at 9. The concept of a "buffer" was first introduced at trial by Defendant's technical expert, Dr. Benjamin Goldberg. DAY 4 TRANSCRIPT at 195:16 – 196:9. Dr. Goldberg used the term to refer to a memory location where message overwriting takes place. *Id.* He testified that, "[c]omputers have incoming message buffers, the memory that when an incoming message comes in, that's where it goes." *Id.* at 195:22–24. Thereafter, the term was used repeatedly to refer to these memory locations by both parties' technical experts. *See, e.g.,* DAY 4 TRANSCRIPT at 198:3–10, 199:8–22, 200:18–23, 202:22–203:3, 204:7–10, 247:1–5, 248:21–23, 249:3–8, 249:15–250:1; DAY 5 TRANSCRIPT at 20:12–21, 25:6–12, 40:18–41:10, 41:22–42:5. Throughout the course of his testimony, Dr. Goldberg focused on the hardware and software operations that were occurring while using the Messenger program. *See*, *e.g.*, DAY 3 TRANSCRIPT at 352:11–16 (explaining that the computer uses the data and the message to display the right image and then the message is discarded); *id.* at 353:8–13 (explaining that when the computer receives a message it recognizes the associated IM I.D., displays the IMVironment, and throws away the message); DAY 4 TRANSCRIPT at 200:18–201:14 (noting that the computer creates a message it populates the IMV I.D. field by writing the information to the appropriate location); *id.* at 202:16–203:8 (clarifying that

[9]As Plaintiff points out, Defendant misrepresents the trial record on this issue. Defendant states that it "did not have any chance to rebut his claims" and that "Mr. Klausner was the last witness to testify at trial. . . . [so] the patentee was unfairly entitled to present a theory of liability after the close of both parties case-in-chief." NEW TRIAL MOTION at 7–8. The final day of trial closed with Dr. Goldberg on the stand, *see* DAY 5 TRANSCRIPT at 47:16–49:13, after Mr. Klausner had testified in rebuttal, *see id.* at 14:22–42:19.

when a computer receives a message, the message gets stored in the message buffer). Dr. Goldberg explained his infringement analysis to the jury through a highly technical framework.

Mr. Klausner's expert reports and testimony at trial indicate that with respect to the "overwrite authorization" limitation, a first user gives approval to replace an existing link or tag by checking the "enable IMVironments" checkbox. *See, e.g.*, DAY 2 TRANSCRIPT at 223:11–224:8, 268:7–269:18. Mr. Klausner indicated that in forming this opinion, he relied upon the deposition testimony of Mr. Christopher Szeto, a programmer who worked on the IMVironments program. *Id.* at 215:18–222:22. Mr. Szeto testified that if a second user chooses an IMV I.D., such as the Pillsbury Savorings IMV I.D., a message will be sent to the first user with that IMV I.D. and the first user's IMVironment will be set to the Pillsbury IMV I.D. DAY 2 TRANSCRIPT at 219:25–220:15. Mr. Klausner also indicated that in forming his opinion, he relied upon the deposition testimony of Mr. Bing Yuan, a 30(b)(6) representative from Yahoo. *Id.* at 215:18–218:5. Mr. Yuan testified that the packets of information that get sent over the network in the Messenger program include certain pieces of information, including the sender ID, recipient ID, the message, the IMV I.D. version number, and the IMV flag. DAY 2 TRANSCRIPT at 216:16–20. As will become clear, this is the information that Mr. Klausner referred back to during his rebuttal testimony.

Upon review of Mr. Klausner's testimony, his analysis focuses on the operation of the Messenger program and IMVironments from the perspective of a user. *See, e.g.*, DAY 2 TRANSCRIPT at 174:14–202:7. He explained how the user of the program would interpret the Messenger program with IMVironments to meet each limitation of claim 45, while referencing the code that controlled such operation. *See, e.g.*, DAY 2 TRANSCRIPT at 211:19–212:21; 223:11–224:8, 268:7–269:18. Specifically with respect to the "overwrite authorization" limitation, Mr. Klausner pointed to the

portions of Defendant's code that corresponds to the conditional approval and insertion. *Id.* at 212:1–213:6. In both his expert reports and his testimony, Mr. Klausner uses examples and "scenarios" of messaging sessions between users that would meet the limitations of claim 45. *See* MOTION, EXH. 1 at 15–27 (discussing the second limitation of claim 45 and setting forth "scenarios" between two users of the Messenger program); MOTION, EXH. 2 at 1–20; DAY 2 TRANSCRIPT at 174:14–176:1 (explaining that the demonstrative uses an example with users "Millie" and "Randy").

When Mr. Klausner took the stand after Dr. Goldberg testified, his analysis was also consistent with the previous testimony—his framework merely changed in response to Dr. Goldberg's testimony and focus on the hardware and software operations of the Messenger program. *See* DAY 5 TRANSCRIPT at 19:24–26:18. In fact, this frame-of-reference change was explicitly noted at the beginning of Mr. Klausner's rebuttal testimony:

> Q (By Mr. Grochocinski) Mr. Klausner, can you explain to the jury what is shown on the monitors, what is shown there? I don't know if you can see it or not from where you're sitting.
> A What's on the monitors is the same demonstration that I showed the jury a couple of days ago. The beginning of it, shown on the right side, is Randy already having the Army Strong selected on his machine, and there's his set of data down below.
> Q And in fairness, this is a little bit modified from the previous one, but it does set forth a similar scenario?
> A Correct.
> Q Now, where does that set of data that you were talking about there in the first site, Randy's computer, where is that?
> A The set of data is inside the machine. And in preparation for being sent out, it's inside the buffer of that machine.
> Q Now, would that be the same buffer that Dr. Goldberg was talking about here in the courtroom yesterday?
> A Yes.

DAY 5 TRANSCRIPT at 19:24–20:21. On redirect, this point was again made clear:

> A Although the buffer is a -- a piece of every single program that does input and output, and all of us experts know about it, as Dr. Goldberg knew about it, too. And rather than go to that level of depth and give you so many facts that would possibly confuse the issues, I just did a very simple demonstration. The fact is, anybody in my field knows what a buffer is.

*Id.* at 41:22–42:5. This portion of Mr. Klausner's testimony makes clear that he is responding to Dr. Goldberg's testimony as it related to the hardware and software operations, specifically within the buffer. The remaining portions of Mr. Klausner's testimony cited above utilize the examples he used in his direct testimony to explain how the buffer, brought up by Dr Goldberg, fits into his previous analysis.

Defendant argues that Mr. Klausner "admitted [that this new theory of infringement was not included in his expert report] during his cross examination." NEW TRIAL MOTION at 2. As Plaintiff points out, this is not what Mr. Klausner admitted. In response to questioning on the issue of the "buffer theory," Mr. Klausner admitted that the term "buffer" is neither in claim 45, nor in his previous testimony or expert report. DAY 5 TRANSCRIPT at 10:18–41:12. Just because the term "buffer" is not contained in his expert reports does not preclude Mr. Klausner from using the term in his testimony at trial. Mr, Klausner used the term to further clarify his previous testimony regarding infringement, in response to Dr. Goldberg's testimony.[10] Therefore, the Court finds that Mr. Klausner's testimony did not set forth a new theory of infringement.[11]

---

[10]If Defendant's Motion results from a lack of specificity regarding the technical operation of the program, as it relates to Plaintiff's infringement theory, Defendant should have raised such an objection prior to trial.

[11]The Court further notes that during Dr. Goldberg's cross-examination, the use of the term "buffer" became a point of contention.

> Q Okay. When your computer created that message 1, it created -- it allocated the memory location, the envelope, right? Yes?
> A Yeah. It will populate --
> Q Well, first, when you turned it on, it allocated a certain location in your computer's memory, right, for that message?
> A I don't know what you mean by "allocate." There's a buffer that you write data into.

As a result, the Court can find no reason to justify a new trial. Defendant was neither unfairly surprised, nor prejudiced by the testimony presented by Mr. Klausner on rebuttal near the close of trial.

## II. Motion to Strike

Similarly, in its Motion to Strike Mr. Klausner's testimony, Defendant argues that Mr. Klausner's testimony at trial regarding, what Defenadant calls, the "buffer theory" extends beyond what was included in his expert reports because the reports contained no opinion about infringement that involved any type of buffer. MOTION TO STRIKE at 7. Plaintiff argues that this theory was disclosed in Plaintiff's expert reports.[12]

RESP. TO MOTION TO STRIKE at 1.

For all the reasons set forth in section 1(B), *supra*, the Court finds that Mr. Klausner's testimony at trial was consistent with the disclosures made in his expert report. Furthermore, even if this testimony were not wholly consistent with Mr. Klausner's expert reports and previous testimony, exclusion should not occur if the failure to disclose prior to trial was substantially

---

> Q Okay. I was just using Mr. Szeto's terms. If you're not familiar with the term "allocate a memory location," we'll use "a buffer."
> A That's fine.
> Q You want to use "a buffer"?
> A Either way.
> Q Okay. So the buffer, in your example, is like my envelope, right?
> A It's a -- I would think of it more as your – the letter that you're writing the data on.
> Q Okay. We'll do it that way.
> A Okay.

DAY 4 TRANSCRIPT at 199:4–24.

[12]Plaintiff makes the further argument that Defendant waived this objection by failing to assert it at trial. RESP. TO MOTION TO STRIKE at 4. However, this argument is based on the premise that Mr. Klausner's testimony on the second day of trial—the testimony that Defendant is asserted to have failed to object to—is the same as Mr. Klausner's testimony on the last day of trial—the testimony that Defendant now objects to. *Id.* Yet, Defendant's Motion is based on the argument that this premise is not true. In other words, Defenadant argues that Mr. Klausner's testimony on the last day of trial is not consistent with either his previous expert reports or his previous testimony. *See* MOTION TO STRIKE at 7–8.

justified or harmless. FED. R. CIV. PRO. 37(c)(1). Thus, alternatively, lacking a wholly consistent basis for the testimony regarding the "buffer," Mr. Klausner's testimony is not inconsistent or unforseen to such a degree that striking the testimony is necessary. In other words, any error resulting from this testimony was harmless because the subject matter was similar or closely related to that disclosed in the expert reports and previous testimony. As a result, Mr. Klausner's testimony will not be stricken from the record. Based thereon, and as further explained in the Court's Order on Defendant's Motion for Judgment as a Matter of Law of Non-Infringement, the Court cannot say that there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did here. Therefore, Defendant is not entitled to judgment as a matter of law.

## CONCLUSION

In conclusion, the Court can find no reason to justify a new trial. Defendant was neither unfairly surprised, nor prejudiced by the Court's supplemental claim construction, nor by Mr. Klausner's testimony regarding infringement near the close of trial. Additionally, after reviewing Mr. Klausner's expert reports and testimony, as well as Dr. Goldberg's testimony, the Court finds no basis for striking Mr. Klausner's testimony from the record. Thus, viewing the evidence and inferences therefrom in the light most favorable to Plaintiff, the Court cannot say that there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did here. Therefore, Defendant is not entitled to judgment as a matter of law, nor a new trial. For all these reasons, the Court hereby **DENIES** Defendant Yahoo! Inc.'s Motion for a New Trial Under Rule 59 (Doc. No. 277) and Motion to Strike the testimony of Plaintiff's Expert Dr. David Klausner and Judgment as a Matter of Law (Doc. No. 274).

**So ORDERED and SIGNED this 29th day of July, 2009.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE