# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **CREATIVE INTERNET** § <br> **ADVERTISING CORPORATION,** § <br> § <br> **Plaintiff,** § <br> § <br> **v.** § <br> § <br> **YAHOO! INC., et al.,** § <br> § <br> **Defendants.** § | **CIVIL ACTION NO. 6:07cv354** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Yahoo! Inc.'s ("Yahoo") Motion for Judgment as a Matter of Law of No Willful Infringement Under Rule 50 and No Enhancement of Damages or Exceptional Case ("Motion") (Doc. No. 279) and Reply in support ("Reply") (Doc. No. 284).[1] Plaintiff Creative Internet Advertising Corporation ("Creative") has filed a Response in Opposition ("Response") (Doc. No. 297). Having considered the parties' arguments, the Court hereby **DENIES** Defendant's Motion.

## BACKGROUND

On July 26, 2007, Plaintiff filed the instant action against Defendant, alleging infringement of claim 45 of U.S. Patent No. 6,205,432 ("the '432 patent"). COMPLAINT (Doc. No. 1) at 1–3. Claim 45 discloses:

> 45. A computer program embodied on a computer readable medium for inserting a background reference to a stored advertisement into an end user communication message, said computer program comprising:

---

[1] On May 29, 2009, Defendant originally filed its Motion for Judgment as a Matter of Law of Invalidity (Doc. No. 243). However, the Court ordered both parties to re-submit a number of post-trial filings (Doc. No. 271).

>       logic configured to receive an end user communication message from a first site;
>       logic configured to insert a background reference to a stored advertisement into said end user communication message, wherein said logic configured to insert the background reference is further configured to insert said background reference responsive to an overwrite authorization; and
>       logic configured to transmit said end user communication message with the background reference to a second site.

'432 patent at 21:38–39, 22:1–14 (claim 45).

On May 15, 2009, a jury found that claim 45 of the '432 patent was valid and willfully infringed by Defendant, both literally and under the doctrine of equivalents. VERDICT FORM (Doc. No. 227). After the jury returned the verdict, Defendant filed its current Motion arguing that it is entitled to judgment as a matter of law of no willful infringement because Plaintiff failed to present sufficient evidence to support its case of willful infringement at trial.

## **LEGAL STANDARD**

A renewed motion for judgment as a matter of law ("JMOL") is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. *Power-One, Inc. v. Artesyn Tech., Inc.*, 556 F. Supp. 2d 591, 593 (E.D. Tex. 2008) (citing *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 235 (5th Cir. 2001)). Rule 50 provides that judgment as a matter of law is appropriate if the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. Fed. R. Civ. P. 50(a)(1). In ruling on a renewed motion for JMOL, the court may allow judgment on the verdict, if the jury returned a verdict; order a new trial; or direct the entry of judgment as a matter of law. Fed. R. Civ. P. 50(b).

A jury's verdict may be overturned if, viewing the evidence and inferences therefrom in the light most favorable to the party opposing the motion, there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did.[2] *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005) (citing *Delano-Pyle v. Victoria County*, 302 F.3d 567, 572 (5th Cir. 2002)). The court may not make credibility determinations, nor weigh the evidence. *Power-One*, 556 F. Supp. 2d at 594 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

The Federal Circuit has set forth a two-pronged approach to willful infringement. First, a plaintiff must make a showing of at least objective recklessness. *In re Seagate Tech. LLC*, 497 F.3d 1360, 1371, (Fed. Cir. 2007) (*en banc*). This showing requires "clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* The state of mind of the accused infringer is not relevant to the objective recklessness inquiry. *Id.* If a plaintiff can show objective recklessness, then the plaintiff must also prove that the objectively-defined risk "was either known or so obvious that it should have been known to the accused infringer." *Id.* While the Federal Circuit did not set forth further guidance in *Seagate* for applying this test, it did indicate that the objectively-defined risk should be determined by the record developed in the infringement proceeding. *Id.*

There are a number of factors that may be considered under this two-pronged approach. First, there is no duty to seek opinion of counsel regarding infringement, and it is improper to allow an adverse inference or evidentiary presumption that such an opinion would have been unfavorable.

---

[2]Because a motion for judgment as a matter of law is a procedural matter not unique to patent law, the law of the regional circuit controls. *Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004).

*Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008). Second, evidence of copying is relevant only to *Seagate's* second prong, "as it may show what the accused infringer knew or should have known about the likelihood of its infringement." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336 (Fed. Cir. 2009). Third, standards of commerce may be relevant to the inquiry. *Seagate*, 497 F.3d at 1371 n.5.

Other district courts have also considered 1) whether there was a bona fide disagreement regarding patent invalidity or infringement; 2) whether the infringer solicited or followed the advice of counsel; 3) whether there was continued infringement after notice of probable infringement; 4) whether there was a degree of similarity between the patented and accused devices; 5) whether the infringer took efforts to avoid infringement; and 6) whether the infringer was indemnified against infringement costs. *See, e.g., Cohesive Tech., Inc. v. Waters Corp.*, 526 F. Supp. 2d 84, 103–104 (D. Mass. 2007) (listing factors), *rev'd on other grounds*, 543 F.3d 1351 (Fed. Cir. 2008); *Informatica Corp. v. Business Objects Data Intergration, Inc.*, 527 F. Supp. 2d 1076, 1081 (N.D.Cal. 2007) (noting importance of closeness of the infringement case); *VNUS Medical Tech., Inc. v. Diomed Holdings, Inc.*, 527 F Supp. 2d 1072, 1073–76 (N.D. Cal. 2007) (discussing evidence of copying); *Telcordia Tech., Inc. v. Cisco Sys., Inc.*, 592 F. Supp. 2d 727, 745–46 (D. Del. 2009) (analyzing fact that infringer continued to make and sell accused product for an extended period despite notice of alleged infringement); *Power Integrations, Inc. v. Fairchild Semiconductor, Intern., Inc.*, 585 F. Supp. 2d 583, 588 (D. Del. 2008) (noting tension between case law on issue of whether substantial defenses should be considered in a willful infringement analysis because such defenses may only arise once litigation has commenced).

## DISCUSSION

Defendant argues that Plaintiff failed to present sufficient evidence at trial to prove by clear and convincing evidence that Defendant acted with an objectively high likelihood that its actions constituted infringement of a valid patent. MOTION at 4; REPLY at 1–2. Plaintiff responds that it presented clear and convincing evidence at trial that proves that Defendant continued to act despite knowing of an objectively high likelihood that its actions constituted infringement of the '432 patent. RESPONSE at 4.

Plaintiff had the burden of proving willful infringement by clear and convincing evidence at trial. *Cohesive Tech., Inc. v. Waters Corp.*, 543 F.3d 1351, 1374 (Fed. Cir. 2008) (citing *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)). The jury found the '432 patent to be valid and willfully infringed. VERDICT FORM. To prevail on its Motion for JMOL, Defendant must now show that the evidence so conclusively favored Defendant that reasonable jurors could not have reached that verdict. *Power-One*, 556 F. Supp. 2d at 593–94. Both sides presented substantial evidence of the events leading up to the instant lawsuit, which the Court will address.

On March 17, 2000, representatives from Creative Internet Concepts ("CIC")—the owner of the '432 patent—met with Mr. Sharat Israni, an employee at Yahoo. RESPONSE, EXH. 17, TRANSCRIPT FROM TRIAL ("Day 1 Transcript") at 187:16–189:4; MOTION, EXH. 1, TRANSCRIPT OF TRIAL, ("Day 2 Transcript") at 106:2–107:15;[3] RESPONSE, EXH. 19, TRANSCRIPT OF TRIAL ("Day 3 Transcript") at 231:2–232:1. At this meeting, the CIC representatives disclosed to Mr. Israni that 1) they had a patent application pending; 2) the invention disclosed in the patent application, and 3) the benefits that Yahoo could experience by utilizing the invention. DAY 1 TRANSCRIPT

---

[3] Plaintiff has also attached portions of the trial transcript from May 12, 2009 as Exhibit 18.

at 191:17–197:19; DAY 2 TRANSCRIPT at 107–19–112:7; DAY 3 TRANSCRIPT at 240:25–246:23. Specifically, Mr. Gragg testified that at the March 17, 2000 meeting with Yahoo he disclosed the advantages of the invention of the '432 patent to Mr. Israni, including using the technology in conjunction with advertisements for car manufacturing companies and consumer products. DAY 1 TRANSCRIPT at 191:17-194:13. Mr. Gragg also testified that he discussed with Mr. Israni the fact that the invention of the '432 patent would result in "prolonged interaction" with advertisements. DAY 1 TRANSCRIPT at 194:14-195:18. Mr. Gragg discussed a background advertisement for "Budweiser" with Mr. Israni at the March 17, 2000 meeting. Mr. Gragg noted that some people may object to such advertisements and explained that users' should be able to not receive those sorts of advertisements. DAY 1 TRANSCRIPT at 196:20- 197:19. Mr. Israni's testimony confirmed this. DAY 3 TRANSCRIPT at 240:16- 241:22; 257:17-257:24. One year later, on March 20, 2001, the '432 Patent issued. DAY 2 TRANSCRIPT at 22:9–10; RESPONSE, EXH. 20, TRANSCRIPT OF TRIAL ("Day 4 Transcript") at 55:16–25.

Defendant started developing the IMVironments program in February or March of 2001. DAY 4 TRANSCRIPT at 55:16–19. The Messenger program with IMVironments was launched at least as early as October 22, 2001. DAY 2 TRANSCRIPT at 306:14–307:5. Defendant has sold IMVironments to companies such as Honda, Mountain Dew, Build-a-Bear, Pillsbury and Crest. PLAINTIFF'S TRIAL EXHIBIT ("CIAC") 112. Defendant markets IMVironments by telling customers that IMVironments will result in "prolonged interaction" with an advertiser's brand. DAY 4 TRANSCRIPT at 310:2-12. Importantly, Defendant's Instant Messenger Program contains an "Enable IMVironments" check box that allows a user to disable IMVironments. Mr. Israni testified that the reason Defendant did not include IMVironments in Yahoo Messenger before March 17,

2000 was because of "commercialism." DAY 3 TRANSCRIPT at 276:6-276:24; CIAC 128. Mr. Israni also testified that the "Enable IMVironments" check box solved the "commercialism" problem. *Id*.

Defendant was first put on notice of the possibility of infringement at least as early as December 3, 2004. DAY 2 TRANSCRIPT at 292:22–293:1. A series of letters, emails, and phone calls were exchanged between attorneys for CIC and Ms. Lisa McFall, Vice President and Associate General Counsel for Yahoo, regarding the '432 patent. *See, e.g.*, DAY 2 TRANSCRIPT at 277:1–9, 280:1–288:1, 292:22–302:2; DAY 3 TRANSCRIPT at 159:20–167:23, 172:22–184:13; *see also* CIAC 22–35. In response, Ms. McFall reviewed the '432 patent and file history. DAY 2 TRANSCRIPT at 288:2–5, 288:11–14. Evidence was presented at trial that indicated that Ms. McFall set forth Defendant's position on non-infringement during her communications regarding the '432 patent. DAY 2 TRANSCRIPT at 298:23–301:9. Defendant did not obtain a formal written or oral opinion of counsel regarding infringement DAY 2 TRANSCRIPT at 291:24–292:9; DAY 3 TRANSCRIPT at 176:13–178:14. Defendant continued to offer the IMVironments program, as it was alleged to infringe, after the filing of the instant lawsuit, and Defendant made no attempt to design around claim 45. DAY 2 TRANSCRIPT at 302:11–303:5; DAY 3 TRANSCRIPT at 179:6–10, 183:7–24. Defendant contends that it independently came up with the IMVironments concept. However, Plaintiff points out that no corroborating evidence of independent conception, creation, or development was introduced at trial to support Mr. Szeto's claim that he came up with the idea.

After reviewing the evidence as set forth above, the Court finds that the jury could have come to the following conclusions: 1) before litigation commenced, Defendant neither solicited nor followed the advice of counsel—with the exception of the pre-suit investigation conducted by Ms. McFall; 2) Defendant continued to infringe after Plaintiff sent letters notifying Defendant of the

alleged infringement; 3) there was a substantial degree of similarity between the claimed invention and the IMVironments program; 4) Defendant made no efforts to avoid infringement after it was notified of the alleged infringement; and 5) Defendant unreasonably drew upon the disclosures at the March 17, 2000 meeting. *Cohesive Tech.*, 526 F. Supp. 2d at 103–104, *rev'd on other grounds*, 543 F.3d 1351; *Informatica Corp.*, 527 F. Supp. 2d at 1081; *VNUS Medical Tech.*, 527 F Supp. 2d at 1073–76; *Telcordia Tech.*, 592 F. Supp. 2d at 745–46; *Power Integrations*, 585 F. Supp. 2d at 588. Based on these conclusions, the jury could have reasonably found that Defendant acted in an objectively reckless manner and that Defendant knew or should have known of the risk of infringing the '432 patent. *Seagate*, 497 F.3d at 1371.

Defendant argues that its decision to not obtain an opinion of counsel regarding infringement is not determinative of this issue. REPLY at 2. While this is correct, the lack of opinion of counsel is one factor of many that the jury could have taken into account in determining whether Defendant willfully infringed. Because it was undisputed at trial that Defendant chose not to obtain an opinion of counsel, aside from the informal investigation conducted by Ms. McFall, the jury could have taken this fact into account in determining that Defendant willfully infringed.

Defendant also argues that claim 45 was not specifically identified until Plaintiff submitted its infringement contentions in February 2008. MOTION at 9–10; *see also* REPLY at 3–4. Defendant contends that "the patent owner asserted claim 37 of the '432 patent against Yahoo from December 2004 until January 2006." *Id.* In the correspondence that was exchanged regarding the '432 prior to the filing of the instant lawsuit, the '432 patent was specifically identified and it was requested that Defendant "review the [] claims at issue in the patents as well as the patents as a whole." DAY 2 TRANSCRIPT at 284:2–285:17. It is undisputed that based on the correspondence

8

regarding the '432 patent, Ms. McFall reviewed the '432 patent in its entirety, along with its file history. DAY 2 TRANSCRIPT at 288:2–5, 288:11–14. While an accused infringer must be on notice of an infringement claim in order to found to have willfully infringed, the parties cite to no cases that require that a Plaintiff specifically identify the claim to be asserted at trial prior to filing suit. Here, Plaintiff specifically identified the '432 patent and requested that Defendant review all claims, as well as the remainder of the patent. It is undisputed that Ms. McFall did so. Therefore, there is no dispute that Defendant was on notice of claim 45 and therefore had knowledge sufficient for the jury to find that Defendant acted recklessly with regard to infringing the '432 patent.

Defendant argues that it presented substantial non-infringement and invalidity defenses that also show it was not objectively reckless. MOTION at 5, 8–9; REPLY at 1–2. While Defendant did present invalidity defenses that were subject to reasonable argument, Defendant "based its entire non-infringement case on the construction that 'an' means one, and only one, message, because Yahoo's Messenger operates upon multiple messages, not single messages." *Id.* at 6. As the Court fully explains in its Order on Defendant's Motion for a New Trial, absent a proper construction outlining the clear disavowal by the patentee—as argued by Defendant in response to the Court's concern on this issue during trial—Defendant had no proper grounds to base its non-infringement case on the interpretation that "an" means one and only one. First, this is clearly contrary to a long line of controlling precedent. *See Baldwin Graphics Systems, Inc. v. Siebert*. 512 F.3d 1338, 1343 (Fed. Cir. 2008) (noting common patent law meaning that terms "a" or "an" mean "one or more"); *Free Motion Fitness, Inc. v. Cybex Intern., Inc.*, 423 F.3d 1343, 1350–51 (Fed. Cir. 2005) (same); *Scanner Tech. Corp. v. ICOS Vision Sys. Corp., N.V.*, 365 F.3d 1299, 1305–1306 (Fed. Cir. 2004) (same); *Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*, 246 F.3d 1336, 1347

(Fed. Cir. 2001) (same); *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) (same). Second, the Federal Circuit has explicitly rejected a substantially similar argument in a similar situation. *See Free Motion Fitness,* 423 F.3d at 1350–51 (rejecting Defendant's argument that the use of the term "the" in connection with the word "cable" elsewhere in the claim shows that the earlier reference to "a" denotes singularity). Finally, to base a non-infringement case on an understanding that "an" means one and only one, which would require clear disavowal by the patentee of the common patent law meaning of this term, without presenting this argument to the Court prior to trial, is no justification for the Court to now grant judgment as a matter of law on the issue of willful infringement

Finally Defendant argues that several claim terms were subject to a reasonable dispute as to the proper construction.[4] MOTION at 6. The only term Defendant points to relates to the Court's construction of "a" or "an," discussed at length in the Court's Order regarding Defendant's Motion for a New Trial. For all the reasons set forth in that Order, the Court finds that the alleged dispute regarding the proper construction of "a" or "an," is not a reasonable basis for Defendant to argue that this Court should grant judgment as a matter of law that Defendant did not willfully infringe.

After reviewing the evidence, as well as the parties' arguments, the Court finds that the jury was reasonable in finding that Defendant willfully infringed. As previously noted, the jury could have come to the conclusion that Defendant neither solicited, nor followed advice of counsel, continued to infringe the '432 patent after notice was given, ignored the substantial similarity

---

[4] Defendant asserts that both parties interpreted the term "an" to require one and only message. MOTION at 6. Plaintiff notes that it agreed with the construction and "always assumed the ordered construction of 'a' or 'an.'" RESPONSE at 8. Moreover, as discussed in the Court's Order regarding Defendant's Motion for a New Trial, the Court merely clarified the common patent law definition of these terms, and without a clear disavowal—and claim construction setting forth the Court's finding of such a clear disavowal—the parties had no reason to assume these terms carried other than the common patent law definitions.

between the claimed invention and the IMVironments program, made no efforts to avoid infringement, and unreasonably drew upon the disclosures at the March 17, 2000 meeting. *Cohesive Tech.*, 526 F. Supp. 2d at 103–104, *rev'd on other grounds*, 543 F.3d 1351; *Informatica Corp.*, 527 F. Supp. 2d at 1081; *VNUS Medical Tech.*, 527 F Supp. 2d at 1073–76; *Telcordia Tech.*, 592 F. Supp. 2d at 745–46; *Power Integrations*, 585 F. Supp. 2d at 588. Thus, the jury could have reasonably come to the conclusion that Defenadant was objectively reckless and that this objectively-defined risk was either known or so obvious that it should have been known to Defendant. *Seagate*, 497 F.3d at 1371. Therefore, Defendant is not entitled to judgment as a matter of law on this issue.[5]

## CONCLUSION

For all the reasons stated above, Defendant's Motion for Judgment as a Matter of Law of No Willful Infringement Under Rule 50 and No Enhancement of Damages or Exceptional Case (Doc. No. 279) is **DENIED**.

**So ORDERED and SIGNED this 30th day of July, 2009.**

      _____
                      JOHN D. LOVE
            UNITED STATES MAGISTRATE JUDGE

---

[5] Defendant also argues that the Court should grant judgment as a matter of law that this case is not exceptional and that Plaintiff is not entitled to enhanced damages. MOTION at 10–11; REPLY at 4. The Court will address these issues when it addresses Plaintiff's Motion for Entry of Judgment on the Verdict and Request for Enhanced Damages, a Finding That the Case is Exceptional, Attorney's Fees, Prejudgment Interest, Post-Judgment Interest, Supplemental Damages and Post-Verdict Royalty, (Doc. No. 245).