**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **CREATIVE INTERNET** | § | |
| **ADVERTISING CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION No. 6:07cv354-JDL** |
| **v.** | § | |
| | § | |
| **YAHOO! INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is Creative Internet Advertising Corporation's ("CIAC") Motion for Entry of Judgment on the Verdict (Doc. No. 286) ("Motion for Entry of Judgment"). This Motion was opposed by Defendant Yahoo! Inc.'s ("Yahoo") Response in Opposition (Doc. No. 292). CIAC requests that the Court order Yahoo to pay an ongoing royalty rate of 23%. Yahoo responds that no ongoing royalty rate is necessary because it has taken steps to remove the infringing aspects of IMVironments, and that CIAC has not shown that a 23% ongoing royalty rate is appropriate. On July 14, 2009, the Court ordered the parties to submit briefing and additional evidence to determine an appropriate ongoing royalty (Doc. No. 272). In compliance with this Order, CIAC filed a Brief in Support of Plaintiff's Request for an Entry of An Ongoing Royalty Rate (Doc. No. 313) ("CIAC Royalty Brief") and Yahoo filed a Brief Regarding Plaintiff CIAC's Request for a Post-Verdict Royalty (Doc. No. 312) ("Yahoo Royalty Brief"). Both parties then filed Responsive Briefing: CIAC Royalty Response (Doc. No. 314) and Yahoo Royalty Response (Doc. No. 316). On September 30, 2009, the Court held an evidentiary hearing on a reasonable ongoing royalty rate (Doc. No. 322)

("Transcript"). For the reasons that follow, Creative Internet Advertising Corporation's Motion is **GRANTED-IN-PART**.

<u>**BACKGROUND AND THE PARTIES' CONTENTIONS**</u>

On July 26, 2007, CIAC filed the instant action against Yahoo alleging infringement of U.S. Patent No. 6,205,432 ("the '432 patent"). On May 15, 2009, a jury found that claim 45 of the '432 patent was not invalid and willfully infringed by Defendant, both literally and under the doctrine of equivalents. VERDICT FORM (Doc. No. 227). Based on these findings, the jury awarded CIAC $6,625,584 in damages, which was based on a 20% royalty rate from Yahoo's revenues from January 1, 2002 through November 30, 2008. MOTION FOR ENTRY OF JUDGMENT at 12 (citing trial exhibits and expert testimony). After the jury returned the verdict, Plaintiff filed a Motion arguing that it is entitled to a post-verdict reasonable royalty because Yahoo continues to offer the Yahoo Messenger Program with IMVironments and continues to derive revenue from IMVironments post-verdict. MOTION FOR ENTRY OF JUDGMENT at 3–4, 12. Based on the jury's finding of willful infringement, the Plaintiff also argues that it is entitled to enhanced damages, attorney's fees, and pre- and post-judgment interest, and a declaration that this case is exceptional. *Id*. at 3–4.[1]

The instant dispute over ongoing royalty damages is premised on the theory that since Yahoo has continued to sell and earn revenue from IMVironments after the verdict, CIAC is entitled to continued relief in the form of ongoing monetary damages. MOTION FOR ENTRY OF JUDGMENT at 14–15. CIAC specifically petitions the Court for  an ongoing royalty rate of 23% on post-verdict revenues derived by Yahoo for continued infringement. *Id*.; CIAC ROYALTY BRIEF at 1.

---

[1] At this time, the Court will limit its discussion to CIAC's request for a post-verdict royalty, as argued at the hearing on September 30, 2009. The Court intends to address the remaining issues presented in the CIAC Motion for Entry of Judgment at a later time, with Final Judgment being entered shortly thereafter.

Defendant Yahoo opposes all such post-verdict relief in its Response to the CIAC Motion for Entry of Judgment (Doc. No. 292) ("Yahoo Entry of Judgment Response"). In addressing demands for supplemental damages, Yahoo continues to insist, post-trial, that the '432 patent is invalid and not infringed as a matter of law. YAHOO ENTRY OF JUDGMENT RESPONSE at 2. After the Court rejected this argument (Doc. No. 302) (denying Yahoo's Motion for Judgment as a Matter of Law), Defendant continues to argue that an ongoing royalty for future damages is not appropriate because it no longer incorporates the infringing feature into its "new" version of Yahoo Messenger.[2] YAHOO ROYALTY BRIEF at 1. Yahoo's non-infringement position is central to its opposition to CIAC's request for an ongoing royalty. In short, Yahoo contends that CIAC is not entitled to any post-verdict royalty because after the jury's finding of infringement, Yahoo removed the "enable IMVironments checkbox" from the version of Yahoo Messenger that is currently available for user download through the Yahoo server. *Id*. at 2.

## **LEGAL STANDARD**

The Supreme Court, in *eBay v. MercExchange LLC*, reversed the Federal Circuit's general rule that favored the imposition of permanet injunctions in patent cases. *Paice, LLC v. Toyota Motor Corp. (Paice III)*, 609 F. Supp.2d 620, 623 (E.D. Tex. 2009); *eBay v. MercExchange LLC*, 547 U.S. 388, 394 (2006). In place of the Federal Circuit's test for a permanent injunction under § 283, the Supreme Court reinstated the traditional four-factor test for establishing entitlement to injunctive

---

[2] For the sake of brevity, the Court will adopt the terms used by the parties in discussing the "old" and "new" versions of Yahoo Messenger. CIAC represents that the "old" version encompasses versions 5 through version 9.0.0.2152 of Messenger that were found to infringe claim 45 of the '432 patent. CIAC ROYALTY BRIEF at 7, n. 1. The "new" version refers to a public Yahoo Messenger, version 9.0.0.2162, that Yahoo released on March 27, 2009. *Id*. at 7.

relief.[3] *eBay*, 547 U.S. at 391. "Since *eBay*, various courts have struggled with the equitable concept of prospective damages in lieu of the patentee's 'right to exclude,' when injunctive relief is not appropriate under the *eBay* four-factor framework." *Paice III*, 609 F. Supp.2d at 623. Additionally, courts have noted that since *eBay*, the proper calculation of post-verdict damages became a more hotly contested issue. *Cummins-Allison Corp. v. SBM*, No. 9:07-cv-196, 2009 WL 3855958, at *1 (E.D. Tex. Nov. 13, 2009) (citing *eBay*, 547 U.S. at 391).

Under the Supreme Court's framework, once a district court finds that the traditional four-factor test does not apply, the district court may then consider a reasonable royalty in the form of monetary damages in lieu of a remedy in equity. *Paice III*, 609 F. Supp.2d at 624; *Amado v. Microsoft Corp. (Amado II)*, 517 F.3d 1353, 1361 (Fed. Cir. 2008). In sum, when an injunction is not proper under *eBay*, the question then becomes: "what amount of money would reasonably compensate a patentee for giving up his right to exclude yet allow an ongoing willful infringer to make a reasonable profit?" *Paice III*, 609 F. Supp.2d at 624 (citing *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) (factor 15)).

A district court has long had the authority to award supplemental monetary damages to an willful infringer by citing to language in the Patent Act's damages provision: "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention of the infringer, together with interest and cost as fixed by the court." 35 U.S.C. § 284; *see also Hynix Semiconductor, Inc. v. Rambus Inc.*, 609 F.

---

[3] Under the traditional four-factor test for injunctive relief, a plaintiff must demonstrate: (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) that the public interest would not be disserved by a permanent injunction. *eBay*, 547 U.S. at 390−91.

Supp.2d 951, 960–61 (N.D. Cal. 2009). Furthermore, "when damages are not found by a jury the court shall assess them." 35 U.S.C. § 284. This provision has traditionally been applied in the context of awarding supplemental damages for infringement between the time of a jury's verdict and the judgment. *Nat'l Instruments Corp. v. Mathworks, Inc.*, No. 2:01-cv-11, 2003 WL 24049230, at *4 (E.D. Tex. June 23, 2003) (noting that "a failure to award such damages would grant an infringer a windfall by enabling it to infringe without compensating a patentee for the period of time between the jury's verdict and the judgment"). Recently, however, when irreparable injury cannot be established, supplemental monetary damages have been extended under § 283 to compensate a patentee for future acts of infringement after the final judgment. *See Paice v. Toyota Motor Corp. (Paice II)*, 504 F.3d 1293, 1314–15 (Fed. Cir. 2007) (permitting the use of a patented invention in exchange for a royalty).

In *Paice II*, the Federal Circuit made it clear that a court can order future royalties to be paid, in accordance with principles of equity, "to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." *Paice II*, 504 F.3d at 1314 (citing 35 U.S.C.§ 283). In permitting the award of an ongoing royalty for patent infringement in some circumstances, the court further explained that the ongoing royalty may only be awarded where "necessary" to effectuate a remedy and this remedy is not warranted whenever a permanent injunction is not imposed. *Id*. at 1314–15 (encouraging district courts to first encourage the parties to allow the parties to negotiate a license amongst themselves before imposing an ongoing royalty).

Additionally, when finding that an ongoing royalty is necessary, the Federal Circuit has made it clear that (1) the district court may take additional evidence to account for any additional economic factors arising from the imposition of an ongoing royalty, *Paice II*, 504 F.3d at 1315, and (2)

5

damages for past infringement are separate and distinct from damages for future acts of infringement and may require different royalty rates given the change in the parties' legal relationship, among other factors. *Paice III*, 609 F. Supp.2d at 623–24; *Paice II*, 504 F.3d at 1317; *Amado II*, 517 F.3d at 1362 ("There is a fundamental difference, however, between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement. Prior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty. Once a judgment of validity and infringement have been entered, however, the calculus is markedly different because different economic factors are involved." (internal citations omitted)).

To this end, the approaches used to calculate of post-verdict royalties has not been uniform amongst various courts. *Boston Scientific Corp. v. Johnson & Johnson*, No. C02-00790, 2009 WL 975424, at *4–5 (N.D. Cal. Apr. 9, 2009) (discussing the competing methodologies employed by district courts and the Federal Circuit in determining a reasonable royalty rate under the *Georgia Pacific* factors or some variation thereof). While there is no bedrock principle governing how a jury verdict alters the parties' hypothetical negotiation, recent case law has applied a modified approach to the *Georgia Pacific* analysis that compromises between (1) a methodology that use a pre-verdict *Georgia-Pacific* analysis that does not account for changes in the parties' relationship after the jury's findings of infringement and validity,[4] and (2) a methodology that disregards the *Georgia-Pacific* analysis and focuses solely on the parties post-verdict relationship.[5] *See also Georgia-Pacific*, 318 F.Supp. at 1121–23; *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538 (Fed. Cir. 1995) (approving

---

[4] *See Ariba, Inc. v. Emptoris, Inc.*, 567 F. Supp.2d 914, 918 (E.D. Tex. 2008); *Cummins-Allison Corp. v. SBM Co., Ltd.*, 584 F. Supp.2d 916, 918 (E.D. Tex. 2008); *Orion IP, LLC v. Mercedes-Benz USA, LLC*, No. 6:05-cv-322, at *9 (E.D. Tex. Mar. 28, 2008).

[5] *See Amado v. Microsoft (Amado I)*, No. 8:03-cv-242 (C.D. Cal. Dec. 4, 2008).

the *Georgia-Pacific* analysis for determining reasonable royalty damages). In *Paice III*, the district court took this modified approach and used the *Georgia-Pacific* factors to establish an ongoing royalty rate by weighing certain factors differently in a post-verdict context. 609 F. Supp.2d at 630–31.

## ANALYSIS

The Court has weighed the traditional four-factor test announced in *eBay* and finds that CIAC has failed to establish irreparable injury that could not be remedied through monetary relief. Finding that an ongoing royalty is necessary—in lieu of injunctive relief—to adequately remedy future infringement, the Court now considers outstanding disputes surrounding the award of an ongoing royalty for prospective damages.[6]

**A.     The Burden of Proof**

**1.     The Standard for Relief**

In the Order (Doc. No. 272) requiring supplemental briefing on the appropriateness of an ongoing royalty rate, the Court indicated that it was specifically interested in arguments directed at determining which party bears the burden of proof for establishing the appropriateness of a Court awarded ongoing royalty rate under 35 U.S.C. § 283 when the infringing party states that infringement has ceased. In responding to the Court's questions on this point, CIAC argues that after a finding of infringement, the infringing party bears the burden of overcoming a presumption of continuing infringement by establishing that it did not, and does not continue to, willfully infringe post-verdict.  CIAC ROYALTY BRIEF at 3 (relying upon 35 U.S.C. § 284). CIAC posits that after a

---

[6] As discussed by the Federal Circuit in *Paice II*, the Court rejects any suggestion that it is imposing a "compulsory license" under 17 U.S.C. §115. *Paice II*, 504 F.3d at 1313, n. 13. The term "compulsory license" implies that *anyone* who meets certain criteria has congressional authority to use that which is licensed. *Id*. The ongoing royalty contemplated in this case is limited to the Defendant Yahoo that was found to infringe the '432 patent.

verdict finding infringement, the patentee's burden of proof has been satisfied and shifts to the adjudged infringer to prove that infringement has ceased. *Id*. at 7. To the extent that an infringing party is not able to overcome a presumption of continued infringement, CIAC argues that "the Court should determine the measure of damages adequate to compensate for the continued use made of the invention by the infringer, which should in no event be less than a reasonable royalty." CIAC ROYALTY BRIEF at 3.

Yahoo asserts a contrary position, arguing that the burden of proving damages necessarily falls on the patentee. YAHOO ROYALTY BRIEF at 5 (citing *Dow. Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003)). Defendant maintains that the burden does not shift after a jury finds infringement and Yahoo directly analogizes the burden of proof for ongoing royalty damages to the burden of proof required under *eBay*, where a plaintiff must show the necessity of injunctive relief under the traditional four factor test. *Id*. at 5–6 (discussing 35 U.S.C. § 283–84) ("Section 283 explicitly authorizes courts to issue injunctions but makes no determination on prospective relief. Although Section 284 of the Patent Act grants courts the authority to award a reasonable royalty, this section relates only to *past* infringement."). In short, Yahoo asserts that in the absence of a permanent injunction, CIAC still bears the burden of establishing the appropriateness of an ongoing royalty rate.

The issue presented here—determining an ongoing royalty when Defendant argues that infringement has stopped—appears to be one of first impression. The jury has awarded damages for past infringement, but the patentee also requests future damages while the adjudged infringer claims it has altered its product so that it no longer infringes. CIAC argues that an ongoing royalty should include revenues generated from the "new" version of Yahoo Messenger. CIAC ROYALTY BRIEF at

7, 14 (suggesting that Yahoo's removal of the "enable IMVironments checkbox" from the Messenger preferences window in the "new" version is an insufficient step to prevent CIAC from obtaining ongoing royalties or a permanent injunction). Yahoo, however, maintains that prospective relief extending to its "new" product is improper because it has allegedly removed the infringing features. Specifically, Yahoo explains that immediately following the jury's finding of infringement, Yahoo "took care of the problem" by making a "new" version of Yahoo Messenger that did not include the enable/disable feature that was the subject of the infringement case. YAHOO ROYALTY BRIEF at 1; TRANSCRIPT at 13:12–23. All in all, while the parties agree that the version of Yahoo Messenger that is currently offered to the public does not include the "enable IMVironments checkbox," whether Yahoo continues to infringe claim 45 of the '423 patent is disputed.

Without making an ultimate finding as to whether Yahoo continues to willfully infringe the CIAC patent, the Court will look to analogous factual situations where the plaintiff requests an injunction that protects its right to exclude the adjudicated product, as well as "colorable variations thereof." *See Forest Labs, Inc. v. Ivax Pharm., Inc.*, 501 F.3d 1263, 1271 (Fed. Cir. 2007); *Additive Controls & Measurement Sys. Inc. v. Flowdata, Inc. (Additive Controls I)*, 986 F.2d 476, 479–480 (Fed. Cir. 1993). The Court specifically looks to the seminal case of *KSM Fastening Systems Inc. v. H.A. Jones Company, Inc.*, 776 F.2d 1522 (Fed. Cir. 1985), and its progeny, to evaluate the movant's burden of proof and the relevant evidence suggesting that Yahoo continues to infringe by offering its modified version of the Messenger product. *See generally TiVo Inc. v. Dish Network Corp.*, 640 F. Supp.2d 853 (E.D. Tex. 2009). Under the *KSM* standard, which has traditionally been

applied to determine whether contempt should be found in a patent case,[7] a district court compares the adjudicated and modified products.[8] When making this comparison, the court determines if the products are "more than colorably different" such that "substantial open issues" of infringement exist.[9] *TiVo*, 640 F. Supp.2d at 861; *Additive Controls* & *Measurement Sys., Inc. v. Flowdata, Inc. (Additive Controls II)*, 154 F.3d 1345, 1349 (Fed. Cir. 1998) (appealed after remand); *KSM*, 776 F.2d at 1528–32.

In analyzing whether the redesigned device continues to infringe the patent by being no more than a "colorable variation" of the adjudicated product, the Federal Circuit has stated that a district court "has broad discretion to determine how best to enforce its injunctive decrees." *TiVo*, 640 F. Supp.2d at 861 (citing *Additive Controls II*, 154 F.3d at 1349). The Court will similarly extend its discretion to the enforcement of an ongoing royalty as an analogous form of equitable relief. Like the equitable remedy considered in *KSM*, the recent *Paice II* decision—permitting use of a patented invention in exchange for a royalty—finds authority for its analysis in 35 U.S.C. § 283 where a patentee carries the burden of proof to show it is entitled to equitable relief. *Paice II*, 504 F.3d at

---

[7] Traditionally in the context of injunctive relief, a court engages in a two-step inquiry. *KSM*, 776 F.2d at 1530–32. The first step is deciding whether contempt proceedings are the appropriate forum to determine whether the modified devices infringe and the second step is to determine whether the modified products continue to infringe the claims of the patent at issue. *Additive Controls II*, 154 F.3d at 1349. Given the procedural posture from which the present inquiry arises, the Court will address only the second part of the inquiry set forth in *KSM*.

[8] Since *KSM*, district courts issuing injunctions readily limit the scope of the injunction to the infringing product, and adopt the "not more than colorably different" language to describe modified products that continue to infringe the claim terms, and therefore, fall within the scope of the injunction. *Power-One, Inc. v. Artesyn Technologies, Inc.*, No. 2:05-cv-463, 2008 WL 1746636, at *3 (E.D. Tex. Apr. 11, 2008); *Black & Decker Inc., v. Robert Bosch Tool Corp.*, No. 04-C-7955, 2006 WL 3446144, at *5 (N.D. Ill. 2006); *Advanced Med. Optics, Inc., v. Alcon Labs, Inc.*, No. 03-1095, 2005 WL 3454283, at * 10 (D. Del. 2005) (instructing that "[t]he injunction will not only cover each of the devices found to infringe [the patents], but also others 'not more than colorably different' from those devices").

[9] To make such a comparison and subsequently determine whether the modified products continue to infringe, the court must look to the claims of the patent and the scope of those claims must be interpreted using the court's previous rulings. *KSM*, 776 F.2d at 1528–29. The scope of the patent claims may not be broadened so as to "catch" the modified product. *TiVo*, 640 F. Supp.2d at 861 (citing *KSM*, 776 F.2d at 1529).

1314 (discussing the section of the Patent Act's code relating to damages that has traditionally authorized courts to grant injunctions in accordance with the principles of equity).

Thus, applying the Federal Circuit's reasoning, the Court aims to define the scope of CIAC's prospective relief while reserving judgment as to whether Yahoo is specifically intending to "create a facade of non-infringement." *See* CIAC ROYALTY BRIEF at 11. To that end, the Court must make an inquiry pertaining to relief for Yahoo's continued operation of the "old" version, as well as Yahoo's current offering of the "new" version. First, the Court considers which party bears the burden of proof in establishing whether CIAC is entitled to an ongoing royalty for the "new" version of Yahoo Messenger. Next, the Court will gauge the appropriateness of an ongoing royalty by asking whether the "new" version is no more than a "colorable variation" of the Yahoo product that the jury found to infringe claim 45 of the '432 patent. Finally, if an ongoing royalty is appropriate, the Court weighs what amount of monetary damages will provide appropriate prospective relief.

### 2. Prospective Monetary Relief Requires a Patentee to Show No More Than a "Colorable Variation" of the Adjudicated Product

When injunctive relief is denied under the traditional four factor test and the Court instead considers whether an infringer should pay an ongoing royalty, the Court finds that the burden of proving damages remains with the patentee. *Vulcan Engineering Co., Inc. v. Fata Aluminium, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002) ("The patentee bears the burden of proving its damages by a preponderance of the evidence."); *see also Dow Chemical Co. v. Mee Indus. Inc.*, 341 F.3d 1370, 1381–1382 (Fed. Cir. 2003); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996). Therefore, if a patentee intends to receive future damages for the continued violation of its right to exclude, the burden remains with the patentee to demonstrate that the product arising from the infringing product

is no more than a "colorable variation" of the adjudicated product. This can be achieved by making a comparison between the original product, the modified product, and the claims. *TiVo*, 640 F. Supp.2d at 863.

In the instant case, CIAC complains that it has already persuaded a jury that Yahoo infringes, and therefore it has satisfied its burden and should not be required to prove infringement of the "new" version of Yahoo Messenger when the "logic" has not changed. TRANSCRIPT at 47:21–25; CIAC ROYALTY BRIEF at 3 (arguing that there is a presumption of continued infringement). The Court disagrees, and in doing so, notes that the burden for establishing future royalties post-trial should be little different than the burden that would be in place for establishing a royalty at trial. Therefore, in the absence of a permanent injunction, in order to establish future damages, the burden remains with the patentee to establish (1) that the products for which the royalty is based, are at least a "colorable variation" of the adjudicated product, and (2) a reasonable royalty that accounts for changes in the parties' bargaining positions and economic circumstances.[10]

Applying this standard to the instant case, in order to prove the appropriateness of an ongoing royalty for the "new" version of Yahoo Messenger, CIAC will not be required to put on a subsequent infringement case, but rather will have to carry its burden of establishing that the disputed product is no more than a "colorable variation" of the adjudicated "old" version that a jury found to infringe

---

[10] The Federal Circuit in *Amado II* teaches that the assessment of damages for infringement taking place after adjudication should take into account the change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability. 517 F.3d at 1362. Some examples of this would include: additional expert testimony, evidence of market changes, evidence of changes in the infringer's profit margin, evidence of other products released by the infringer, and evidence of additional patent licenses entered into by the patentee, the infringer's likelihood of success on appeal, and the infringer's ability to immediately comply with the injunction, *Paice III*, 609 F. Supp.2d at 628–31; *Boston Scientific*, 2009 WL 975424, at *5–7; *Joyal Prods., Inc. v. Johnson Elec. N. Am. Inc.*, No. 04-5172, 2009 WL 512156, at *14 (D. N.J. Feb. 27, 2009).

claim '45 of the '432 patent. After making such a showing, it is CIAC's burden to put on evidence

that will allow the Court to determine the appropriateness of an ongoing royalty.

**B.      The Appropriateness of an Ongoing Royalty**

      **1.      Creative Internet Advertising Corporation's Approach**

CIAC characterizes Yahoo's post-verdict activity as "a conscious decision to continue to

willfully infringe so it can continue to earn revenue from such infringement and not incur the

additional costs associated with stopping such infringement." CIAC ROYALTY BRIEF at 1. CIAC

asserts that removing the "enable IMVironments checkbox" from the Messenger preferences window

in the new version of Yahoo messenger is an insufficient step to prevent CIAC from obtaining

ongoing royalties or a permanent injunction. *Id*. at 7, 14. Specifically, CIAC points out that claim

45 does not claim a check box, rather it claims the "logic" underlying the checkbox that allows for

the capability to "insert a link or tag identifying a stored advertisement into said set of data

transmitted over a communications network." *Id*. at 7–9. While Yahoo has modified the graphical

interface in the new version of messenger, CIAC emphasizes deposition testimony that supports its

position that Yahoo did not alter the underlying "logic" that was found to infringe. *Id*. at 8–9

(quoting CIAC EXHIBIT 1, DUNNING TESTIMONY at 36:12–38:2); TRANSCRIPT at 8:21–24 ("The logic

that is in the program that the jury found to infringe is still there. All that happened is a change has

been made to the graphical user interface to make it appear as if the program no longer infringes.").

CIAC illustrates this point by focusing on the situation where an "old" version of Messenger

converses with a "new" version. CIAC demonstrated at the hearing that when there is "old"– "new"

Messenger communication, the "new" version retains the "IMV flag," which uses the same "logic"

that is employed in the "old" version to select or disable IMVironments. CIAC suggests that the

underlying functionality of the software is the same, with the only change being that in the "new" version, Yahoo makes the decision to insert IMVironments for the user. Thus, the program still has the *capability* to infringe and meets the claim limitations:

> This is what happens when the old version sends a message to the new version. When a user with the old version sends that message the IMV flag, which contains the user's preferences, gets sent and the new version still has the same logic that receives that flag and interprets it. Then what happens is [the user with] the new version can no longer select an IMVironment. In the new version the same logic is there. The IMV only gets inserted if it is approved, which is what the claim requires, Your Honor.

TRANSCRIPT at 7:8–16. In other words, the "new" user can no longer select the IMVironment but it remains compatible with the "old" version because the capability to select is still there – Yahoo just automatically denies the user the ability to make the selection.

This argument is further characterized by CIAC's arguments pertaining to a decision tree. CIAC suggests that the claim language does not require a checkbox, but instead requires only the "logic" that configures the graphical interface. When Yahoo alleged that the claim construction required an "approval" and the "new" version no longer allows a user to approve or disapprove of the insertion of advertisements, CIAC responds that "the claim language does not say you have to have an approval by a user." TRANSCRIPT at 49:1–10. According to CIAC, what the claim language requires for infringement is the " logic" to insert the link or tag to an advertisement in response to an approval. Hence, the central point being that there must be "logic" in place that *asks* whether the link or tag to an advertisement will be inserted – a decision tree (based on the IMV flag) that either says yes or no. *Id.* at 49:15–20. Under this theory, in the "old" version of Messenger, the user controls the decision tree and in the "new" version, Yahoo controls the decision tree, but in either instance the "logic" that allows for a decision to be made (the act of approval) infringes claim 45 of

14

the '432 patent. *Id*. at 49:20–24 ("So in the new versions you have the same decision tree, the same decision is made 100% of the time. Every time a message gets sent by a user, that decision gets made. The only difference now is just [the answer is] always yes.")

### 2.    Yahoo's Approach

Basing its argument in § 271(a), Yahoo offers that it does not currently "make, use, or sell any product that infringes claim 45 of the '432 patent." Yahoo Royalty Brief at 3. Yahoo emphasizes that the IMVironments themselves do not infringe, and furthermore, any "old" version that includes the infringing checkbox exists only on users' computers. Yahoo reasons that since it does not control customers' decision of whether or not to utilize IMVironments or the "enable IMVironments" feature, Yahoo cannot be a direct infringer of claim 45. *Id*. at 4 (internal citations omitted). Referring to CIAC's deposition of Mr. Dunning, Yahoo disputes CIAC's position that Yahoo only "modified the graphical user interface" and states that the source code was changed and the infringing "enable check box" was removed, thereby ceasing infringement because the "overwrite authorization" limitation of claim 45 is no longer satisfied. Yahoo Royalty Reply at 4 (quoting CIAC Exhibit 1, Dunning Testimony at 93:13–94:1); Transcript at 15:5–19 (suggesting that in the absence of "overwrite authorization," a user of the "new" version is denied the opportunity to enable or disable IMVironments and the accused override authorization feature is no longer at issue).

Yahoo also denies that CIAC is entitled to any post-litigation royalties by arguing that as an apparatus claim, the reasonable royalty awarded at trial compensates in full for Yahoo's direct infringement. Transcript at 14:11–20. At the hearing, Yahoo submitted that because Yahoo's customers (and not Yahoo itself) are the entities that are *using* the Messenger program, that it is absolved of infringing activity that occurs as a result of providing the infringing features on its

15

server. *Id*. at 17:21–25, 18:1–13 ("Yahoo has no control over whether a user chooses to enable or disable the accused override authorization feature. They [the users] enable or disable. Yahoo cannot control that."). Essentially, Yahoo posits that because it has paid a royalty for the "old" Messengers it installed on the users' computers prior to the verdict, those products are licensed and do not have a role in a dispute over ongoing royalties.[11] According to Yahoo's reasoning, only the "new" products are the subject of future damages, and Yahoo flatly denies that they contain the infringing "overwrite authorization" feature.

### 3.    The Court's Findings

The parties dispute whether the "old" and "new" versions of Yahoo Messenger warrant a royalty base.

#### The "Old" Version of Yahoo Messenger Warrants Ongoing Royalties

At the outset, the Court is persuaded by CIAC's evidence that Yahoo has made a conscious business decision not to disable an infringing protocol that would take this product outside the scope of the invention claimed in the '432 patent. At the hearing, it was noted that as of August 20, 2009, over 20 million Yahoo Messenger users were still using older versions of the infringing Messenger product. CIAC ROYALTY BRIEF at 7. Testimony by Mr. Dunning, a Yahoo representative, further confirmed that Yahoo has the capability to disable the protocols of these infringing products, but that Yahoo has chosen not to do so. *Id*. at 10; CIAC EXHIBIT 1, DUNNING TESTIMONY at 25:2–14,

---

[11] In an attempt to illustrate this point, Yahoo analogizes the instant dispute to a situation in which an infringing tire is released into the stream of commerce and a judgment against the manufacturer renders the tire a licensed product. By Yahoo's reasoning, once an "old" version of Messenger is installed on the user's computer and Yahoo has paid a royalty, Yahoo contends that those versions are licensed and a patentee is no longer entitled to any royalties for subsequent revenues Yahoo derives from IMVironments still present in the infringing products. TRANSCRIPT at 19:3–24. The Court rejects Yahoo's "licensed tire analogy" because the situation is distinguishable by Yahoo's continued earnings generated from the sale of IMVironments after a jury has found Yahoo Messenger to infringe the '432 patent. *See infra* at 17.

56:1–18. CIAC makes a strong argument that Yahoo chooses not to disable the infringing versions of Messenger because to do so "would be a large and costly exercise for Yahoo that would require more employee time, public relations outreach, use of more bandwidth, and Yahoo would likely lose a large portion of its Messenger users." *Id*. at 10; CIAC EXHIBIT 1, DUNNING TESTIMONY at 25:22–25, 91:12–25, 92:1–21.

Therefore, the Court finds that instead of removing approximately 20 million infringing versions of Messenger from the public domain, Yahoo continues to earn revenues from the advertisers that employ the "old" version to reach Messenger users with IMVironments. At the hearing, Yahoo represented through its "tire analogy" that the "old" version is now a licensed product for which future damages are no longer appropriate. The Court disagrees. In the situation of an infringing tire that becomes a licensed product, once a manufacturer pays damages for *past* infringement, the manufacturer will no longer earn revenue from the use of the tire. With the product in dispute, however, this is a situation where Yahoo *continues to bring in revenue* from its use of IMVironments in the infringing versions. *See* CIAC EXHIBIT 1, DUNNING TESTIMONY at 56:1–3, 57:19–24, 64:2–4.  In other words, the Court distinguishes that the license in the tire hypothetical is exhausted, but in the instant case the infringing product can continue to bring the infringer earnings long after the verdict – rendering the analogy inapposite. Yahoo disputes this characterization, by alleging that deriving revenues from IMVironments does not infringe the claim, TRANSCRIPT at 22:11–17, but the Court cannot ignore that the apparatus continues to be used in a manner identical to that which a jury found to infringe and Yahoo continues to profit from this infringing activity. Given the opportunity disable the protocol, Yahoo has chosen not to, and therefore as long as the "old" version of Yahoo Messenger remains accessible to users, Yahoo will

17

owe the patentee an ongoing royalty for future use. Thus, Yahoo has a choice: either to disable the infringing software or to pay CIAC an ongoing royalty for its continued use.

### The "New" Version of Yahoo Messenger Warrants Ongoing Royalties

The Court has previously stated that the burden remains with the patentee to demonstrate that the "new" version is no more than a "colorable variation" of the adjudicated product, and thus, is within the scope of prospective relief. Having weighed the parties' arguments and the evidence in the record, the Court finds that CIAC has demonstrated that the "new" Yahoo Messenger is no more than a "colorable variation" of the infringing product. While Yahoo argues that infringement ceases to exist because there is no longer a graphical representation of the checkbox, YAHOO ROYALTY RESPONSE at 4, CIAC counters that claim 45 does not require a graphical checkbox. CIAC ROYALTY RESPONSE at 1. Considering these arguments, CIAC persuades the Court that the "new" Yahoo Messenger contains the same underlying "logic" as the "old" version, and the changes made to the graphical user-interface are insufficient to establish a non-infringing product outside the scope of prospective relief.

Again, Yahoo had the choice to launch a Messenger product with an alternative design that did not contain "logic configured to insert a link or tag," but Yahoo chose not to do so because, presumably, it would destroy compatibility with the still popular "old" version that was found to infringe. Mr. Dunning's testimony sets forth that the fundamental difference between the "old" version of Messenger and the "new" version, launched on March 27, 2009, was that the "new" version removed the "enable IMVironments checkbox." *See* CIAC ROYALTY BRIEF at 7; CIAC EXHIBIT 1, DUNNING TESTIMONY at 11:12–16. Importantly, "new" users maintained the ability to communicate with "old" users, they were just unable to disable the advertisements because Yahoo

18

had pre-emptively denied them the opportunity to make that decision. The Court finds that the capability to make a decision, a disabling of the approval to insert a link or tag, was still in place in the underlying program "logic."Therefore, a comparison between the adjudicated device and the modified device, in light of the claim language supports that the "new" version of Yahoo Messenger is no more than a "colorable variation" of the infringing protocol.

As suggested by CIAC, altering the "logic" of the "new" version was a less attractive option for Yahoo because to do so would require that the protocol for the "old" version would no longer work with the protocol for the "new" version and users would no longer be able to converse. TRANSCRIPT at 7:17–24; CIAC ROYALTY RESPONSE at 3; CIAC EXHIBIT 1, DUNNING TESTIMONY at 26:9–20. Therefore, in order for users of the "old" version to communicate with users of the "new" version, millions of users would be  required to download an altogether new version of Messenger with a non-infringing protocol. CIAC ROYALTY BRIEF at 10; CIAC EXHIBIT 1, DUNNING TESTIMONY at 27:12–17. In sum, disabling the "logic" underlying these protocols would be more expensive than merely changing the graphical user interface and Yahoo opted to leave the underlying "logic" in place, while earning revenue from IMVironments and presenting users with minimal disruption following the jury's verdict.

The ongoing presence of the decision tree that inserts the IMV flag persuades the Court that the "overwrite authorization" feature continues to be present in the "new" version. While in the "old" version, the decision to insert the link to an advertisement was made by the user, in the "new" version, this decision is always made the Yahoo software. Accordingly, a shift in control over the decision tree is not sufficient to deny CIAC future damages because the central idea in the claim language is that there must be "logic" in place that asks whether there is approval allowing for the

insertion of a background reference. *See* Doc. No. 112 at 22 ("Claim Construction Order"). The Claim Construction order states, "principles of claim construction dictate that as to claim 45 the overwrite authorization limitation allows for replacement of any background reference in an end user communication message with a background reference to a stored advertisement, *dependent only upon the existence and settings within the approved configuration file*." CLAIM CONSTRUCTION ORDER at 23 (rejecting Yahoo's argument that the "overwrite authorization" is limited to advance approval from the end user recipient). Therefore, "overwrite authorization" only requires a decision tree asking for approval to insert the link or tag to an advertisement – it essentially poses a yes or no question. Yahoo making a "yes" decision 100% of the time (to insert the link or tag to an advertisement) is no more than a "colorable variation" of the protocol that was previously in place. *See* TRANSCRIPT at 49:19–24. The Court concludes that the "logic" underlying the "new" Messenger version continues to fall within the scope of the adjudicated product and CIAC has met its burden in demonstrating that it is entitled to prospective relief in the form of an ongoing royalty.

## C.    Changed Circumstances and Future Damages

### 1.    Applicable Law

The Court adopts the *Paice* methodology for calculating an ongoing royalty and will apply a modified *Georgia-Pacific* analysis. As such, the *Georgia-Pacific* factors will be applied in light of the changed relationship between the parties and will reflect a hypothetical negotiation in which Yahoo is now an adjudged infringer.

This approach departs from both a strict application of *Georgia-Pacific* and an approach that only focuses on the post-verdict relationship. Determining an ongoing rate on remand from the Federal Circuit, Chief Judge Folsom recently applied this modified *Georgia-Pacific* analysis in *Paice*

20

*III*, and in doing so, preserved the fictional hypothetical negotiation between a willing licensor and willing licensee, while focusing on the factors that are most applicable to the circumstances surrounding an ongoing royalty rate. *Paice III*, 609 F. Supp.2d at 624. The *Paice III* court proceeded under an approach that recognized "a post-judgment ongoing royalty negotiation is logically different from the pre-trial hypothetical negotiation discussed in *Georgia-Pacific*." *Id*. Unlike the pre-verdict situation described in *Georgia-Pacific*, determination of an ongoing royalty occurs post-judgment when the "willing licensee" in the hypothetical negotiation has become an adjudged infringer. *Id*.

The Northern District of California adopted this same approach in *Boston Scientific*, where the court determined that a jury verdict in the patentee's favor would have a "significant effect" on the royalty rate. 2009 WL 975424, at *2. Specifically, the Court held that the Plaintiff's expert was correct to assume that the jury's finding of liability strengthens the bargaining position of the party whose product was found to be infringed.[12] *Id*. at *3. The court then went through and applied the *Georgia-Pacfcic* factors, but weighed differently the factors that would be changed by a finding of infringement. *Id*. at 5–6. When considering the royalty to be received by the patentee for licensing of the patent-in-suit, the court adopted the Plaintiff's position that a license negotiated after the verdict would be higher than one negotiated on the eve of trial. *Id*. at *6.

Additionally, in the *Paice* decisions, both the Federal Circuit and the district court have encouraged the parties to negotiate a license amongst themselves regarding the future use of a patented invention before imposing an ongoing royalty. *Paice III*, 609 F. Supp.2d at 623 (citing *Paice II*, 504 F.3d at 1315). Only when the parties fail to come to an agreement should the district

---

[12] In a situation analogous to the instant dispute, the Defendant's expert assumed that the jury verdict would not affect the relationship of the parties and was therefore not a factor that warranted consideration in the court's determination of the appropriate relief. The *Boston Scientific* court rejected this position. *See* 2009 WL 975424, at *3.

court step in to assess a reasonable royalty in light of ongoing infringement. *Paice II*, 504 F.3d at 1315, 1317 (requiring the district court to afford the parties an opportunity to set the rate, but noting the court retains jurisdiction to impose a rate if the parties cannot agree) (Rader, J., concurring).

### 2.    Determining an Ongoing Royalty

As Judge Rader recommended, the Court gave the parties a full and fair opportunity to set their own royalty rate. (Doc. No. 272 at 3) (ordering the parties to meet and confer to negotiate an appropriate ongoing royalty rate). Unfortunately, the parties continue to indicate that they have been unable to reach agreement. Faced with the necessity of imposing an ongoing royalty rate, the Court agrees with CIAC's proposal that a 23% royalty rate is appropriate to compensate CIAC for Yahoo's use of a "colorable variation" of the adjudicated product. Furthermore, this finding is consistent with the statutory language in § 284, stating that the measure of damages adequate to compensate for the continued use of the invention by an adjudged infringer, should be no less than a reasonable royalty. *See* 35 U.S.C. § 284.

At trial, CIAC's damages expert, Ms. Michelle Riley, opined that a 20% royalty rate based on Yahoo's revenues from IMVironments would be reasonable to compensate CIAC for past damages. The jury accepted Ms. Riley's pre-verdict application of the *Georgia-Pacific* factors and the Court similarly accepts her opinion that a 23% ongoing royalty rate is reasonable and appropriate in light of the change in the relationship between the parties post-verdict. CIAC ROYALTY BRIEF at 11 (citing CIAC EXHIBIT 9, RILEY REPORT). Ms. Riley's opinion is consistent with the modified *Georgia-Pacific* approach endorsed by this district, and Ms. Riley specifically considers Yahoo's decision not to design around, or otherwise stop infringing. *Id.* at 12 (asserting that where the

adjudged infringer chooses to continue to infringe, this decision supports a higher ongoing royalty rate).

The Federal Circuit has instructed that post-verdict infringement should typically entail a higher royalty rate than the reasonable royalty found at trial. *Amado II*, 517 F.3d at 1362 n.2, and the Court adopts a methodology that recognizes the effect of a jury verdict on the parties' bargaining position as they enter into a hypothetical negotiation. *See Paice III*, 609 F. Supp.2d at 626–27. Furthermore, failure to recognize the parties' changed legal status "would create an incentive for every defendant to fight each patent infringement case to the bitter end because without consideration of the changed legal status, there is essentially no downside to losing." *Id*. at 628.

Thus, the question then becomes "what amount of money would reasonably compensate a patentee for giving up his right to exclude yet allow an ongoing willful infringer to make a reasonable profit?" *Paice III*, 609 F. Supp.2d at 624. Taking into account the change in the parties' legal relationship, the Court finds it reasonable to impose an ongoing royalty rate that is 23% of the revenue that Yahoo has earned, and continues to earn post-verdict from IMVironments (representing a 3% increase from the 20% rate imposed by the jury at trial).

## CONCLUSION

For the reasons cited herein, CIAC's Motion for Entry of Judgment is **GRANTED-IN-PART**, with the remainder of its request to be addressed in a Memorandum Opinion and Order issued at a later date. The Court **ORDERS** Defendant Yahoo to make a payment to CIAC for $185,694.00. This figure represents 20% of the revenues Yahoo earned between November 30, 2008 and May 15, 2009, as described in the supplemental report of CIAC's damages expert. Additionally, the Court **ORDERS** Yahoo to make quarterly payments of 23% of all post-verdict revenues earnings

23

that are derived from IMVironments sold for the versions of Yahoo Messenger discussed herein.[13]

Finally, the Court will be entering Final Judgment as to all damages figures, including those referenced here, in the near future.


**So ORDERED and SIGNED this 9th day of December, 2009.**


_John D. Love_

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

---

[13] This includes revenue earned from IMVironments that appear in "old" version of Yahoo Messenger (versions 5 through version 9.0.0.2152) and the "new," currently available, version of Yahoo Messenger (version 9.0.0.2162).