## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **CREATIVE INTERNET** | § | |
| **ADVERTISING CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 6:07cv354-JDL** |
| **v.** | § | |
| | § | |
| **YAHOO! INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Creative Internet Advertising Corporation's ("CIAC") Motion for Entry of Judgment on the Verdict and Request for Enhanced Damages, a Finding That the Case is Exceptional, Attorney's Fees, Prejudgment Interest, Post-Judgment Interest, Supplemental Damages and Post-Verdict Royalty (Doc. No. 286) ("Motion"). Defendant Yahoo! Inc. ("Yahoo") has filed a Response in Opposition (Doc. No. 292) ("Response"). CIAC also submitted a Reply in support of its Motion (Doc. No. 285). For the following reasons, Plaintiff's Motion is **GRANTED** in large part and **DENIED** in part.

## BACKGROUND

On July 26, 2007, CIAC filed the instant action against Yahoo alleging infringement of U.S. Patent No. 6,205,432 ("the '432 patent"). On May 15, 2009, a jury found that claim 45 of the '432 patent was not invalid and willfully infringed by Defendant Yahoo, both literally and under the doctrine of equivalents. After the jury returned the verdict, Plaintiff filed the instant Motion requesting that the Court enter judgment against Yahoo in accordance with the verdict. MOTION at

1. CIAC further argues that it is entitled to supplemental damages[1] based on revenues earned by Yahoo from IMVironments from December 1, 2008 through entry of judgment in this case. CIAC asks that all damages are enhanced by two-thirds, and that it is also awarded prejudgment interest, post-judgment interest, and an award of attorney's fees for a finding that this is an exceptional case. *Id.*

## LEGAL STANDARD

*Willfulness*

A court may, in its discretion, enhance damages up to three times when there is a finding of willful infringement on the part of an infringing party. 35 U.S.C. § 284; *see SRI Int'l, Inc. v. Advanced Techs. Labs., Inc.*, 127 F.3d 1462, 1468–69 (Fed. Cir. 1997). Enhanced damages are a punitive measure taken by the Court to penalize a willful infringer for his or her increased culpability. *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996). However, a court may refrain from awarding enhanced damages in light of a finding of willfulness based on the weight of the evidence supporting willfulness and the closeness of the issues at trial. *See Brooktree Corp. v. Advanced Micro-Devices, Inc.*, 977 F.2d 1555, 1581–82 (Fed. Cir. 1992); *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997).

The principles guiding a willfulness inquiry emphasize that "The paramount determination in deciding enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir.

---

[1] On December 9, 2009, the Court granted CIAC's request for supplemental damages and ordered Yahoo to make a payment to CIAC of $185,694.00 for 20% of the revenues Yahoo earned from IMVironments between November 30, 2008 and May 15, 2009. (Doc. No. 324) ("Ongoing Royalty Order"). The Court further ordered Yahoo to pay CIAC an ongoing royalty on 23% of all post-verdict revenues earned from IMVironments. This included revenue earned from IMVironments that appear in "old" version of Yahoo Messenger (versions 5 through version 9.0.0.2152) and the "new," currently available, version of Yahoo Messenger (version 9.0.0.2162).

1992). Factors courts consider in deciding whether to enhance damages and the amount of enhancement include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; (9) whether defendant attempted to conceal its misconduct. *Id*. at 827. Upon a finding of willful infringement, a trial court should provide reasons for not increasing a damages award. *Jurgens*, 80 F.3d at 1572.

### Exceptional Case

Where willful infringement is proven, a case may, or may not, be deemed "exceptional" under § 285. *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004); *z4 Tech., Inc. v. Microsoft Corp.*, 2006 WL 2401099, at *22 (E.D. Tex. Aug. 18, 2006) ("A finding of willful infringement is a factor to be considered in determining if a case is exceptional."). In determining whether a case is "exceptional," the court may consider a number of factors, including, for example, whether the infringer engaged in litigation misconduct, advanced frivolous arguments, or willfully infringed the patent. *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc*., 279 F.3d 1022, 1034 (Fed. Cir. 2002). A case may be exceptional based solely on litigation misconduct and unprofessional behavior. *Rambus, Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003); *Epcon*, 279 F.3d at 1034. A case may be deemed exceptional on a party's or its counsel's display of bad-faith during either the pre-trial or trial stages. *Kloster Speedsteel AB v. Crucible, Inc*., 793 F.2d 1565, 1580 (Fed. Cir. 1986) (overruled on other grounds). The patentee bears the burden

of establishing the exceptional nature of the case by clear and convincing evidence. *Ruiz v. A.B. Chance Co.*, 234 F.3d 645, 669 (Fed. Cir. 2000).

Whether a prevailing party is entitled to attorney's fees is a two-step inquiry. *Cybor Corp. v. FAS Tech., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc). First, the district court must make factual findings as to whether the case is "exceptional." *Id*. Second the Court must exercise its discretion as to whether or not attorney's fees are appropriate. *Id*. In cases where there has been an express finding of willfulness, the trial court must, in denying attorney's fees, "explain why the case is not "exceptional" within the meaning of 35 U.S.C. § 285. *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990).

### *Prejudgment Interest*

Section 284 of the Patent Act indicates that a court should award interest in patent cases after a finding of infringement. 35 U.S.C. § 284. The Supreme Court has held that under this statute, "prejudgment interest should be ordinarily awarded" when a plaintiff in a patent infringement suit prevails on his claim.  *See Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983) (awarding prejudgment interest unless there is significant justification for withholding such an award, such as a delay in brining suit against the infringer).

The purpose of prejudgment interest is to place the patentee in as good a position as he would have been had the infringer paid a reasonable royalty instead of infringing.  *z4 Tech.,* 2006 WL 2401099, at *26 (quoting *Beatrice Foods v. New England Printing*, 923 F.2d 1576, 1580 (Fed. Cir. 1991)). The interest rate used to calculate prejudgment interest and the method and frequency of compounding is left to the discretion of the district court.  *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991); *z4 Tech.,* 2006 WL 2401099, at *26. However, "[i]t has been

4

recognized than an award of compound rather than simple interest assures that the patent owner is fully compensated." *Rite-Hite Corp. v. Kelley Co.,Inc.*, 56 F.3d 1538, 1555 (Fed. Cir. 1985). Prejudgment interest can only be applied to actual damages and not punitive or enhanced damages. *z4 Tech.,* 2006 WL 2401099, at *26 (citing *Beatrice Foods*, 923 F.2d at 1580). Interest should be awarded from the date of infringement to the date of final judgment. *Bio-Rad Labs. v. Nicolet Instrument Corp.*, 807 F.2d 964, 967 (Fed. Cir. 1986) ; *z4 Tech.,* 2006 WL 2401099, at *26.

## DISCUSSION

### I.    Willfulness Analysis and Enhanced Damages

A finding of willful infringement is a prerequisite to an award of enhanced damages. *In re Seagate Technology, LLC.*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc). In this case, the question of whether Yahoo willfully infringed the '432 patent was submitted to the jury, which was instructed that CIAC had to prove by clear and convincing evidence that (1) Yahoo was aware of the issued '432 patent; (2) Yahoo acted despite an objectively high likelihood objectively high likelihood that its Yahoo Messenger with IMVironments was infringing a valid patent; and (3) this objectively defined risk that Yahoo's Messenger program with IMVironments infringed was either known or so obvious it should have been known to Yahoo. (Doc. No. 224) ("Jury Instructions"). The verdict form instructed the jury to answer "yes" or "no" to "Did Creative prove by clear and convincing evidence that Yahoo's infringement was willful?" The jury answered "yes." (Doc. No. 227) ("Jury Verdict").

#### *Application of the Read Factors*

The standard for deciding whether— and by how much— to enhance damages is set forth in *Read Corp. v. Portec Inc.* 970 F.2d 816, 826–27 (Fed. Cir. 1992), abrogated in part on other

5

grounds by *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc). The Federal Circuit set forth the factors for consideration in determining whether a plaintiff should be awarded enhanced damages for a defendant's willful infringement. Each factor will be discussed in turn.

### 1.      Whether the Infringer Deliberately Copied the Ideas or Designs of Another

CIAC argues that it has presented evidence of deliberate copying, and therefore, this factor weighs in favor of enhanced damages. CIAC relies on a March 17, 2000 meeting between Mr. Chuck Gabbard and Mr. Mike Gragg, representatives from Creative Internet Concepts— the owner of the '432 patent— and Mr. Sharat Israni, an employee from Yahoo. *See* MOTION at 5–6; CIAC EXHIBIT 1,[2] TRANSCRIPT, MIKE GRAGG at 155:21–159:4 (May 11, 2009) ("Gragg Trial Testimony"); CIAC EXHIBIT 2, TRANSCRIPT, CHUCK GABBARD at 106:2–6, 107:7–108:14 (May 12, 2009) ("Gabbard Trial Testimony"); CIAC EXHIBIT 3, TRANSCRIPT, SHARAT ISRANI at 231:19–232:21, 233:20–25 (May 13, 2009) ("Israni Trial Testimony"); *see also* (Doc. No. 304 at 5) ("Court's Rule 50 Willfulness Opinion.") (citing three days of trial transcript references). At this meeting, Mr. Gragg and Mr. Gabbard disclosed to Mr. Israni, in relevant part, that: (1) they had a patent application pending; (2) the invention disclosed in the patent application, and (3) the benefits that Yahoo could experience by utilizing the invention. GRAGG TRIAL TESTIMONY at 191:17–192:20; GABBARD TRIAL TESTIMONY at 106:2–6, 107:7–108:14, 109:13–15, 110:8–13; ISRANI TRIAL TESTIMONY at 240:16–241:22, 257:17–24; *see also* COURT'S RULE 50 WILLFULNESS OPINION at 5–6.

---

[2] All references to "CIAC Exhibit(s)" cite to the exhibits attached to CIAC's Motion for Entry of Judgment (Doc. No. 286). All references to "Plaintiff Trial Exhibit(s)" and "Defendant Trial Exhibit(s)" cite to exhibits admitted into evidence during the course of trial (Doc. Nos. 228, 229).

At the March 17, 2000 meeting, Mr. Gragg and Mr. Gabbard also specifically discussed the advantages of using the technology in conjunction with advertisements for car manufacturing companies and consumer products. MOTION at 6; GRAGG TRIAL TESTIMONY at 191:17–194:13; PLAINTIFF TRIAL EXHIBIT 112. Mr. Gragg also testified that he discussed with Mr. Israni the fact that the invention of the '432 patent would result in "prolonged interaction" with advertisements. GRAGG TRIAL TESTIMONY at 194:14–195:18. Finally, Mr. Gragg discussed with Mr. Israni background advertisement for "Budweiser," and Mr. Gragg specifically noted that some people may object to such advertisements and explained that users' should be able to not receive those sorts of advertisements. GRAGG TRIAL TESTIMONY at 196:20– 197:19. Mr. Israni's testimony confirmed this. ISRANI TRIAL TESTIMONY at 240:16–241:22,  257:17–24.

After discussing Creative Internet Concepts' proposed benefits, Mr. Israni told Mr. Gragg and Mr. Gabbard that Yahoo was not interested in the technology. GRAGG TRIAL TESTIMONY at 198:23–200:3; GABBARD TRIAL TESTIMONY at 111:24–112:22. A year later, on March 20, 2001, the '432 patent issued. CIAC EXHIBIT 16; PLAINTIFF TRIAL EXHIBIT 1. Nonetheless, Defendant began developing the IMVironments program in February or March of 2001. COURT'S RULE 50 WILLFULNESS OPINION at 6 (citing TRIAL TRANSCRIPT (Day 4) at 55:16–19), and launched Yahoo Messenger with IMVironments at least as early as October 22, 2001. *See* CIAC EXHIBIT 17. As discussed with Creative Internet Concepts in the context of car manufacturing and consumer products, Defendant sold IMVironments to companies such as Honda, Mountain Dew, Build-a-Bear, Pillsbury and Crest. GRAGG TRIAL TESTIMONY at 191:17–194:13; PLAINTIFF TRIAL EXHIBIT 112; *see also* COURT'S RULE 50 WILLFULNESS OPINION at 6. Furthermore, in marketing IMVironments, Yahoo tells its customers that IMVironments will result in "prolonged interaction" with an

advertiser's brand. This comes after Mr. Gragg testified that he discussed with Mr. Israni the fact that the invention of the '432 patent would result in "prolonged interaction" with advertisements. GRAGG TRIAL TESTIMONY at 194:14–195:18; CIAC EXHIBIT 4, TRANSCRIPT, THOMAS SHIN at 310:2–12 ("Shin Trial Testimony"); CIAC EXHIBIT 5, TRANSCRIPT, BRIAN TAYBACK at 12:6–13:9, 14:6–19 ("Tayback Trial Testimony").

Importantly, Mr. Gragg discussed the "overwrite authorization" limitation of claim 45 with Yahoo. MOTION at 6; GRAGG TRIAL TESTIMONY at 198:23–200:3. Mr. Israni's testimony also confirms this discussion of the claim term. ISRANI TRIAL TESTIMONY at 240:16–241:22, 257:17–24. Nonetheless, the Yahoo Messenger with IMVironments contains an "Enable IMVironments" check box that allows a user to disable IMvironments. Mr. Israni further testified that the "Enable IMVironments" checkbox solved the "commercialism" problem that had previously plagued Yahoo Messenger prior to March 17, 2001. ISRANI TRIAL TESTIMONY at 276:6–24; PLAINITIFF TRIAL EXHIBIT 128.

Yahoo denies that the evidence clearly supports deliberate copying and argues that Mr. Chris Szeto, a programmer for Yahoo, independently developed IMVironments in early 2001. MOTION at 7; CIAC EXHIBIT 6, TRANSCRIPT, CHRISTOPHER SZETO 55:16–25 (May 14, 2009) ("Szeto Trial Testimony"). Mr. Szeto also specifically testified that he did not have any contact with Mr. Israni. RESPONSE at 4 (citing TRIAL TRANSCRIPT, vol. 4, 28:17–30:24 (May 14, 2009)). Additionally, Yahoo argues that there is no direct evidence of copying because Mr. Gragg testified that, at the March 17, 2000 meeting, he mentioned the idea of allowing users to opt out of the advertising, but he did not disclose the specific implementation of the "overwrite authorization" described in the '432 Patent. RESPONSE at 3–4. Finally, Yahoo contends that CIAC never alleged direct copying until

8

after the jury found willful infringement.[3] RESPONSE at 3 (citing TRIAL TRANSCRIPT, vol. 4, 15:13–16:8 (May 14, 2009)).

In this case, neither side has clearly shown that direct copying occurred, or that independent creation occurred. The evidence presented by CIAC demonstrates at least the inference of copying, but Yahoo's arguments raise doubts whether that copying actually occurred. This set of circumstances is distinguishable from a recent willfulness analysis in this district where, although plaintiff did not present evidence of deliberate copying, there was a particularly damaging email which acknowledged the asserted patent, a previous meeting with its creators, and a course of conduct that would knowingly render the technology "obsolete." *See i4i Ltd. Partnership v. Microsoft Corp.*, — F. Supp.2d—, No. 6:07cv113,  2009 WL 2449024, at *22 (E.D. Tex. Aug. 11, 2009) (describing an email between defendants's employees stating "we saw [plaintiff's products] some time ago and met its creators. Word 11 will make it obsolete. It looks great for XP though.").

In that case, Judge

Davis found more than the mere inference of copying since a meeting between defendant and the creators resulted in written evidence confirming that defendant intended to implement similar capabilities in its products. *Id.* While it remains possible that the same scenario is present in the instant case, there is no evidence corroborating CIAC's theory as to deliberate copying. Accordingly, this factor is neutral.

> **2.**      **Whether the Infringer, When it Knew of the Other's Patent Protection, Investigated the Scope of the Patent and Formed a Good-Faith Belief that it was Invalid or that it was Not Infringed**

---

[3] At trial, CIAC explained that it did not believe that Yahoo copied some embodiments of the '432 Patent. Rather, it argued that Yahoo copied ideas discussed at the March 17, 2000 meeting. RESPONSE at 4 (citing TRIAL TR., vol. 4, 15:13–16:8 (May 14, 2009)).

CIAC argues that Yahoo was first put on notice of the possibility of infringement at least as early as December 3, 2004, and that Yahoo conducted a cursory investigation of the patent. MOTION at 7–8. Furthermore, CIAC argues that Yahoo never obtained an opinion from outside counsel. *Id*. CIAC then points to correspondence exchanged between the parties from December 3, 2004 through January 20, 2006 as the only evidence of Yahoo's investigation and concludes that this correspondence is insufficient. MOTION at 7; CIAC EXHIBITS 20–33; PLAINTIFF TRIAL EXHIBITS 22–35.

Yahoo argues that its decision not to obtain an opinion of outside counsel is not determinative and relies on its correspondence with attorneys for Plaintiff to demonstrate Yahoo's good faith belief that the '432 Patent was invalid and not infringed. RESPONSE at 5. Additionally, Yahoo represents that when it was first contacted by the '432 patent owners regarding alleged infringement, they initially provided analysis for only claim 37 of the '432 patent and claim 1 of the '850 patent. *Id*. (relying on DEFENDANT TRIAL EXHIBITS 10–11). As a result, Yahoo claims to have been unaware of allegations relating to claim 45 until Plaintiff submitted its infringement contentions. *Id*.

After reviewing this correspondence and the trial testimony, the Court concludes that Yahoo's investigation was inadequate. A series of letters, emails, and phone calls were exchanged between attorneys for Creative Internet Concepts and Ms. Lisa McFall, Vice President and Associate General Counsel for Yahoo, regarding the '432 patent. *See* COURT'S RULE 50 WILLFULNESS OPINION at 7 (citing the correspondences between Ms. McFall and counsel for Plaintiff); PLAINTIFF TRIAL EXHIBITS 22–35. Ms. McFall then reviewed the '432 patent and file history,  but never sought a

formal written or oral opinion of counsel.  CIAC EXHIBIT 8, TRANSCRIPT, LISA MCFALL at 176:13–178:14 (May 13, 2009) ("McFall Trial Testimony"). Instead, during this correspondence, Ms. McFall set forth Yahoo's non-infringement position. Confident in its position of non-infringement—without formal advice of counsel—Yahoo continued to offer the IMVironments program after it was alleged to infringe and after this lawsuit was filed. There was also no attempt until after the jury verdict to design around claim 45. TRIAL TESTIMONY at 302:11–303:5 (May 12, 2009); MCFALL TRIAL TESTIMONY at 179:6–10, 183:7–24.

Yahoo also represents that because the patentee specifically highlighted claim 37 of the '432 Patent as exemplary during its correspondence with Ms. McFall, Yahoo paid little attention to the other claims of the '432 Patent. RESPONSE at 5. It is undisputed that Yahoo first received notice of Plaintiff's assertions of infringement in December 2004 and Yahoo reviewed the '432 patent in its entirety at that time. As discussed in the Court's Order denying Yahoo's Motion for JMOL on No Willfulness, the Court finds ample notice to inform Yahoo as to its potential infringement of claim 45. COURT'S RULE 50 WILLFULNESS OPINION at 9.

In sum, the Court finds that Yahoo's failure to seek the advice of outside counsel particularly concerning. When combined with the superficial investigation conducted by Ms. McFall, the Court concludes that Yahoo did not make a good faith effort to investigate the infringement charges before it. For these reasons, the weight of the evidence favors enhanced damages.

### 3.    The Infringer's Behavior as a Party to the Litigation

The Court does not find evidence in the record that Yahoo acted improperly during the course of this litigation. Therefore, this factor weighs against enhanced damages.

###### 4.      The Defendant's Size and Financial Condition.

Defendant's size and financial condition should be viewed both relative to the Plaintiff and also individually to ensure that enhanced damages would "not unduly prejudice the [defendant's] non-infringing business." *Krippelz v. Ford Motor Co.*, No. 98 C 2361, 2009 WL 3852466, at *6 (N.D. Ill. Nov. 18, 2009) (internal citations omitted); *Read*, 970 F.2d at 827.  Yahoo's revenues in 2008 were approximately 7.2 billion dollars. MOTION at 8 (citing  YAHOO FULL YEAR 2008 FINANCIAL RESULTS, *available at* http://yhoo.client.shareholder.com/results.cfm). As presented by CIAC, Yahoo employs approximately 12,000 people and earned substantial profit margins during the period of infringement that justify enhanced damages. MOTION at 8 (relying on MCFALL TRIAL TESTIMONY at 134:3–8); CIAC EXHIBIT 35; DEFENDANT TRIAL EXHIBIT 170.  Specifically, for 2001 through 2002, early in the infringement period, Yahoo's communications business unit returned an 83.36% profit margin and Yahoo Consolidated had a gross profit margin of 80.85%. CIAC EXHIBIT 34; DEFENDANT TRIAL EXHIBIT 169. For 2002 through 2007, Yahoo's Messenger product had a 66.86% profit margin, and Yahoo Consolidated had a 61.98% profit margin. CIAC EXHIBIT 35; DEFENDANT TRIAL EXHIBIT 170.

Yahoo disputes the profitability of IMVironments, but this factor only requires the Court to consider a defendant's overall size and financial condition. *See Read*, 970 F.2d at 827. 827. Yahoo does not meaningfully dispute that it is large enough and profitable enough to pay enhanced damages. Review of the Yahoo's profit margins during the period of infringement, especially relative to that of Plaintiff, sustains a finding of enhanced damages for willful infringement by the accused product. Accordingly, this factor weighs in favor of awarding enhanced damages.

### 5.       Closeness of the Case.

Plaintiff argues, and the Court agrees, that this was not a close case of infringement or invalidity. Courts in this district have noted that potential circumstances of a close case include deadlock on the issue of infringement during deliberation, or potentially returning a verdict of validity and infringement but agreeing with defendants' valuation of damages. *Mass Engineered Design, Inc. v. Ergotron, Inc*., No. 2:06-cv-272, 2009 WL 1035205, at *22 (E.D. Tex. Apr. 17, 2009) (concluding that this was a very close case where the jury deliberated for seven and a half hours and defendants presented compelling and credible evidence on almost every issue).

### i.       Not a Close Case of Infringement

Unlike the circumstances present in *Mass Engineered*, in this case, the jury neither deliberated extensively or agreed with Yahoo's valuation of damages. *See* Motion at 8–9; CIAC EXHIBIT 9, TRANSCRIPT, YAHOO 30(b)(6) BING YUAN at 215:24–221:11 ("Yuan Trial Testimony"). Furthermore, review of the trial testimony confirms a strong case for infringement, as it was proved repeatedly. Mr. Szeto's testimony as to Yahoo's activities proved infringement. SZETO TRIAL TESTIMONY at 57:9–73:2. The testimony of CIAC's expert, David Klausner, proved infringement. CIAC EXHIBIT 10, TRANSCRIPT, DAVID KLAUSNER at 19:3–26:21 ("Klausner Trial Testimony"). Even the testimony of Yahoo's own expert, Dr. Goldberg, proved infringement. CIAC EXHIBIT 11, TRANSCRIPT, DR. GOLDBERG at  286:9–297:17 (May 13, 2009) ("Goldberg I Trial Testimony); CIAC EXHIBIT 12, TRANSCRIPT, DR. GOLDBERG at 249:15–250:9 (May 14, 2009) ("Goldberg II Trial Testimony").

Especially troubling, is that Yahoo's only non-infringement argument was based on arguments that the Court rejected in its *Markman* Order. *See* GOLDBERG I TRIAL TESTIMONY at

286:9–297:17 (May 13, 2009). As framed in the July 30, 2009 Order denying Yahoo's Motion for a New Trial (Doc. No. 303) ("Court's Order on Request for a New Trial"), the parties continued to argue at trial whether claim 45 sets forth a limitation on the number of "end user communication messages" required for infringement. COURT'S ORDER ON REQUEST FOR A NEW TRIAL at 6. Over the course of the first three days of trial, this dispute manifested itself as a repetition of a sequential limitation argument that the Court rejected at claim construction.[4] *Id.*; *see also* MARKMAN ORDER at 25–28.

The Court finally stepped in and resolved the claim scope dispute in a manner which tracked the Court's *Markman* Order. COURT'S ORDER ON REQUEST FOR A NEW TRIAL at 10 (citing TRIAL TRANSCRIPT (May 14, 2009) at 100:9–103:10). As such, the Court recognized an ongoing dispute as to the scope of the claim term and determined that "a" or "an" presumptively means "one or more" when used with the transitional phrase "comprising." COURT'S ORDER ON REQUEST FOR A NEW TRIAL at 10–11 (citing *Baldwin Graphics Sys., Inc. v. Siebert*, 512 F.3d 1338, 1343 (Fed. Cir. 2008)). The Court has since noted that without a clear disavowal— and a claim construction setting forth the Court's finding of such a clear disavowal— the parties had no reason to assume these terms carried anything other than the common patent law definitions. *See* COURT'S RULE 50 WILLFULLNESS OPINION at 10; COURT'S ORDER ON REQUEST FOR A NEW TRIAL at 11–12.

After the Court resolved the dispute and clarified the meaning of "an," Yahoo represented

---

[4] From the beginning of trial, Yahoo asserted that both parties interpreted the term "an" to require one and only one message, and further stated that the patentee had clearly disavowed more than one message. COURT'S ORDER ON REQUEST FOR A NEW TRIAL at 6. CIAC consistently maintained, however, that an infringing system could operate on one message or on multiple messages. *Id*. at 9 (citing arguments made a trial). Additionally, Yahoo repeatedly emphasized the importance of the word "said" in claim 45, while the CIAC repeatedly objected to discussion of the word "said," asserting that Yahoo was re-arguing claim construction as it related to the sequential limitation or argument, or that Yahoo was improperly arguing a preferred embodiment. *Id*. at 6.

14

that it "based its entire non-infringement case on the construction that 'an' means one, and only one, message because Yahoo's Messenger operates on multiple messages, not single messages." YAHOO MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO WILLFUL INFRINGEMENT UNDER RULE 50 at 6 (Doc. No. 279). This admission goes directly to the closeness of this case, because as the Court previously explained, Yahoo improperly based its non-infringement case on the interpretation that "an" means one and only one.[5] This position further lacks credibility because the Court conducted comprehensive *Markman* proceedings months before trial, and yet, the issue which Yahoo claims prejudiced its case, was never squarely presented to the Court until the fourth day of trial. *See* COURT'S ORDER ON REQUEST FOR A NEW TRIAL at 11–13 (finding that Defendant was not prejudiced by the court's claim construction because Defendant never sought to mitigate prejudice). Instead, Yahoo was content to base key aspects of its case on questionable legal conclusions that it had never brought to the Court's attention. Accordingly, Yahoo's contention that it presented a "close case" despite basing its entire non-infringement position on a theory that does not comport with established precedent, not only contradicts its arguments of good faith, but also weighs in favor of enhanced damages.

### ii. Not a Close Case of Invalidity

Similarly, this was also not a close case of invalidity. Yahoo relied on four prior art

---

[5] As previously stated in this case, there is a long line of controlling precedent that states otherwise. *See Baldwin Graphics Systems, Inc. v. Siebert*. 512 F.3d 1338, 1343 (Fed. Cir. 2008) (noting common patent law meaning that terms "a" or "an" mean "one or more"); *Free Motion Fitness, Inc. v. Cybex Intern., Inc.*, 423 F.3d 1343, 1350–51 (Fed. Cir. 2005) (same); *Scanner Tech. Corp. v. ICOS Vision Sys. Corp., N.V.*, 365 F.3d 1299, 1305–1306 (Fed. Cir. 2004) (same). In fact, the Federal Circuit has explicitly rejected a substantially similar argument in a similar situation. *See Free Motion Fitness,* 423 F.3d at 1350–51 (rejecting Defendant's argument that the use of the term "the" in connection with the word "cable" elsewhere in the claim shows that the earlier reference to "a" denotes singularity). *See also* COURT'S RULE 50 WILLFULNESS OPINION at 9–10.

references, none of which disclosed the "overwrite authorization" limitation in claim 45 as construed by the Court. KLAUSNER TRIAL TESTIMONY at 26:19–34:8. Therefore, even combining these references does not render claim 45 invalid. As demonstrated at trial, the Netscape browser and the '213 publication were before the examiner during prosecution of the '432 patent, CIAC EXHIBIT 16; PLAINTIFF TRIAL EXHIBIT 1, and expert witness testimony[6] demonstrated that all of the disclosed Netscape references inserted a reference 100% of the time.[7]

Despite initially arguing invalidity under 35 U.S.C. § 112 for lack of written description and enablement, Yahoo conceded that it had not submitted any evidence to support such claims. MOTION at 9 (citing SZETO TRIAL TESTIMONY at 314:11–20).

Evaluating the closeness of the case under the totality of the circumstances— strong evidence in support of infringement and against all invalidity theories— the Court finds that this factor weighs in favor of enhanced damages.

### 6.    Duration of Defendant's Misconduct

The jury adopted CIAC's position at trial that Yahoo has infringed the '432 patent since at least October 22, 2001, when Yahoo first launched its Messenger program with IMVironments. CIAC EXHIBIT 17; PLAINTIFF TRIAL EXHIBIT 57. From January 1, 2002 through November 30, 2008, Yahoo generated $33,127,921 in revenue from Yahoo Messenger with IMVironments. CIAC

---

[6] Even Dr. Goldberg appears to concede that all of the Netscape references disclosed inserting a reference 100% of the time. KLAUSNER TRIAL TESTIMONY at 29:9–15 (referencing Dr. Goldberg's testimony the preceding day).

[7] In David Klausner's expert testimony refuting invalidity:
  (1) the '213 publication merely discloses appending advertisements based on selection criteria. KLAUSNER TRIAL TESTIMONY at 29:24–32:10;
  (2) the '226 publication merely discloses inserting a program into a website for generating "pop-up" advertisements. Id. at 32:11–33:8; and
  (3) the '162 patent merely discloses delivering newspapers in e-mail. Id. at 33:9–34:4.

EXHIBIT 37 (breakdown of IMVironments revenue constituting the reasonable royalty base); PLAINTIFF TRIAL EXHIBITS 5–6. Yahoo, however, disputes that an extended period of infringement amounts to misconduct and Defendant claims that its misconduct could not have begun until either CIAC presented its infringement theory on the fourth day of trial or when CIAC asserted claim 45 in its initial disclosures. RESPONSE at 8.

Nonetheless, post-*Seagate* courts have repeatedly held that the length of time a defendant infringes with notice of the asserted patent affects  misconduct when analyzing enhanced damages. *See z4 Tech.,* 2006 WL 2401099, at *25; *Krippelz*, 2009 WL 3852466, at * 6 (finding this factor to support enhanced damages after twelve years of infringement); *Broadcom Corp. v. Qualcomm, Inc.*, No. SACV 05-467-JVS, 2007 WL 2326838, at *3 (C.D. Cal. 2007) ("The length of [defendat's] infringement (approximately two years), coupled with the fact that infringement continued after [plaintiff] filed its suit, supports an increase in damages."). Here, Yahoo has had three different points of notice, at which time it could have ceased infringement: (1) when contacted by Plaintiff's counsel in 2004 after Yahoo with IMVironments was launched, (2) when this suit was filed, and (3) when the jury found Yahoo to be infringing the '432 patent on May 15, 2009. Instead, Yahoo's continued infringement before, during, and after suit provides an inference of misconduct. *See generally* (Doc. No. 324) ("Ongoing Royalty Order") (discussing a finding of ongoing infringement for  both the "old" version of Yahoo Messenger, as well as the "new version" that is currently being offered to the public). Accordingly, the sustained period of infringement weighs strongly in favor of an award of enhanced damages.

### 7.    Remedial Action by the Defendant

This factor looks to whether the defendant ceased the sale of the infringing product during

the pendency of the litigation. *Read*, 970 F.2d at 827. CIAC argues that Yahoo not only failed to cease its infringing activity, but took steps to carry out its infringement under a facade of non-infringement while leaving the underlying (still infringing) "logic" intact. MOTION at 10; *see also* (Doc. No. 313) ("CIAC Royalty Brief"). Yahoo disputes this characterization and claims that it "has taken steps to remove the 'enable' check-box from current versions of Messenger and from all future downloads." RESPONSE at 9.

The record in this case indicates that at no time prior to the jury's verdict did Yahoo make any attempts to cease infringement or otherwise design around limitations disclosed in claim 45. Again, even with overt notice of the claimed invention, Yahoo chose not to pursue remedial action until after a finding of infringement.

As thoroughly discussed in the Court's Ongoing Royalty Order,[8] the Court finds the remedial action taken by Yahoo after a finding of infringement to be insufficient. In continuing to derive profits from the adjudicated product, as well as launching and profiting from a "new" version that is not more than colorably different from the infringing product, Yahoo has not made a good faith showing to remedy infringement of the '432 patent. ONGOING ROYALTY ORDER at 18. Accordingly, this  this factor will weigh in favor of enhanced damages.

## 8.      Defendant's Motivation for Harm

The defendant's motivation for infringement may weigh against the enhancement of damages where the Defendant was influenced by economic pressures such as customer satisfaction. *Read*, 970 F.2d at 827. Relying upon *z4 Tech.*, CIAC argues that like Microsoft in the *z4* action, Yahoo treated

---

[8] In relevant part, the Court previously found that the "old" and "new" versions of Yahoo Messenger continue to infringe and warrant an ongoing royalty to be paid to CIAC to remedy continued infringement. ONGOING ROYALTY ORDER at 16–20.

CIAC as a small and insignificant company that was not worthy of its time and attention. MOTION at 10 (quoting *z4 Tech.*, 2006 WL 2401099, at \*26). Yahoo counters that there is insufficient evidence to support this position and that Yahoo "did not seek a patent license or business relationship with the patent owners because of its good faith belief that its products were non-infringing and no license was necessary." RESPONSE at 9 (citing DEFENDANT TRIAL EXHIBITS 13, 16, 19). Further, Yahoo contends that this case is distinguishable from *z4 Tech.* because there is no evidence that Yahoo believed that the patent owners were incapable of enforcing their rights, or that patent owners were undeserving of Yahoo's time and attention. RESPONSE at 9 (citing *z4 Tech.*, 2006 WL 2401099, at \*26).

While the Court is not aware of any direct motivation on the part of Yahoo to harm the patentee, there is circumstantial evidence to support CIAC's position that Yahoo might well have taken Creative Internet Concepts more seriously if it had been a large and more established company. In fact, it is undisputed that Yahoo repeatedly turned down Creative Internet Concepts' attempts to enter into a business relationship with Yahoo and license the '432 patent. GRAGG TRIAL TESTIMONY at 213:3–214:5; PLAINTIFF TRIAL EXHIBITS at 20–33. To that end, the Court does not accept Yahoo's position that its actions were motivated by a good faith belief that it was not infringing. However, there is insufficient evidence of an intent or motivation to harm the patent owners. Again, these circumstances are in contrast to the situation contemplated in *i4i* where the evidence demonstrated that defendant was content to make the patentee "obsolete" while improving its own products. *i4i*, 2009 WL 2449024, at \*22. In this case, the only evidence in the record is that Yahoo repeatedly turned down CIAC's overtures to enter into a business relationship with Yahoo and license the '432 patent, and this evidence, standing alone, is insufficient to discern Yahoo's

motivation.

Furthermore, it is possible that Yahoo's actions were ultimately influenced by its desire to combat the "commercialism" problem. As established at trial, Yahoo risked economic pressures stemming from customer dissatisfaction unless it devised a means to disable the advertisements appearing in Yahoo Messenger. ISRANI TRIAL TESTIMONY at 276:6–24 (testifying that Yahoo did not include IMVironments before March 17, 2000 due to the commercialism problem and also testifying that the "Enable IMVironments" checkbox solved the commercialism problem); PLAINTIFF TRIAL EXHIBIT 128; *see also* CIAC ROYALTY BRIEF (arguing that both before and after this suit Yahoo made a conscious business decision to infringe in order to appease its customers). Therefore, economic pressure may have been a consideration in Yahoo's implementation of the "Enable IMVironments" checkbox, and in the absence of compelling evidence demonstrating  motivation for harm, the Court finds this factor to be neutral.

### 9.    Whether Yahoo Attempted to Conceal Its Misconduct.

Finally, CIAC argues that Yahoo attempted to conceal its misconduct by not taking CIAC seriously during negotiations, and by presenting misleading evidence at trial. MOTION at 11. Specifically, CIAC argues that Yahoo relied on several prior art references while producing selective pages from those references, and this alleged misbehavior is indicative of Yahoo's attempts to conceal its misconduct. *Id.* Yahoo denies all allegations of concealing misconduct and emphasizes that all conduct was undertaken under the good faith belief that it was not infringing. RESPONSE at 10. As pointed out by Yahoo, the trial record, does not suggest that there were blatant attempts to conceal misconduct. The Court agrees with Yahoo that a defendant's withdrawl of a § 112 invalidity defense, and producing selective pages from prior art references, does not amount to concealing

misconduct.

Therefore, weighing the allegations in light of the events at trial, the Court finds that CIAC had a full opportunity to clear up any misunderstandings for the jury and was not prejudiced by alleged attempts to conceal misconduct. Thus, this factor weighs against an award of enhanced damages.

### The Court's Finding of Enhanced Damages for Willful Infringement

In sum, applying the *Read* factors to the evidence at hand shows that Yahoo: (1)  knew of CIAC's invention and that CIAC was seeking patent protection in 2001 when it launched the infringing product, (2) did not conduct an adequate investigation after having received notice of alleged patent infringement from the patentee, (3) never altered its course once the charges of infringement were made clear, and (4) did not present a close case of non-infringement or invalidity of the '432 patent. As the jury determined, CIAC's evidence is persuasive and credible, and the evidence relates that Yahoo chose to ignore the '432 patent and willfully infringe. *Read* factors 2, 4, 5, 6, and 7 support enhancement while factors 1 and 8 are neutral, and factors 3 and 9 weigh against enhancement. Therefore, while the Court could enhance damages against Yahoo up to three times the total damages of $6,811,278,[9] under the totality of the circumstances, enhancing damages up to the maximum extent allowable under § 284 is not warranted. Instead, the Court **GRANTS** Plaintiff's request for an enhancement of two-thirds, or $4,540,852, resulting in a total of $11,352,130 in damages to be paid by Yahoo to CIAC for infringement occurring until the date of

---

[9]  This damages award is based off the calculations presented by CIAC's damages expert where the figure awarded by the jury for infringement prior to November 2008 is $6,625,584 and is added to the damages award of $185,694 for infringing sales occurring between January 1, 2009 and May 15, 2009 (date of verdict).

verdict.

## II.     Exceptional Case and Attorney's Fees

CIAC asserts that this is an "exceptional case" and that it should therefore receive its attorney's fees. *See* 35 U.S.C.§ 285; MOTION at 13. The evidence at trial established that Yahoo's infringement was willful and CIAC posits that this is a sufficient basis for finding a case exceptional and grounds to award attorney's fees. MOTION at 13 (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co*., 988 F.2d 1117, 1128 (Fed. Cir. 1993)). Yahoo counters that this case is not exceptional because there was no finding of vexatious litigation, injustice, unprofessional behavior, or fraud. RESPONSE at 11.  Yahoo further argues that attorney's fees are not appropriate because Yahoo had a good faith basis for believing it was not infringing and its behavior during the course of the litigation was not unacceptable. *Id*.

The criteria a court should consider in making a determination of whether a case is "exceptional" within the meaning of § 285 is parallel to but not the same as the standard set forth in *Read*.[10] As noted in *Hynix*, the word "exceptional" is open to interpretation, but it is useful to compare the behavior that CIAC complains of with what has been deemed to make a case exceptional. *See Hynix Semiconductor, Inc. v. Rambus, Inc.*, 609 F. Supp.2d 951, 959 (N.D. Cal. 2009). Comparing the instant case to other cases,  the Court declines to find this an exceptional case that warrants an award of attorney's fees. *Cf. z4 Tech.*, 2006 WL 2401099, at *22–25 (awarding

---

[10] Willful infringement, the award of enhanced damages, and the award of attorney's fees in exceptional cases are all related but independent concepts. *Informatica Corp. v. Business Objects Data Integration, Inc.*, 489 F. Supp.2d 1075, 1086 (N.D. Cal. 2007). As with enhanced damages, a finding of willful infringement is sufficient to declare a case exceptional but it does not mandate this conclusion. *Id*. Similarly, "even an exceptional case does not require in all circumstances the award of attorneys's fees and this decision is ultimately committed to the sound discretion of the trial court." *Id*. (citing *S.C. Johnson & Son v. Carter-Wallace, Inc*., 781 F.2d 198, 201 (Fed. Cir. 1986); *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990), *cert. denied*, 500 U.S. 918 (1991)).

attorney's fees where defendant withheld critical evidence, misled the Court regarding facts probative to admissibility of evidence, and marked nearly 3500 exhibits while only admitting 100 of those at trial). Comparative analysis weighs against a finding that Yahoo engaged in litigation misconduct because it did not fabricate or destroy evidence or advance clearly frivolous arguments. *Cf. id*; *Halliburton Co. v. Smith Int'l. Inc.*, No. 4:02cv269, slip op. at 21 (E.D. Tex. Aug. 13, 2004) (awarding attorney's fees and finding an exceptional case where defendant did not competently investigate infringement and invalidity of the patents in suit, did not obtain and rely upon a competent opinion of counsel, and for egregious litigation behavior); *Halliburton Co. v. Schlumberger Technology Corp*., 722 F. Supp. 1433, 1435 (S.D. Tex. 1989) (finding this case exceptional for failure to disclose four material prior art references to the PTO). Similarly, the evidence presented at trial does not show clear and convincing evidence that Defendant's intentionally engaged in copying or that its non-infringement arguments altogether lacked a good faith belief basis. *Cf. i4i*, 2009 WL 2449024, at *23 (declining to find an exceptional case but simultaneously finding that defendant's non-infringement position lacked a good faith basis because there was uncontroverted evidence that defendant had knowledge of the patent and its relation to patentee's products and "willfully chose to render the technology obsolete while simply ignoring the patent").

For the same reasons that a maximum enhancement of damages is not warranted, Yahoo's behavior did not rise to the level of other exceptional instances.[11] Accordingly, CIAC's motion for

---

[11] The evidentiary standard for a patentee to demonstrate an "exceptional" case is clear and convincing evidence. *Ruiz v. A.B. Chance Co.*, 234 F.3d 645, 669 (Fed. Cir. 2000). The Court notes that while Yahoo's conduct was less than credible, the evidence does not rise to the level of clear and convincing. Had this finding only required a preponderance of the evidence, the outcome may have been different. While the Court is not persuaded that CIAC has shown this to be an exceptional case by clear and convincing evidence, Yahoo's conduct—as discussed in the willfulness section— does raise substantial concerns.

a finding of an exceptional case and an award of attorney's fees is **DENIED**.

## III.   Prejudgment and Post-Judgment Interest

CIAC moves for prejudgment interest and post-judgment interest to put CIAC in as good a position as he would have been in had the infringer paid a reasonable royalty in lieu of infringing. *z4 Tech.*, 2006 WL 2401099, at *26. CIAC contends that it should be awarded prejudgment interest at the average prime rate, compounded annually, beginning from the date of infringement. MOTION at 13–14 (relying on *Orion IP, LLC v. Mercedes-Benz, LLC*, No. 6:05-cv-322, slip op. at 10–11 (E.D. Tex. Mar. 28, 2008)); CIAC EXHIBIT 15, DECL. OF MICHELE RILEY ("Riley Decl."). Plaintiff's damages expert calculates this rate is approximately 5.91% and results in a prejudgment interest award of $1,099,187.13 for the infringing period from January 1, 2002 through November 30, 2008. *See* RILEY DECL. Alternatively, CIAC contends that the Court should award prejudgment interest at the 12-year annual Treasury Bill rate, which results in prejudgment interest award of $585,532. MOTION at 14. Yahoo argues that CIAC is not entitled to prejudgment interest and takes no position as to what is the most appropriate means of calculating the interest rate. RESPONSE at 10, n.8.

The Court awards CIAC prejudgment interest— as is typically granted as a matter of course for the period of infringement— because there is no justification for withholding such an award. *See Bio-Rad Labs.*, 807 F.2d at 967. Yahoo argues that prejudgment interest is not appropriate because CIAC unduly delayed in prosecuting the lawsuit, RESPONSE at 10, n.8 (citing *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983)), but the Court's previous ruling on Yahoo's Motion for Judgment as a Matter of Law on Laches (Doc. No. 300) ("Court's Laches Order"), rejected this argument. Although the Court is aware that in *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l Inc.*, the Federal Circuit upheld a denial of prejudgment interest where

24

plaintiff's two year delay in filing suit against defendant caused damages owed by the defendant to escalate, 246 F.3d 1336, 1362 (Fed. Cir. 2001), equivalent circumstances are not present here. Specifically, as discussed in the Order denying Yahoo's post-verdict laches motion, from as early as December 3, 2004 (or November 2, 2005) to January 20, 2006, the parties were involved in active negotiations related to two of CIAC's patents. COURT'S LACHES ORDER at 4. Furthermore, any additional delay in filing suit was caused by CIAC's awaiting issuance of a second patent and the Federal Circuit has held that when a patent owner learns of a defendant's infringement and has a second patent application pending, a one and a half year delay is excusable while the patentee waits for the second patent to issue before acting to enforce its rights. *Id.* (citing *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1462 (Fed. Cir. 1990)). Therefore, CIAC's delay was not intentional or unreasonable.  Accordingly, Yahoo  will owe CIAC $1,099,187.13 in prejudgment interest for the period of infringement from which the jury awarded damages.[12]

Similarly, since interest should be awarded from the date of infringement to the date of final judgment,  *z4 Tech., Inc*., 2006 WL 2401099, at *26, the Court also awards prejudgment interest on the supplemental damages awarded to the patentee for infringement occurring after the date contemplated by the jury at the time of trial (November 2008) through the date of Final Judgment. Yahoo is **ORDERED** to pay interest on damages derived from a 20% reasonable royalty for the period between January 1, 2009 through the May 15, 2009 date of verdict.[13] Yahoo is further **ORDERED** to pay interest on damages derived from a 23% reasonable royalty for the period

---

[12] Prejudgment interest can only be applied to actual damages and not punitive or enhanced damages. *z4 Tech.,* 2006 WL 2401099, at *26. CIAC will not receive prejudgment interest for any of the enhanced damages awarded herein.

[13]   In previously calculating supplemental damages, Ms. Riley derived the reasonably royalty damages by multiplying Yahoo's sales of IMVironments from January 1, 2009 through May 15, 2009 by a 20% royalty rate, yielding $185,694 in reasonable royalty damages. RILEY ONGOING ROYALTY DAMAGES REPORT.

between the date of verdict through Final Judgment.[14] As ordered for prejudgment interest calculated from damages awarded at trial, these supplemental prejudgment interest figures are to be calculated by multiplying the damages by the average prime rate, compounded annually. The Court enters a Final Judgment contemporaneously herewith, and the parties should use this date as the final date upon which prejudgment interest is due.

Finally, it is also hereby **ORDERED** that post-judgment interest be paid on the entire sum calculated pursuant to 28 U.S.C. § 1961 for any time between entry of Final Judgment and the date upon which CIAC receives payment from Yahoo.

For the foregoing reasons, Plaintiff's request for prejudgment and post-judgment interest is **GRANTED**.

## **CONCLUSION**

1.    Finding enhancement of damages is appropriate, CIAC's Motion for enhanced damages is **GRANTED**.

2.    Finding that this is not an exceptional case, CIAC's Motion for attorney's fees is **DENIED**.

3.    Finding interest on damages is appropriate to compensate the patentee, CIAC's Motion for prejudgment and post-judgment interest is **GRANTED**.

As will be reflected in the Final Judgment, a breakdown of the relevant damages figures is as follows:

---

[14] Based on the submissions before the Court, it appears that CIAC is only in possession of sales figures for IMVironments through July 31, 2009. Yahoo should therefore produce all IMVironment sales figures from August 1, 2009 through the date of Final Judgment to allow CIAC to calculate the prejudgment interest. *See* RILEY ONGOING ROYALTY DAMAGES REPORT.

- As awarded by the jury, CIAC is entitled to $6,625,584 for infringement occurring between October 22, 2001 and November 2008. This award is also enhanced by two-thirds, totaling $11,042,640 for infringement occurring during this period.

- As previously awarded by the Court, CIAC is entitled for $185,694 for infringement occurring between January 1, 2009 and May 15, 2009. This award is also enhanced by two-thirds, totaling $309,490 for infringement occurring during this period.

- As discussed in a separate Memorandum Opinion and Order (Doc. No. 324), CIAC is entitled to a 23% ongoing royalty for all post-verdict revenues generated from infringing versions of Yahoo Messenger. These payments should be made quarterly until the expiration of the '432 patent.

- The Court awards CIAC prejudgement and post-judgment interest on all damages discussed herein at the rate set forth in this Order.

**So ORDERED and SIGNED this 1st day of February, 2010.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

27